Robert J. Schoenberg
RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800

Dale M. Cendali
Johanna Schmitt
Brendan T. Kehoe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Attorneys for Plaintiffs
Tetris Holding, LLC and The Tetris Company, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TETRIS HOLDING, LLC and THE TETRIS COMPANY, LLC,<br><br>             Plaintiffs,<br><br>        -against-<br><br>XIO INTERACTIVE INC.<br><br>           Defendant. | Civil Action No._____<br><br>Hon._____<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION**<br><br>***Document Filed Electronically*** |

Plaintiffs Tetris Holding, LLC and The Tetris Company, LLC (collectively, "The Tetris Company" or "Plaintiffs"), by their undersigned counsel, for their Complaint, hereby allege, on knowledge as to their own conduct and otherwise on information and belief as follows:

## NATURE OF THE ACTION AND RELIEF SOUGHT

1.    This action arises out of Xio Interactive Inc.'s ("Defendant" or "Xio Interactive") willful infringement of The Tetris Company's valuable intellectual property rights in and to the world-famous electronic puzzle game *Tetris* and its iconic and distinctive "Tetrimino" playing pieces, which were designed in the 1980s by Alexey Pajitnov, one of Tetris Holding, LLC's co-owners.  Specifically, Defendant has blatantly copied and misappropriated the original and distinctive elements of the *Tetris* game and Tetrimino playing pieces in order to create infringing electronic puzzle games called *Mino* and *Mino Lite* for the iPhone and iPod Touch (collectively, the "Infringing Games") and distribute them on the Apple iTunes Store.

2.    Upon information and belief, in a deliberate attempt to profit from The Tetris Company's valuable intellectual property and hard-earned reputation, Defendant sold downloadable copies of the infringing *Mino* game on the Apple iTunes Store for $2.99.  The Infringing Games directly compete with The Tetris Company's licensed *Tetris* game on the Apple iTunes Store.

3.    Moreover, Defendant's willful intent to trade off of The Tetris Company's intellectual property and to create a false association between its Infringing Games and *Tetris* is evident by the fact that it chose the name "Mino" for its Infringing Games, which clearly trades off the name of The Tetris Company's iconic and distinctive "Tetrimino" playing pieces.  In addition, Defendant uses an image of The Tetris Company's distinctive T-shaped Tetrimino playing piece in its logo for the Infringing Games.

2

4. Promptly after learning about the Infringing Games, The Tetris Company sent a take-down notice under the Digital Millennium Copyright Act to Apple Inc. ("Apple"), which removed the Infringing Games from the Apple iTunes Store. In response, Defendant sent a counter-notification to Apple in order to have the Infringing Games reinstated.

5. Accordingly, due to Defendant's blatant and willful infringement and apparent refusal to cease and desist, Plaintiffs have no choice but to file this lawsuit seeking injunctive relief and damages that they have suffered as a result of Defendant's (a) copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq., (b) false designation of origin, false endorsement, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), (c) violation of the New Jersey Fair Trade Act, (d) unfair competition under state law, and (e) unjust enrichment.

## PARTIES

6. Plaintiff Tetris Holding, LLC ("THC") is a Delaware limited liability company with its company address at 1209 Orange Street, Wilmington, Delaware 19801. THC is a holding company, which owns all of the intellectual property rights associated with *Tetris*.

7. Plaintiff The Tetris Company, LLC ("TTC") is a Delaware limited liability company with its company address at Corporation Service Co., 103 Foulk Road, Suite 202, Wilmington, Delaware 19803. TTC is the exclusive licensee of THC and licenses THC's intellectual property rights in *Tetris* worldwide.

8.    Upon information and belief, defendant Xio Interactive Inc. (also known as "Xio Interactive Online") is a New Jersey corporation.  Upon information and belief, Defendant's registered agents are Incorp Services, Inc. at 208 West State Street, Trenton, New Jersey 08608 and Jeffrey C. Neu, Esq. at 318 Newman Springs Road, Red Bank, New Jersey 07702.  Upon information and belief, Xio Interactive is the designer and developer of the Infringing Games and has distributed the Infringing Games on the Apple iTunes Store.

## JURISDICTION AND VENUE

9.    This action asserts claims arising under the Copyright Act, 17 U.S.C. § 101 et seq., and the Lanham Act, 15 U.S.C. § 1125.  This Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  This Court also has subject matter jurisdiction over The Tetris Company's state law claims pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367(a).

10.    Upon information and belief, this Court has personal jurisdiction over Defendant because it consented to the jurisdiction of federal district court in New Jersey.

11.    Upon information and belief, this Court has personal jurisdiction over Defendant because it is a New Jersey corporation.  In addition, upon information and belief, Defendant has registered agents who reside in New Jersey.

12.    Upon information and belief, this Court has personal jurisdiction over Defendant because it regularly transacts business within New Jersey, has contracted

4

to sell the Infringing Games in New Jersey, and has distributed, offered for sale, sold and advertised the Infringing Games throughout the United States, including New Jersey and this judicial district.

       13.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(a).

### The Unprecedented Success and Popularity of Tetris®

       14.    *Tetris* is an iconic, groundbreaking electronic puzzle game that was created, designed and programmed in the mid-1980s by an innovative Russian computer programmer named Alexey Pajitnov. Today, Mr. Pajitnov is the co-owner of plaintiff THC and remains actively involved with The Tetris Company's business and ensuring the continued high standards and quality of *Tetris*.

       15.    Since its release, *Tetris* has become one of the most popular video and online games in the world with over 100 million fans worldwide. The instant rise and continued success of *Tetris* has had a profound and virtually incalculable impact on the video and online game industries. Few other electronic games have demonstrated the longevity and universal appeal of this puzzle game.

       16.    *Tetris* has won many awards and is repeatedly recognized as one of the top five video games of all time. Most recently, the Guinness World Records 2009 Gamer's Edition named *Tetris* the No. 2 best video console game of all time. In addition, at the 1989 Software Publishers Association Awards — then the "Oscars" for the software industry — *Tetris* set records when it won an unprecedented four Excellence in Software Awards. Further, in 1997, Electronic Gaming Monthly's 100th issue named

*Tetris* in first place as the "Greatest Game of All Time," and in 2007, *Tetris* came in second place in IGN's "100 Greatest Video Games of All Time."

17.     Also, during the period from 2004 to 2009, *Tetris* was the No. 1 cell phone game.  Over the last several years, among thousands of games sold on mobile phones in the United States, *Tetris* maintains the highest market share of any other cell phone game.  One of The Tetris Company's licensees offers *Tetris* for use on the iPhone, and *Tetris* is one of the most popular paid applications on the Apple iTunes Store.

18.     Since its release, *Tetris* has appeared on nearly every game platform available, including, but not limited to, consoles, handheld game systems, arcade machines, Macs, PCs, mobile phones, portable media players, and PDAs.

**Distinctive Expression and Game Play of Tetris®**

19.     The object of the *Tetris* game is to position the falling "Tetriminos" (*i.e., Tetris* playing pieces) across the bottom of the playing field or "matrix."  As illustrated below, the *Tetris* matrix is a long vertical rectangle, which is higher than wide.



20.     The *Tetris* Tetriminos are distinctive geometric playing pieces formed by four equally-sized blocks (*i.e.*, "Minos") joined together at the sides into seven

different patterns.  Generally, the *Tetris* Tetriminos do not appear as solid shapes, rather the individual Minos are delineated.  Further, in devices that allow for color, the Tetriminos typically are brightly colored.

      21.    As illustrated below, during *Tetris* game play, the Tetriminos fall downward and laterally from the top of the matrix one at a time.  As each Tetrimino falls, it must be rotated and positioned across the bottom of the matrix.  In addition, the next Tetrimino that will fall down the matrix is displayed in a small window next to the matrix, at times above the matrix.



      22.    The goal of the *Tetris* game is to position the Tetriminos across the bottom of the matrix so they leave no open spaces.  When an entire horizontal line fills with Minos, the line disappears from the matrix.  After a line disappears, there is a subsequent consolidation of the Minos remaining in the matrix as a result of the downward shift into the space vacated by the disappearing line.

      23.    If horizontal lines are not completely filled with Minos, they will not clear from the matrix, and the Tetriminos will continue to stack up higher and higher.  As

illustrated below, once the stack of Minos reaches the top of the matrix, the game is over.



24. In certain versions of *Tetris*, when the game is over, Minos appear and completely fill up the matrix from the bottom to the top.

25. The original *Tetris* game was a one-player game. However, new versions of *Tetris* have been developed that allow multiple players to compete against each other simultaneously, including multiplayer versions for mobile devices. The layout of multiplayer *Tetris* for mobile devices typically features a large-scale view of the player's matrix on the screen with small-scale views of the opponents' matrixes to the side of the large-scale matrix.

26. Also, several multiplayer *Tetris* games allow players to send lines — called "garbage lines" — to an opponent when he or she clears his or her own lines. "Garbage lines" generally appear with one missing Mino in random order.

**The Tetris Company's Valuable Intellectual Property Rights in Tetris®**

27. The Tetris Company owns the copyrights in *Tetris*, including, but not limited to, the following U.S. copyright registrations: *Tetris* Version 0 (Reg. No. PAu 1-214-036), *Tetris* Version 1 (Reg. No. PAu 1-214-035), *Tetris* Version 2 (Reg. No.

8

PA 412-169), *Tetris* (Reg. No. PA 412-170), *Tetris NES Edition* (Reg. No. PAu-1-284-318), *Tetris Game Boy* (Reg. No. PA-532-076), *Tetris Zone* (Reg. No. PA 1-381-624), *Tetris (EA Multiplayer)* (Reg. No. PA 1-626-333), *Tetris Evolution (Xbox360)* (Reg. No. PA 1-644-901), and *Tetris (iPhone)* (Reg. No. PA 1-616-754).

28.    In addition, The Tetris Company owns the distinctive *Tetris* trade dress, which is comprised of distinctive visual elements that appear on the screen when the game commences and is played, including, but not limited to, the brightly-colored geometric playing pieces, which are formed by four equally-sized, delineated blocks (Minos), and the long vertical rectangle playing field, which is higher than wide.  This distinctive *Tetris* trade dress signals to consumers that the puzzle game is *Tetris*.

29.    Further, The Tetris Company incorporates its famous and distinctive T-shaped Tetrimino into many of its logos, which have appeared on its Web site and on its licensees' Web sites and packaging.

30.    Over the years, The Tetris Company has licensed its valuable intellectual property rights to *Tetris* to major video game companies, including, but not limited to, EA Mobile, Nintendo, Atari, Capcom, THQ, and Radica.  Through its current license from The Tetris Company, EA Mobile sells a *Tetris* game on the Apple iTunes Store.  In order to protect its valuable and distinctive intellectual property rights and to ensure quality control, The Tetris Company created uniform marketing and design guidelines for its licensees.

**Defendant's Infringing *Mino* and *Mino Lite* Games**

31.    Defendant's Infringing Games brazenly copy *Tetris*' copyrighted

expression and misappropriate The Tetris Company's distinctive *Tetris* trade dress.  Upon

information and belief, the following is a screenshot from the infringing *Mino* game:



32.    A side-by-side comparison of the two games illustrates that the

Infringing Games are obvious knockoffs of the *Tetris* game:

**Tetris® Zone**                    **Infringing *Mino* Game**



33.    The Infringing Games copy *Tetris*' original, creative expression and

distinctive elements, including, but not limited to:  geometric playing pieces formed by

four equally-sized, delineated blocks; the long vertical rectangle playing field, which is

higher than wide; the appearance of the playing pieces at the top of the matrix, the

downward, lateral and rotating movements of the playing pieces; the display of the next

Tetrimino that will fall down the matrix above the playing field; the disappearance of any completed horizontal line; the subsequent consolidation of the playing pieces remaining on the playing field as a result of the downward shift into the space vacated by the disappearing line, and the appearance of Minos automatically filling in the matrix from the bottom to the top when the game is over. In addition, the multiplayer modes of the Infringing Games also copy and misappropriate The Tetris Company's distinctive intellectual property from multiplayer variants of *Tetris* for mobile devices, including, but not limited to, the display of "garbage lines" with one missing Mino in random order and the expression of the screen layout with the player's matrix on the screen and the opponents' matrixes to the side.

34. On its official Web site, Defendant admitted that it was a copy of *Tetris*. Specifically, Defendant's Web log quoted a study funded by Plaintiffs' agent that found that playing *Tetris* had positive brain effects on adolescent girls and stated, "Take home message? Play more Mino."

35. Moreover, articles and comments from third-party Web sites — which Defendant links to from its official Web site to promote its Infringing Games — confirm that the Infringing Games are *Tetris* clones. For example, the headline of an article linked to by Defendant's Web site states: "Care for some Multiplayer Tetris? Take Mino for a Spin."

36. Defendant's intent to infringe is further evident from its use of "Mino" as the name of the Infringing Game, which improperly trades off the name of The Tetris Company's iconic and distinctive "Tetrimino" playing pieces. Further,

Defendant's bad-faith intent is belied by its use of The Tetris Company's instantly-recognizable and distinctive T-shaped Tetrimino playing piece, which is also incorporated into The Tetris Company's *Tetris* logos.

37.     Upon information and belief, Defendant intentionally and willfully copied the *Tetris* game and sold and distributed downloadable copies of the Infringing Games on the Apple iTunes Store in order to profit from the success and popularity of the *Tetris* game.  Defendant's unlawful activities and intent to trade off of The Tetris Company's valuable intellectual property have been successful as the infringing *Mino* game purportedly reached No. 11 on the Apple iTunes Store's "What's Hot" list.

**Defendant Refuses to Remove the Infringing Games from the iTunes Store**

38.     Upon information and belief, the Infringing Games were released on the Apple iTunes Store in July 2009.  On or around July 31, 2009, The Tetris Company became aware of the Infringing Games on the Apple iTunes Store, which directly competed with EA Mobile's licensed version of *Tetris* on the Apple iTunes Store.

39.     On August 3, 2009, counsel for The Tetris Company sent a take-down notice pursuant to the Digital Millennium Copyright Act to Apple.  In response, Apple removed the Infringing Games from the Apple iTunes Store.

40.     In addition, counsel for The Tetris Company communicated multiple times with counsel for Defendant in an attempt to resolve the issue and persuade Defendant to stop infringing The Tetris Company's valuable intellectual property rights.

41.     On November 24, 2009, Apple forwarded Defendant's counter-notification notice to counsel for The Tetris Company.  The counter-notification notice

stated that Defendant consented to the jurisdiction of the federal district court in New Jersey and claimed that the Infringing Games did not infringe The Tetris Company's copyrights. Apple stated that it would reinstate the Infringing Games in 10 business days (i.e., by December 10, 2009).

42. Accordingly, The Tetris Company had no other practicable option but to file this lawsuit.

## CLAIMS FOR RELIEF

### COUNT ONE – COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 101 et seq.)

43. The Tetris Company repeats and realleges each and every allegation above as if fully set forth herein.

44. By their actions alleged above, Defendant has infringed and will continue to infringe The Tetris Company's copyrights in *Tetris* by, *inter alia*, copying, publicly displaying, and distributing the Infringing Games, which are substantially similar to and derived from *Tetris*, without any authorization or other permission from The Tetris Company.

45. Defendant's infringement of The Tetris Company's copyrights in *Tetris* has been deliberate, willful and in utter disregard of The Tetris Company's rights.

46. The Tetris Company is entitled to an injunction restraining Defendant, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further such acts in violation of the Copyright Act.

47.     The Tetris Company is further entitled to recover from Defendant the damages, including attorneys' fees, they have sustained and will sustain, and any gains, profits, and advantages obtained by Defendant as a result of its acts of infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by The Tetris Company, but will be established according to proof at trial.  The Tetris Company is also entitled to recover statutory damages for Defendant's willful infringement of its copyrights.

<div align="center">

**COUNT TWO – UNFAIR COMPETITION,
FALSE ENDORSEMENT, AND FALSE DESIGNATION OF ORIGIN
(15 U.S.C. § 1125(a)(1)(A))**

</div>

48.     The Tetris Company repeats and realleges each and every allegation above as if fully set forth herein.

49.     The visual appearance of The Tetris Company's *Tetris* game has a unique look and feel comprised of distinctive characteristics, including, but not limited to, brightly-colored geometric playing pieces formed by four equally-sized, delineated blocks and the long vertical rectangle playing field, which is higher than wide.  These characteristics of *Tetris* have come to identify *Tetris* and its source and thus serve as protectable trade dress.  The Tetris Company's *Tetris* trade dress is non-functional and is inherently distinctive or has acquired distinction within the meaning of the Lanham Act.

50.     Through their use of the misleading design and look-and-feel of the Infringing Games, Defendant is knowingly and intentionally misrepresenting and falsely designating to the general public the affiliation, connection, association, origin, source, endorsement, sponsorship and approval of the Infringing Games, and intends to

<div align="center">14</div>

misrepresent and falsely designate to the general public the affiliation, connection, association, origin, source, endorsement, sponsorship and approval of the Infringing Games, so as to create a likelihood of confusion by the public as to the affiliation, connection, association, origin, source, endorsement, sponsorship and approval of the Infringing Games.

51.     Further compounding the confusion created by infringement of the *Tetris* trade dress and underscoring its bad-faith intent, Defendant has used the name "Mino" for its Infringing Games, which improperly trades off the name of The Tetris Company's iconic and distinctive "Tetrimino" playing pieces, and has used a T-shaped Tetrimino logo for the Infringing Games.

52.     Defendant's conduct has been intentional and willful, and is calculated specifically to trade off the goodwill that The Tetris Company has developed in its successful *Tetris* games, making this an exceptional case under 15 U.S.C. § 1117.

53.     The aforesaid acts of Defendant constitute false designation of origin, false endorsement, and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

54.     As a direct and proximate result of the foregoing acts of Defendant, The Tetris Company has been damaged and has suffered, and will continue to suffer, immediate and irreparable harm.

## COUNT THREE – TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION UNDER THE NEW JERSEY FAIR TRADE ACT
### (N.J.S.A. 56:4-1 et seq.)

55.     The Tetris Company repeats and realleges each and every allegation above as if fully set forth herein.

56.     The aforesaid acts of Defendant's unauthorized use of The Tetris Company's intellectual property in connection with the Infringing Games constitutes trade dress infringement and unfair competition under the New Jersey Fair Trade Act, N.J.S.A. 56:4-1 et seq. (2001).

57.     Defendant's conduct has been intentional and willful, and is calculated specifically to trade off the goodwill that The Tetris Company has developed in its successful *Tetris* games.

58.     As a direct and proximate result of the foregoing acts of Defendant, The Tetris Company has been damaged and has suffered, and will continue to suffer, immediate and irreparable harm.

59.     Plaintiffs are thus entitled to treble monetary damages and injunctive relief restraining defendant from further infringement of plaintiff's trade dress.

## COUNT FOUR: COMMON LAW UNFAIR COMPETITION

60.     The Tetris Company repeats and realleges each and every allegation above as if fully set forth herein.

61.     The aforesaid acts of Defendant's unauthorized use of The Tetris Company's intellectual property in connection with the Infringing Games constitute unfair competition under the common law of New Jersey and other states where

16

Defendant is conducting its activities in that Defendant has misappropriated, and unfairly competed with, The Tetris Company's commercial business and will continue to do so.

62.     As a direct and proximate result of the foregoing acts, Defendant unlawfully derived and will continue to derive, income, profits and ever-increasing goodwill from its activities, and The Tetris Company has been damaged and has suffered and will continue to suffer immediate and irreparable injury for which The Tetris Company has no adequate remedy at law.

<p align="center">**COUNT FIVE: UNJUST ENRICHMENT**</p>

63.     The Tetris Company repeats and realleges each and every allegation above as if fully set forth herein.

64.     The aforesaid acts of Defendant of using The Tetris Company's *Tetris* intellectual property in connection with the Infringing Games to take advantage of consumer recognition of *Tetris'* reputation have resulted in Defendant being unfairly enriched at The Tetris Company's expense.

65.     This unjust enrichment has been gained at the sole and wrongful expense of plaintiff.  Equity and good conscience militate against permitting Defendant to retain what it has derived by its unauthorized use of The Tetris Company's *Tetris* intellectual property.

66.     As a direct and proximate result of the foregoing acts, Defendant has been and will continue to be enriched at The Tetris Company's expense, and The Tetris Company has been damaged and has suffered and will continue to suffer immediate and irreparable injury for which The Tetris Company has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully ask that the Court enter judgment against Defendant, granting the following relief:

a.    Find that Defendant has infringed The Tetris Company's copyrights in *Tetris*;

b.    Find that Defendant has used The Tetris Company's *Tetris* trade dress, the name "Mino," and the distinctive T-shaped Tetrimino logo to falsely suggest The Tetris Company's endorsement of the Infringing Games, falsely designate the origin of the Infringing Games, and unfairly compete with The Tetris Company;

d.    Find that Defendant has engaged in trade dress infringement and unfair competition under the New Jersey Fair Trade Act, N.J.S.A. 56:4-1 et seq. (2001), and the common law of New Jersey and have been unjustly enriched;

f.    Find a substantial likelihood that Defendant will continue to infringe The Tetris Company's intellectual property unless enjoined from doing so;

g.    Issue a preliminary and permanent injunction restraining Defendant, and its agents, servants, employees, attorneys, successors and assigns, and all persons, firms and corporations acting in concert with them, from directly or indirectly:

i.    infringing The Tetris Company's copyrights in *Tetris*, and

ii.    infringing the *Tetris* trade dress and otherwise seeking to cause a false association with *Tetris*,

including, but not limited to, continuing to publicly display, sell, distribute, offer, market, advertise, promote, or accept custom for the Infringing Games (or any other game that is substantially similar to *Tetris* or likely to cause confusion with the *Tetris* trade dress), and from participating or assisting in any such activity;

> h.     Enter judgment for The Tetris Company and against Defendant for The Tetris Company's actual damages according to proof, and for any profits attributable to infringements of The Tetris Company's intellectual property, false designation of origin, and unfair competition, in accordance with proof;

> i.     Enter judgment for The Tetris Company and against Defendant for statutory damages based upon Defendant's acts of infringement pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, <u>et</u> <u>seq.</u>;

> j.     Order Defendant to render an accounting to The Tetris Company for Defendant's profits or the value of the business opportunities received from the foregoing acts of infringement, false designation of origin, and unfair competition;

> k.     Grant an award under the appropriate provisions of the New Jersey Fair Trade Act, the Lanham Act, and federal statutory law for trade dress infringement, false designation of origin, and unfair competition, three times the greater of:

>> i.     The Tetris Company's damages for the wrongful acts of Defendant in an amount the Court deems appropriate, together with appropriate interest on such damages;

>> ii.    Defendant's profits in accordance with the accounting demanded in

the preceding paragraph, pursuant to 15 U.S.C. § 1117; and

l.      An award of The Tetris Company's costs and disbursements of this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117; and

m.     That the Court grant such other, further, and different relief as the Court deems just and proper.

Respectfully submitted,

Robert J. Schoenberg
RIKER DANZIG SCHERER HYLAND
  & PERRETTI LLP
Attorneys for Plaintiffs
Tetris Holding, LLC
and The Tetris Company, LLC

By_____ s/ *Robert J. Schoenberg* _____
    ROBERT J. SCHOENBERG

One Speedwell Avenue
Morristown, New Jersey 07962-1981
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
Email: rschoenberg@riker.com

Dale M. Cendali
Johanna Schmitt
Brendan T. Kehoe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: Dale.Cendali@kirkland.com
      Johanna.Schmitt@kirkland.com

Dated: December 2, 2009.

## CERTIFICATION OF NON-ARBITRABILITY

Pursuant to Local Civil Rule 201.1(d)(2), the undersigned attorney for Plaintiffs, Tetris Holding, LLC and The Tetris Company, LLC, certifies that this action is not eligible for arbitration under Local Civil Rule 201.1 because the relief sought in the Complaint primarily consists of a demand for preliminary and permanent injunctive relief, as well as damages believed to be in excess of $150,000.00, exclusive of interest, costs, and any claim for punitive damages.

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to L. Civ. R. 11.2, the undersigned attorney for Plaintiffs, Tetris Holding, LLC and The Tetris Company, LLC, to the best of his knowledge, certifies that the matter in controversy concerning the products at issue herein is not the subject of another action pending in any court or in any arbitration or administrative proceeding.

<div style="margin-left:40%">

RIKER DANZIG SCHERER HYLAND
  & PERRETTI LLP
Attorneys for Plaintiffs
Tetris Holding, LLC
and The Tetris Company, LLC

By___s/ *Robert J. Schoenberg*___
      ROBERT J. SCHOENBERG

</div>

Dated: December 2, 2009.

4000813.1