# EXHIBIT M

**From:** "Desiree Golen"
**To:** greback@carrferrell.com
**Cc:**
**Bcc:**
**Date:** Thu, 13 Nov 2008 02:05:53 -0800
**Subject:** The Tetris Company and US Copyright Law

Dear Mr. Reback,

Hi, my name is Desiree Golen. I am emailing because I just read your case against the Lotus Development Corporation in 1996 and immediately became inspired to contact you. I have spent the last few days attempting to prepare myself for a legal battle with the Tetris Company, LLC by gathering as much information, advice, and support as possible.

**Background**

I am in the process of developing a Tetromino game to release on the iPhone platform very shortly.

Since August, however, the Tetris Company LLC has intimidated five independent iPhone Tetromino game developers into terminating their applications (Kafablo, Shaker, TetoTeto, Tris, and Touchris) by sending out cease and desist letters.

The C&D's accuse each developer of "violat(ing) the copyright in the Tetris(R) game because it is a copy of (their) client's game and was created and is being reproduced and sold on (the Appstore) without (their) client's prior permission or authorization." (see attached for full copy)

Unfortunately, the developers of Kafablo, Shaker, TetoTeto, Tris and Touchris were all legally and financially unprepared to contradict the Tetris Company's claims of infringement. So, Apple, in an attempt to avoid any legal entanglement, "encouraged" each developer to agree to remove their applications from the Appstore.

When Todd Billsorrow, the developer of Kafablo, wrote to the Tetris Company to declare non-infringement and inquire further about their licensing, (see attached), the Tetris Company referred him to a correspondence between a US Customs Agent and Anthony O. Cormier, Esq:
http://www.faqs.org/rulings/rulings2002HQ471487.html and proceeded to use this letter as justification to claim that,

"As in the Philips case, the games under consideration herein presents with numerous similarities. The copyrightable features of the TETRIS game, as covered by the copyright registration, includes the downward, lateral, and rotating movements of the differently oriented four-brick playing pieces, and the shape and appearance of the four-brick playing pieces, both in the "dots" that appear within the individual bricks themselves, as well as in the configuration of the four-brick combinations comprising the playing pieces. Additional copyrighted features include: the scoring features, the feature displaying the next four-brick playing piece that will fall down the playing field matrix, the disappearance of any completed horizontal row, the subsequent consolidation of the playing pieces remaining on the playing field as a result of the downward shift into the space vacated by the disappearing row, the resulting score, the background music, the specific sounds generated as the four-brick playing pieces are rotated, and the sounds generated as a row is completed and points are earned. Further, the makeup of the playing field itself, i.e., the vertical matrix, higher than it is wide, with a base of ten individual "bricks" per horizontal row, and generally twenty individual "bricks" per vertical line, is also copyrightable expression."

**Copyright Infringement?**

I don't know how familiar you are with the "Tetris Story". Tetrominos are geometrical shapes consisting of four square subunits. Alexey Pajitnov and a team of developers created the game "Tetris" for the desktop in June 1985, while working for the Dorodnicyn Computing Centre of the Academy of Science of the USSR

in Moscow. The game consisted of arranging tetrominos on a grid and gaining points by completing a full line. What's important to note is that neither Pajitnov, nor the Dorodnycyn Computing Centre, nor the Government filed for a patent on the game concept of Tetris.

As Tetris's popularity spread to the rest of the world, third party game companies began to claim copyright licenses and to issue sub licenses on rights they did not even own on the game. Moreover, they nefariously employed their copyright more as a patent, even though they had nothing to do with the original creation of the game concept. Eventually in 1988, the Soviet Government began to market the rights to Tetris through an organization called Elektronorgtechnica.

Then in 1996 when Russian restrictions expired, Henk Rogers formed The Tetris Company and copyrighted  the audiovisual effects of "Kids Tetris" and "Family Tetris". The TTC has since used this license to terrorize independent developers (who use their own code, graphics, and music to develop and extend on the original Tetris game concept) on the internet, only to shut them down and steal their (ideas for) unique added features.

HOWEVER, as you are aware, the US Copyright office clearly states that a game concept is not copyrightable material:

"Copyright protection does not extend to any idea, system, method, device, or trademark material involved in the development, merchandising, or playing of a game. Once a game has been made public, nothing in the copyright law prevents others from developing another game based on similar principles."

Furthermore, your victory in Borland vs. Lotus has been cited to show the distinction in copyright law between the interface of a software product and its implementation, where the implementation is subject to copyright.  However, the set of available operations and the mechanics of how they are activated are not copyrightable. If this extends to the "operation and mechanics" of a tetromino game,  this standard should allow software developers to create original "clones" of copyrighted software products without infringing the copyright. (http://en.wikipedia.org/wiki/Lotus_v._Borland)


The case of the Tetris and Arcade demonstrates that the game concept of Tetris is limited by the subject matter portrayed by the game: "the scope of a graphic copyright for a tile-on-grid design is necessarily limited by the common nature of (the) subject matter portrayed. Because of this limitation, copying in this category of products would have to be virtually identical to create even a suspicion of piratical copying."
 (http://en.wikipedia.org/wiki/Lotus_v._Borland)

Finally, the audiovisual effects of my tetromino game (as well as those of Kafablo, Shaker, TetoTeto, Tris, and Touchris ) are clearly distinct from those of Tetris. See:
http://arstechnica.com/journals/thumbs.ars/2008/08/26/free-tetris-clone-pulled-from-itunes-app-store

Furthermore, these games were developed completely independently with original codebase, art, and music.

**My Position**

I have come to believe that the Tetris Company has been using its Copyright claims unjustly in order to profit from a monopoly on an un-patented game by bullying independent developers into removing their versions from the internet and now from the iPhone Appstore.

I am completely appalled by this and I would like to finally see

1) an end to the Tetris Company's unquestioned "authority"
2) an open market for Tetromino Games!!

**My Question for you**

As an intellectual property attorney who is *very* familiar with this subject matter...

**Would you say I have a case against the Tetris Company LLC?**

The reason for my inquiry is that I have met and spoken to people from both ends of the spectrum: some say that I clearly would win any case against the TTC, while others are less encouraging and very doubtful (see http://web.archive.org/web/20021016153537/http://www.computerlaw.com/lookfeel.html#INTRODUCTION).

I simply would like to assess the cost and benefits of confronting The Tetris Company. With your experience, I believe that you are in an ideal place to offer judgment if you chose to read this email and reply to my humble plea for your opinion.

I apologize for the length of this email, I know you are very busy.

I get taken away by the idea and excitement of finally settling the Tetromino game dispute.

Thank you for all of your time. I look forward to your response,

Thank you again,

Desiree Golen

**Attachment**: kafablo C&D.doc

**Attachment**: Todd_tetris_lawyer.txt

# EXHIBIT N

**From:** "Michael Carter"
**To:** "Martin Hunt"
**Cc:** "Desiree Golen"
**Bcc:**
**Date:** Sat, 22 Nov 2008 23:10:04 -0800
**Subject:** Re: Open GL

Hey Martin,

I just got back from the hospital a bit earlier today. Surgery was a bit more of an ordeal than I expected, but it ultimately went well. I am unfortunately unable to use a computer much for the next 2 weeks.

We have a minor logistics problem on Tetris -- Desiree flew down here (Los Angeles) to take care of me while I'm recovering from surgery. Frank, who has a key to our apartment has also flown home earlier for Thanksgiving, and the end result is that we have no way of giving you access to the computers!

Desiree is flying back to Mountain View after thanksgiving though, and she and Mario will be back at it full force then. I'll probably be done here for another week, but I'll make it up before the Javascript meetup on the 9th.

So all of this is to say that we are at a very unfortunate roadblock on Tetris development. If you are interested in continuing work before we get back, you'll have to either a) find access to a mac, or b) work on the browser portion of things.


I think it would be neat to talk to Appjet about their technology. I'm a bit put off that they're building a service instead of working on an open source project, but on the other hand the ideas are still pretty cool -- just like we talked about. I will say that I wasn't too impressed with Etherpad. I couldn't get it working in Opera, or working in two seperate firefox windows at the same time. Still though, its cool to see someone working on something so similar to what we talked about.


How's everything else going at Meebo and in Mountain View?

-Michael Carter

p.s. Confetto is going to be used at Devoxx in 2 weeks, the largest java conference in Europe (7k-8k attendance). If you remember any issues from using it before, it would be great if you could remind me.


On Sat, Nov 22, 2008 at 9:35 PM, Martin Hunt <mghunt@gmail.com> wrote:
  Hey Michael,

I hope your surgery went well and you're recovering.  Let me know if I
can do anything.  I was wondering also if I could work on TetraNet
tomorrow - or let me know when a good time would be.

Also, I ran across AppJet, which is an application platform on the web
(online IDE) supporting server side JS (rhino + jvm) and an
object-based database.  Interesting stuff - apparently they're having
trouble scaling and are releasing a new version soon (which is
powering etheredit's comet right now).

 - Martin


>
> Desiree Golen wrote:
>>
>> Hey,
>>
>> I just wanted to update you on what we're doing these days on TetraNet.
>>
>> Michael and Mario are going through and integrating the work you and Mario
>> have done on the client. We've decided that open GL is the way to go; its
>> faster and more consistent than core graphics.
>>
>> Mario is also still working on getting the json library compiling
>> properly.
>>
>> We should have one integrated client ready by the end of the night and
>> have a network going. Can you come over tomorrow night to do some work?
>>
>> Thats all for now. Please let me know. Have a nice night!
>>
>> -Desiree
>
>

# EXHIBIT O

**From:** "Desiree Golen"
**To:** tgolen@aol.com
**Cc:**
**Bcc:**
**Date:** Tue, 18 Nov 2008 20:28:55 -0800
**Subject:** Re: jobs, life sciences vs cs

I can start up an anonymous blog for you. I have one of my own that I'm using to generate interest for the Tetris game. You can check it out at:
http://desiree47.wordpress.com/2008/11/18/lets-get-this-straight-tetromino-and-tetris/

-des

On Tue, Nov 18, 2008 at 8:03 PM, <tgolen@aol.com> wrote:
  if and only if she aces calc 3

  does michael go under the knife tomorrow?

  wish him well for me.

  if he wants something to noodle on, i'd like to start an anonymous
  TOYOTA UNINTENDED ACCELERATION blog to solicit stories and get some more
  engineers involved.  it cannot be associated with me, but I'd like to be able to filter out
  the whackos.

  -----Original Message-----
  From: Desiree Golen <desiree.golen@gmail.com>
  To: tgolen@aol.com
  Sent: Tue, 18 Nov 2008 10:43 pm
  Subject: Re: jobs, life sciences vs cs

  Gio likes structure and rules. She also likes logic, and building things. there is plenty of
  this in cs. I think she would be good at it.

  Shes a terrible writer; we better stick to her left side of the brain

  On Tue, Nov 18, 2008 at 7:18 PM, <tgolen@aol.com> wrote:
    but cs requires a brain

    -----Original Message-----
    From: Desiree Golen <desiree.golen@gmail.com>

To: xiogolen@aol.com; tgolen@aol.com
Sent: Tue, 18 Nov 2008 8:10 pm
Subject: Fwd: jobs, life sciences vs cs

---------- Forwarded message ----------
From: **Michael Carter** <cartermichael@gmail.com>
Date: Tue, Nov 18, 2008 at 5:02 PM
Subject: jobs, life sciences vs cs
To: Desiree Golen <desiree.golen@gmail.com>

Apparently the projected supply of bachelor degrees in life sciences is 60k degrees against 5k open jobs
The supply of CS degrees is 40k against 140k open jobs.

The conclusion is that you won't find work as a life sciences major
And you can't avoid finding work as a CS major

so tell gio

http://www.cra.org/govaffairs/sargent_adequacy_of_S-EW.ppt

(from http://www.cra.org/govaffairs/content.php?cid=22)

Instant access to the latest & most popular FREE games while you browse with the Games Toolbar - Download Now!

Instant access to the latest & most popular FREE games while you browse with the Games Toolbar - Download Now!

# EXHIBIT P

Custodian: Xio Interactive Online
Filename: xio-desktop-backup/des/Documents/business_plan.odt
Filetype: application/vnd.oasis.opendocument.text

Case 3:09-cv-06115-FLW-DEA   Document 35-4   Filed 04/21/11   Page 12 of 83 PageID: 325

Meekle:

release game in a month,
get started as quickly as possible-- first mover advantage- days can make a difference
get name out, take already established market- 400 reviews

willing to put in writing, skip lawyer, NDA
-------------------------------------------------------------------------------------------------------
-
value put into project:
 200 hours- two weeks straight programing (169 hours in 1 week)

michael 120      24,000
alex 100         20,000
mario 60         3,600

total= 47,600

michael= 24,000/25 = 960
each percentage worth 960 based on work

960 * 5 = 4800
-------------------------------------------------------------------------------------------------------
-

your return/projections:

| Contribution | Funding |
|---|---|
| Risk | 4,800 |
| Percent | 5 % |

| | 3 months | 6 months | 1 year |
|---|---|---|---|
| Raw income | 250,000 | 500,000 | 1,000,000 |
| 5 % | 12,500 | 25,000 | 50,000 |
| % Return | 2.6 | 5.21 | 10.42 |

-------------------------------------------------------------------------------------------------------
-

|  | Contribution | Time (hours) | Risk | Percent |
|---|---|---|---|---|
| Meekle | Funding | -- | 4,800 | .05 |
| Alex | Tetris App | 200 | 16000 | .25 |
| Michael | Tetris Server + App | 200 |  | .25 |
| Mario | Music composition | 60 (2, 2-minute clips) |  |  |
| Third developer | Design | 100 | 8,000 | .15 |
| Desiree | Idea, organizatiopn, execution, art/design, legal |  |  | .30 |

432 reviews, 3.00 for app- make 250,000 in 2 months
250,000 * 1.3

65,000 copies

# EXHIBIT Q

**From:** Desiree Golen
**To:** xiointeractive@googlegroups.com
**Cc:**
**Bcc:**
**Date:** Wed, 11 Feb 2009 00:44:52 -0800
**Subject:** Re: glacier tiles

all looks really great!!

-- is it un-tetris-like to make all of the pieces the same color--
i.e. for nightmare mode, make all pieces red?


On Wed, Feb 11, 2009 at 12:15 AM, Michael Carter
<cartermichael@gmail.com> wrote:
>
>
> On Wed, Feb 11, 2009 at 12:07 AM, Michael Carter <cartermichael@gmail.com>
> wrote:
>>
>>
>> On Tue, Feb 10, 2009 at 11:46 PM, Jacob Rus <jacob.rus@gmail.com> wrote:
>>>
>>> Whoops, missing one!
>>>
>>>
>>
>
>
> >
>

--~--~---------~--~----~------------~-------~--~----~
You received this message because you are subscribed to the Google Groups
"XioInteractive" group.
To post to this group, send email to xiointeractive@googlegroups.com
To unsubscribe from this group, send email to
xiointeractive+unsubscribe@googlegroups.com
For more options, visit this group at http://groups.google.com/group/xiointeractive?hl=en
-~----------~----~----~----~------~----~------~--~---

# EXHIBIT R

## 388

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
--oOo--

TETRIS HOLDING, LLC and
THE TETRIS COMPANY, LLC,

Plaintiffs and
Counterclaim-Defendants,

vs.                          No. 3:09-CV-6115
                                 (FLW) (DEA)

XIO INTERACTIVE INC.,

Defendant and
Counterclaim-Plaintiff.

VIDEOTAPED DEPOSITION OF
DESIREE GOLEN

FRIDAY, FEBRUARY 18, 2011
Volume 3  Pages 388 - 451

REPORTED BY: DIANE M. WINTER, RMR, CRR, CSR NO. 3186
2001-433646

## 390

1    The videotaped deposition of DESIREE GOLEN
2    was taken by the plaintiff at 555 California Street,
3    San Francisco, California, commencing at 12:59 p.m.
4    on FRIDAY, FEBRUARY 18, 2011, before DIANE M.
5    WINTER, CSR, pursuant to notice.
6                    --oOo--
7            A P P E A R A N C E S
8    FOR THE PLAINTIFFS/COUNTERCLAIM-DEFENDANTS:
9        KIRKLAND & ELLIS LLP
         601 Lexington Avenue
10       New York, New York  10022
         212.446.4841
11       BY: BRENDAN KEHOE, ESQ.
         brendan.kehoe@kirkland.com
12
13
     FOR THE DEFENDANT/COUNTERCLAIM-PLAINTIFF:
14
         DURIE TANGRI
15       217 Leidesdorff Street
         San Francisco, California  94111
16       415.362.6666
         BY: JOSEPH C. GRATZ, ESQ.
17       jgratz@durietangri.com
18
19
     ALSO PRESENT: Frank Carlow, Kirkland & Ellis
20              Thomas Filmyer, videographer
21                   --oOo--
22
23
24
25

## 389

1            I N D E X
2        INDEX OF EXAMINATIONS
3                              PAGE
4    BY MR. KEHOE              392
5
6
7
8
9
10
11
12       EXHIBITS MARKED FOR IDENTIFICATION
13   No.    Description           Page
14   Exhibit 208  E-mail chain, top one dated
         11-3-09, Subject: "Thoughts and
15       Feedback Please"
         (XIO-DG-0100927/28)............. 434
16
     Exhibit 215  E-mail chain, top one dated
17       11-8-08, Subject: "Pro Bono Legal
         Consultation" (XIO-DG-0001766/68). 398
18
     Exhibit 216  E-mail dated 9-25-09, Subject:
19       "Hello! Happy National Comic Book
         Day" (XIO-DG-0016034)............. 423
20
21
22
23
24
25

## 391

1            SAN FRANCISCO, CALIFORNIA
2            FRIDAY, FEBRUARY 18, 2011  12:59 P.M.
3                    --oOo--
12:58:26   4        P R O C E E D I N G S
12:58:29   5        VIDEOGRAPHER:  Good afternoon.  Here begins
12:59:12   6    volume 3 videotape No. 1 in the deposition of
12:59:16   7    Desiree Golen in the matter of Tetris Holding, LLC
12:59:23   8    and The Tetris Company, LLC versus Xio Interactive,
12:59:28   9    Inc.  And this case is being heard in the U.S.
12:59:33   10   District Court for the District of New Jersey.  Our
12:59:36   11   case number is 309-CV-6115 (FLW) (DEA).  Today's
12:59:48   12   date is February 18th, 2011.  The time on the video
12:59:53   13   monitor is 12:59 p.m.
12:59:58   14       Your video operator for today is Tom
13:00:03   15   Filmyer.  I'm a notary public contracted by Merrill
13:00:06   16   Court Reporting of San Francisco.  This video
13:00:09   17   deposition is taking place at the Law Offices of
13:00:12   18   Kirkland Ellis in San Francisco.
13:00:14   19       Counsel, would you please voice identify
13:00:16   20   yourselves and state whom you represent.
13:00:18   21       MR. GRATZ:  My name is Joseph Gratz of
13:00:20   22   Durie Tangri LLP, and I'm representing defendant
13:00:25   23   Xio Interactive.
13:00:27   24       VIDEOGRAPHER:  Thank you.
13:00:29   25       MR. KEHOE:  Yes.  I'm Brendan Kehoe with

DESIREE GOLEN - 2/18/2011

## 436

| | | |
|---|---|---|
| 13:57:59 | 1 | then sure, I believe you. |
| 13:58:01 | 2 | Q  Okay.  I will represent that that is when |
| 13:58:03 | 3 | Xio Interactive was sued by The Tetris Company, and |
| 13:58:06 | 4 | that this e-mail is approximately one month before |
| 13:58:08 | 5 | that. |
| 13:58:08 | 6 | A  Okay.  Thanks. |
| 13:58:09 | 7 | Q  Your lawyer, your lawyer can correct me if |
| 13:58:12 | 8 | I'm wrong at some future date. |
| 13:58:15 | 9 | So if you look at the top of the e-mail in |
| 13:58:23 | 10 | the second paragraph it says, "I am in the process |
| 13:58:25 | 11 | of drafting a letter to the firm I am now working |
| 13:58:27 | 12 | with to inform them that I would like to terminate |
| 13:58:30 | 13 | our agreement and seek alternate legal |
| 13:58:33 | 14 | representation." |
| 13:58:34 | 15 | Do you see that? |
| 13:58:35 | 16 | A  Uh-huh. |
| 13:58:36 | 17 | Q  And was that referring to your former |
| 13:58:41 | 18 | lawyer, Jeffrey Neu? |
| 13:58:43 | 19 | A  I believe that was referring to Jeffrey |
| 13:58:48 | 20 | Neu. |
| 13:58:52 | 21 | Q  Were you terminating your relationship with |
| 13:58:54 | 22 | Mr. Neu because he disagreed with your legal |
| 13:58:56 | 23 | position in this case? |
| 13:58:59 | 24 | MR. GRATZ:  Objection.  You can answer the |
| 13:59:04 | 25 | question, but in answering the question I want to |

## 437

| | | |
|---|---|---|
| 13:59:07 | 1 | caution the witness not to reveal the content of any |
| 13:59:10 | 2 | attorney-client communications. |
| 13:59:11 | 3 | THE WITNESS:  Okay.  So my communications |
| 13:59:13 | 4 | with Jeffrey Neu, to my understanding, are |
| 13:59:15 | 5 | privileged communications. |
| 13:59:16 | 6 | But what I can tell you is that |
| 13:59:18 | 7 | Xio Interactive terminated our relationship with |
| 13:59:21 | 8 | Jeffrey Neu because we didn't believe he would be a |
| 13:59:24 | 9 | strong litigation attorney. |
| 13:59:30 | 10 | BY MR. KEHOE: |
| 13:59:32 | 11 | Q  Are there any other reasons? |
| 13:59:35 | 12 | MR. GRATZ:  Same caution to the witness. |
| 13:59:38 | 13 | THE WITNESS:  Again, in the constraints of |
| 13:59:43 | 14 | not disclosing privileged communications, that's all |
| 13:59:46 | 15 | I can say. |
| 13:59:49 | 16 | BY MR. KEHOE: |
| 13:59:49 | 17 | Q  Okay.  Did you ever discuss with Sean |
| 13:59:52 | 18 | DeBruine the reasons that you were terminating your |
| 13:59:54 | 19 | relationship with Mr. Neu? |
| 13:59:59 | 20 | A  I don't recall specifically, but it looks |
| 14:00:02 | 21 | like I wrote him this e-mail here and asked him for |
| 14:00:06 | 22 | his advice. |
| 14:00:08 | 23 | Q  Did he give you his advice? |
| 14:00:14 | 24 | A  I don't, I don't recall exactly.  Is there |
| 14:00:17 | 25 | another e-mail? |

## 438

| | | |
|---|---|---|
| 14:00:19 | 1 | Q  Do you recall -- do you recall what you did |
| 14:00:22 | 2 | for Thanksgiving in November of 2009, two |
| 14:00:25 | 3 | Thanksgivings ago? |
| 14:00:30 | 4 | A  Not, not specifically.  Again, our family |
| 14:00:34 | 5 | has a lot of different celebrations and they are all |
| 14:00:38 | 6 | kind of intermixed -- or all around the world -- or |
| 14:00:41 | 7 | at least the country for now.  So it's hard for me |
| 14:00:44 | 8 | to pinpoint which ones are for which.  Hispanic |
| 14:00:48 | 9 | reunions are a lot of food and a lot of family. |
| 14:00:51 | 10 | Q  Okay.  So is it your testimony today that |
| 14:01:03 | 11 | you do not recall the substance of any |
| 14:01:05 | 12 | communications with Mr. DeBruine in the fall of |
| 14:01:10 | 13 | 2009? |
| 14:01:14 | 14 | A  Off the top of my head I don't really |
| 14:01:17 | 15 | remember what we could have talked about, if we |
| 14:01:19 | 16 | talked.  But it seems here that there's an e-mail. |
| 14:01:26 | 17 | Q  If we talked to Mr. DeBruine do you think |
| 14:01:29 | 18 | he would recall the substance of your conversations |
| 14:01:31 | 19 | with him about Mr. Neu in November of 2009? |
| 14:01:33 | 20 | MR. GRATZ:  Objection, calls for |
| 14:01:35 | 21 | speculation. |
| 14:01:36 | 22 | THE WITNESS:  I think you would have to ask |
| 14:01:39 | 23 | Sean what he recalls or doesn't recall, and believes |
| 14:01:42 | 24 | and doesn't believe. |
| 14:01:44 | 25 | MR. KEHOE:  Okay.  We will perhaps take you |

## 439

| | | |
|---|---|---|
| 14:01:47 | 1 | up on that. |
| 14:01:47 | 2 | BY MR. KEHOE: |
| 14:01:49 | 3 | Q  Okay.  If you look at the bottom of the |
| 14:01:51 | 4 | page, in the first paragraph -- well, it starts out |
| 14:01:57 | 5 | by saying, "Dear Jeff."  Does that refer to Jeffrey |
| 14:02:01 | 6 | Neu? |
| 14:02:01 | 7 | A  It looks like I was writing a draft.  So |
| 14:02:07 | 8 | yes, it seems logical that it would be to Jeffrey |
| 14:02:11 | 9 | Neu. |
| 14:02:11 | 10 | Q  And this is a draft of a termination letter |
| 14:02:14 | 11 | that you were planning to send to Mr. Neu; is that |
| 14:02:18 | 12 | correct? |
| 14:02:18 | 13 | A  This was a draft of some thoughts I had |
| 14:02:21 | 14 | about wording something that I would eventually send to |
| 14:02:27 | 15 | Jeff, and maybe either speak with him or send to |
| 14:02:31 | 16 | him. |
| 14:02:31 | 17 | Q  And that was to terminate your |
| 14:02:33 | 18 | attorney-client relationship with him, correct? |
| 14:02:36 | 19 | A  That was to terminate our relationship. |
| 14:02:39 | 20 | Q  Okay.  The second sentence of the letter |
| 14:02:41 | 21 | says, "Unfortunately, we have been unsatisfied with |
| 14:02:45 | 22 | the approach your firm would like to take on this |
| 14:02:47 | 23 | case (namely that you would prefer not to confront |
| 14:02:51 | 24 | the issue of the copyrightability of" all capital |
| 14:02:55 | 25 | "TETRIS game mechanics." |

# EXHIBIT S

PRIVILEGE LOG

XIO INTERACTIVE, INC.

| ID NUMBER | AUTHOR | RECIPIENT | CC | BCC | ADD'L RECIPIENTS | DATE | DOCUMENT DESCRIPTION | PRIVILEGE CLAIMED |
|---|---|---|---|---|---|---|---|---|
| XIO-HD-XIO-0000014 | Desiree Golen | **G. Reback** | | | | 11/11/2008 | Email re: potential representation | Attorney-client privilege (Fed. R. Evid. 502(g)(1); prepared in anticipation of litigation |
| XIO-HD-XIO-0000021 | Desiree Golen | **Anthony Cormier** | | | | 11/13/2008 | Email re: potential representation | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XIO-HD-XIO-0000039 | **L. Hudd** | xiointeractive@googlegroups.com | | | | Undated | Email re: assessment of Tetris' trademark claims | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XIO-HD-XIO-0000043 | Desiree Golen | Desiree Golen | | | | Various | Drafts of letter to potential counsel | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XIO-HD-XIO-0001455 | Desiree Golen | **Anthony Cormier** | | | | 11/13/2008 | Email re: potential representation | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XIO-HD-XIO-0001484 | Desiree Golen | **G. Reback** | | | | 11/11/2008 | Email re: potential representation | Attorney-client privilege (Fed. R. Evid. 502(g)(1); prepared in anticipation of litigation |
| XIO-HD-XIO-0001593 | Desiree Golen | Desiree Golen | | | | 5/13/2009 | Email notes re: teleconference with **Jeffrey C. Neu** | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XIO-HD-XIO-K-0000010 | Desiree Golen | Desiree Golen | | | | 5/13/2009 | Notes re: teleconference with **Jeffrey C. Neu** | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |

LEGEND:

Counsels' names in **bold**.

PRIVILEGE LOG

XIO INTERACTIVE, INC.

| ID NUMBER | AUTHOR | RECIPIENT | CC | BCC | ADD'L RECIPIENTS | DATE | DOCUMENT DESCRIPTION | PRIVILEGE CLAIMED |
|---|---|---|---|---|---|---|---|---|
| XXX-PRIV-XXX-XIO-DG-0100213 | **Jeffrey C. Neu** | Desiree Golen | | | | 1/19/2009 | Email from attorney re: corporate formation issues | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XXX-PRIV-XXX-XIO-DG-0100214 | **Jeffrey C. Neu** | Desiree Golen | | | | 1/19/2009 | Email from attorney re: trade dress issues | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XXX-PRIV-XXX-XIO-DG-0100215-16 | Desiree Golen | **Jeffrey C. Neu** | | | | 1/20/2009 | Email to attorney re: corporate formation issues | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XXX-PRIV-XXX-XIO-DG-0100217 | **Sean  DeBruine** | Desiree Golen | | | | 1/23/2009 | Email from attorney re: relevant case law | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XXX-PRIV-XXX-XIO-DG-0100218-19 | Desiree Golen | **Sean DeBruine** | | | | 1/23/2009 | Email to attorney re: relevant case law | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XXX-PRIV-XXX-XIO-DG-0100220 | **Jeffrey C. Neu** | Desiree Golen | | | | 1/27/2009 | Email from attorney re: corporate formation issues | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XXX-PRIV-XXX-XIO-DG-0100221-22 | Desiree Golen | Michael Carter | | | **Jeffrey C. Neu** | 1/28/2009 | Email forwarding email from attorney re: corporate formation issues | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |

LEGEND:

Counsels' names in **bold.**

PRIVILEGE LOG

XIO INTERACTIVE, INC.

| ID NUMBER | AUTHOR | RECIPIENT | CC | BCC | ADD'L RECIPIENTS | DATE | DOCUMENT DESCRIPTION | PRIVILEGE CLAIMED |
|---|---|---|---|---|---|---|---|---|
| XXX-PRIV-XXX-XIO-DG-0100727-29 | Desiree Golen | **Sean DeBruine** | | | | 9/25/2009 | Email to attorney re: trade dress case law | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XXX-PRIV-XXX-XIO-DG-0100730-31 | **Jeffrey C. Neu** | Desiree Golen | | | | 9/29/2009 | Email from attorney attaching research memo | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XXX-PRIV-XXX-XIO-DG-0100732-33 | Desiree Golen | **Jeffrey C. Neu** | | | | 9/29/2009 | Email to attorney re: research memo | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XXX-PRIV-XXX-XIO-DG-0100734-39 | Desiree Golen | **Sean DeBruine** | | | | 9/29/2009 | Email to attorney re: trade dress case law | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XXX-PRIV-XXX-XIO-DG-0100740-42 | Desiree Golen | Martin Hunt | | | **Jeffrey C. Neu,** Desiree Golen | 9/29/2009 | Email forwarding email from attorney attaching research memo | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XXX-PRIV-XXX-XIO-DG-0100743-46 | **Sean DeBruine** | Desiree Golen | | | | 9/30/2009 | Email from attorney re: trade dress case law | |
| XXX-PRIV-XXX-XIO-DG-0100750-54 | Desiree Golen | **Sean DeBruine** | | | | 10/1/2009 | Email to attorney re: trade dress case law | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XXX-PRIV-XXX-XIO-DG-0100765-87 | **Sean DeBruine** | Desiree Golen | | | | 10/14/2009 | Email from attorney re: terms of contract with Apple | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |

LEGEND:

Counsels' names in **bold.**

# EXHIBIT T

**From:** Desiree Golen
**To:** "Joshua C. Cook"
**Cc:**
**Bcc:**
**Date:** Tue, 20 Oct 2009 16:15:11 -0700
**Subject:** Re: Il Borgo Dinner

Hi Josh,

How are you? It's been quite a month for me.

As I might have mentioned before, I am involved in a legal dispute
with the Tetris Company. My company makes multiplayer iPhone games,
and our first title, Mino, is a network tetromino game. Mino faired
quite well
on the App Store-- we were featured on Apple's "Whats Hot" list and
have acquired a strong community of supporters through the Touch
Arcade. Unfortunately, with this success we have also caught the
attention of the Tetris Company. A few days after being featured, the
Tetris Company sent us a Cease and Desist letter (copyright
infringement) which resulted in Apple removing our application from
the App Store.

I believe that the Tetris Company is engaging in unfair competitive
behavior by intimidating independent developers off of the online and
mobile market. The underlying issue is that the Tetris Company lacks a
patent on the game idea/game mechanics of Tetris. Therefore, the game
rules of Tetris (a rectangular grid, the use of falling tetrominos,
the ability to rotate and translate them in space, and the act of
clearing lines) should lie in the public domain. Yet, the Tetris
Company claims that its copyright protects the Tetris "game rights" a
term that is ambiguous and covers uncopyrightable material.

Until now, the Tetris Company has maintained a monopoly of the
Tetromino space without ever resolving the issue in court-- all
previous cases have been settled out of court, including the most
recent situation with OMGPOP and their online game BLOCKLES
(http://bit.ly/3qSZWr, http://bit.ly/3A3l9z ).

"Tetris" is the world's most popular video game in history. In 2005
The Tetris Company sold exclusive licensing on the mobile platform to
JAMDAT for around 134 million (http://bit.ly/zCAu5). JAMDAT in turn
sold its license to EA for around 680 million
(http://www.gamasutra.com/php-bin/news_index.php?story=7452). EA's
Tetris on mobile now comprises 10 percent of all games sold on mobile
phones in 2008.
(http://www.gamasutra.com/view/feature/4129/the_man_who_got_tetris_sb).

**XIO-DG-0100821**

Clearly, the TC can not afford to lose this privilege.

I am currently working with my attorney on a legal strategy to get
Mino back on the App Store. However, we have begun to disagree on some
fundamental issues. As a result, I have been trying to learn as much
as possible about copyright case law before I make any big decisions.
You mentioned that you have a team of IP attorneys at Gunderson
Dettmer. I would love to meet to discuss the case and possible
representation.

Please let me know what you think,

Desiree

--
Desiree Golen
CEO, Xio Interactive
Network Game Development on the Mobile Platform
xiointeractive.com
Mountain View, CA
(650) 866-5583


On Tue, Oct 6, 2009 at 4:25 PM, Joshua C. Cook <jcook@gunder.com> wrote:
> Sounds good Desiree.  Looking forward to it.
>
>
>
>
> Information in this electronic message relating to the tax treatment of a taxpayer
and/or the tax consequences of one or more transactions (collectively, the "Tax
Information"), if any, is not intended to be, and cannot be, used by any direct or indirect
recipient of this electronic message to avoid any penalties that may be imposed on such
direct or indirect recipient.  Additionally, such Tax Information, if any, may have been
written to support the promotion or marketing of the transactions addressed in this
electronic message.  The tax consequences of entering into such transaction(s) will vary
depending on the taxpayer's specific circumstances; accordingly, the direct and indirect
recipients of this electronic message should consult their own independent tax advisor
with respect to the tax consequences of entering into the transactions discussed herein.
>
> Joshua C. Cook
>
> Gunderson Dettmer Stough
> Villeneuve Franklin & Hachigian, LLP
> 1200 Seaport Blvd.
> Redwood City, CA  94063

XIO-DG-0100822

> email: jcook@gunder.com
>
>
> This email and any attachments may contain private, confidential and privileged material
for the sole use of the intended recipient. If you are not the intended recipient, please
immediately delete this email and any attachments.
> -----Original Message-----
>
> From: Desiree Golen [mailto:desiree.golen@gmail.com]
> Sent: Wednesday, September 30, 2009 1:13 PM
> To: Joshua C. Cook
> Subject: Re: Il Borgo Dinner
>
> Hi Josh,
>
> Great to hear from you! I would actually love to get together at some point. This week
has been hectic, but I'll let you know when things calm down, and coffee would be great.
>
> Talk to you soon,
>
> Desiree
>
> --
> Desiree Golen
> CEO, Xio Interactive
> Network Game Development on the Mobile Platform xiointeractive.com Mountain View,
CA
> (650) 866-5583
>
> On Wed, Sep 30, 2009 at 10:13 AM, Joshua C. Cook <jcook@gunder.com> wrote:
>> Desiree
>>
>> Pleasure meeting you the other night at Il Borgo. Would be great to
>> hear some more about what your doing. I know you had said you had met
>> with a bunch of attorneys at this point, so would definitely
>> understand not wanting to chat with another. In any case, our offices
>> are down here in Redwood City, so would pretty easy to meet somewhere
>> in Palo Alto for coffee one of these mornings.
>>
>> Best,
>> Josh
>>
>>
>>
>> Information in this electronic message relating to the tax treatment
>> of a taxpayer and/or the tax consequences of one or more transactions
>> (collectively the "Tax Information"), if any, is not intended to be,

XIO-DG-0100823

>> electronic message to avoid any penalties that may be imposed on such
>> direct or indirect recipient. Additionally, such Tax Information, if
>> any, may have been written to support the promotion or marketing of
>> the transactions addressed in this electronic message. The tax
>> consequences of entering into such transaction(s) will vary depending
>> on the taxpayer's specific circumstances; accordingly, the direct and
>> indirect recipients of this electronic message should consult their
>> own independent tax advisor with respect to the tax consequences of
>> entering into the transactions discussed herein.
>>
>> Joshua C. Cook
>>
>> Gunderson Dettmer Stough
>> Villeneuve Franklin & Hachigian, LLP
>> 1200 Seaport Blvd.
>> Redwood City, CA 94063
>>
>> Phone: 650-463-5267; Fax: 877-881-5598
>> email: jcook@gunder.com
>>
>> This email and any attachments may contain private, confidential and
>> privileged material for the sole use of the intended recipient. If you
>> are not the intended recipient, please immediately delete this email
>> and any attachments.
>>
>>
>

XIO-DG-0100824

# EXHIBIT U

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TETRIS HOLDING, LLC and THE TETRIS COMPANY, LLC,<br><br>    Plaintiffs and<br>    Counterclaim-Defendants,<br><br> - against -<br><br>XIO INTERACTIVE INC.,<br><br>    Defendant and<br>    Counterclaim-Plaintiff. | Civil Action No. 3:09-cv-6115 (FLW) (DEA)<br><br>Hon. Freda L. Wolfson, U.S.D.J.<br>Hon. Douglas E. Arpert, U.S.M.J. |

**PLAINTIFFS TETRIS HOLDING, LLC AND
THE TETRIS COMPANY, LLC'S FIRST SET OF REQUESTS
<u>FOR THE PRODUCTION AND INSPECTION OF DOCUMENTS AND THINGS</u>**

   PLEASE TAKE NOTICE that, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court of New Jersey, plaintiffs and counterclaim-defendants Tetris Holding, LLC and The Tetris Company, LLC (collectively, "Plaintiffs") hereby request that defendant and counterclaim plaintiff Xio Interactive Inc. ("Defendant") produce for examination, inspection and copying by Plaintiffs, their attorneys or others acting on their behalf, the documents and things set forth below at the offices of Plaintiffs' attorneys, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, no later than thirty (30) days after service of these document requests.

**<u>DEFINITIONS</u>**

   Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.  As used in these requests, the words set forth below shall be defined as follows:

   1.  The term "ADVERTISEMENT" means a commercial message or advertisement

in any medium, including without limitation, television, radio, movies, magazines, newspapers, brochures, the Internet or World Wide Web, signage, and billboards.

2.      The term "ANSWER" means the Answer filed by Defendant in this litigation on January 15, 2010 and any amendments thereto.

3.      The term "APPLE" means Apple, Inc., as well as its agents, representatives, employees, officers, directors, or assigns.

4.      The term "APP STORE" means and refers to the online digital distribution platform for APPLE, offering applications for purchase and download to APPLE mobile devices, including, but not limited to the iPhone.

5.      The term "BLUE PLANET SOFTWARE" means Blue Planet Software, Inc., as well as its agents, representatives, employees, officers, directors, or assigns.

6.      The term "COMMUNICATION(S)" should be interpreted in its broadest sense to include without limitation all oral or written communications, including any writings, e-mails, or other electronically-stored information as that term is defined by Fed. R. Civ. P. 34(a).

7.      The term "COMPLAINT" means the Amended Complaint filed by Plaintiffs in this litigation on December 10, 2009 and any amendments thereto.

8.      The term "CONCERNING" should be construed in the broadest possible sense to mean referring, regarding, containing, identifying, monitoring, constituting, reflecting, embodying, comprising, stating, dealing with, commenting on, responding to, analyzing, and describing, consisting of, discussing, evidencing, mentioning, pertaining to, citing, summarizing, or bearing any logical or factual connection with the matter discussed, as these terms are understood in the broadest sense.

9.      The term "CONFERENCE" means any trade show or conference CONCERNING

ELECTRONIC GAMES, including, without limitation, New York Tech Meetup, Startup

Launchpad, Game Developer's Conference, Electronic Entertainment Expo, Consumer

Electronics Show, PAX East, Casual Connect, and LA Games Conference.

10.     The term "COUNTERCLAIM" means the Counterclaim filed by the Defendant in

this litigation on January 15, 2010 and any amendments thereto.

11.     The term "DOCUMENT(S)" means any written, printed, typed, recorded or

graphic matter, however produced, reproduced or stored, including the originals and all

nonidentical copies, whether different from the originals by reason of any notations made on

such copies or otherwise, in the actual or constructive possession, custody or control of XIO,

including, but not limited to, contracts, letter agreements, records, correspondence,

COMMUNICATIONS, electronically stored information, e-mails, tweets, Web log (blog) or

Web forum posts or comments, text messages on portable devices, Blackberry Messenger

messages, SMS messages, memoranda, handwritten notes, source code comments, source

repository logs, records or summaries of negotiations, records or summaries of interviews or

conversations, audio or video recordings, all Web-based media, photographs, corporate minutes,

diaries, telephone logs, instant messaging logs, chat room logs, schedules, drawings, product

storyboards, product mockups, statistical statements, work papers, disks, data cards, films, data

processing files, charts, graphs, microfiche, microfilm, contracts, notices, reports, recitals,

statements, worksheets, abstracts, resumes, summaries, jottings, market data, books, journals,

ledgers, audits, maps, diagrams, research documents, newspapers, appointment books, desk

calendars, project management charts (e.g., Gantt charts), task management records (e.g., To-do

lists), expense reports, computer printout and other computer readable or electronic records, and

all drafts or modifications thereof, and all non-identical copies of any such items.  Any such

DOCUMENT bearing on any sheet or part thereof any marks such as initials, stamped indices, comments or notations or any character or characters which are not part of the signed text or photographic reproduction thereof is to be considered as a separate DOCUMENT.  Where there is any question about whether a tangible item otherwise described in these requests falls within the definition of "DOCUMENT(s)," such tangible item shall be produced.

12.     The term "ELECTRONIC GAME" means and refers to any video game, computer game, game that can be played online, and/or game that can be played on any electronic device, including, without limitation, iPhones, cell phones, smart phones, PDAs, portable game platforms, console systems and personal computers (including, without limitation, desktops, laptops and notebooks).

13.     The term "INFRINGING GAME" means and refers to any ELECTRONIC GAME withdrawn, taken-down, or otherwise removed from public availability (including without limitation any ELECTRONIC GAME removed from the APPLE APP STORE) as a result of, or in connection with, the actions of PLAINTIFFS, BLUE PLANET SOFTWARE, or TETRIS LICENSEE(S).

14.     The term "MARKET RESEARCH" means and refers to any type of research, study, survey, or analysis of consumers or potential consumers of a product or potential product or service including, without limitation, focus groups, consumer surveys, market analyses, behavioral analyses, and consumer research.

15.     The term "MINO" means Defendant's electronic games named *Mino* or *Mino Lite*, and any prior or subsequent versions (including, without limitation, all demonstration, prototype, concept design, alpha and beta versions, and any other versions under a different name).

16.     The term "PERSON" means and refers to any natural person, firm, corporation, partnership, group, association, governmental entity or business entity.

17.     The term "PLAINTIFFS" means Tetris Holding, LLC and The Tetris Company, LLC, as well as their agents, representatives, employees, officers, directors, or assigns.

18.     The term "SURVEY" means any trademark, trade dress, or copyright survey, search, investigation, market research, market study, focus group, poll, or similar activity.

19.     The term "TETRIS" means Plaintiffs' electronic game *Tetris*, including, but not limited to *Tetris Version 0, Tetris Version 1, Tetris Version 2, Tetris, Tetris NES Edition, Tetris Game Boy, Tetris Zone, Tetris (EA Multiplayer), Tetris Evolution, Tetris (iPhone)*, *Tetris Pop*, *Tetris DX*, and *Tetris Mission 2009*.

20.     The term "TETRIS HOLDING" means plaintiff Tetris Holding, LLC, as well as its agents, representatives, employees, officers, directors, or assigns.

21.     The term "TETRIS LICENSEE" means any PERSON to whom PLAINTIFFS have licensed intellectual property rights to TETRIS, including, but not limited to, EA Mobile, Nintendo, Atari, Capcom, THQ, Radica, and NHN Corporation.

22.     The term "TETROMINO BLOG" means the website located at http://desiree47.wordpress.com/ and any posts or content hosted from that site.

23.     The term "TTC" means plaintiff The Tetris Company, LLC, as well as its agents, representatives, employees, officers, directors, or assigns.

24.     The term "XIO" means and refers to defendant Xio Interactive Inc., and any of its agents, attorneys, employees, representatives or assigns and all other persons acting or purporting to act on its behalf (including but not limited to Desiree Golen).

25.     The words "and" and "or" shall be construed both conjunctively and

disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of a request any DOCUMENTS which otherwise would not be brought within its scope.

26.     "Any" and "all" are mutually interchangeable and are meant to encompass each other.

27.     The singular includes the plural and vice versa.

28.     The past tense shall be construed to include the present tense and vice versa.

### INSTRUCTIONS

1.      These requests are intended to cover all DOCUMENTS in Defendant's possession, custody or control, whether located at any of Defendant's offices, or at the offices of Defendant's successors or assigns, accountants, agents, employees, representatives, attorneys, assistants, bankers, brokers, or others, or at any other place.  If any DOCUMENT was, but is no longer, in Defendant's possession or subject to Defendant's control, or in existence, state whether it (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred, voluntarily or involuntarily, to others (and if so, to whom); or (iv) has been disposed of in some other manner. If Defendant has reason to believe a responsive DOCUMENT is in the possession of a third party, state (i) the basis for this belief, (ii) the party believed to be in possession of the responsive DOCUMENT(s), (iii) where Defendant believes the responsive DOCUMENT(s) may be located; and (iv) other information as is sufficient to identify the DOCUMENT for a subpoena duces tecum.

2.      The production should include every DOCUMENT defined herein that is known to Defendant and every such DOCUMENT which can be located or discovered by reasonably diligent efforts by Defendant.

3.     If any of the requested DOCUMENTS cannot be disclosed or produced in full, produce the DOCUMENTS to the extent possible, and specify Defendant's reasons for Defendant's inability to produce the remainder, stating whatever information, knowledge, or belief Defendant has concerning the unproduced portions.

4.     If any of the DOCUMENTS requested below are claimed to be privileged or are otherwise withheld, Defendant is requested to provide a privilege log which identifies:  (i) the basis for asserting the claim of privilege, and the precise ground on which the DOCUMENT is withheld; (ii) the type of DOCUMENT; (iii) the identity of the DOCUMENT'S author(s) and its addressee(s), and every person who prepared or received the DOCUMENT or any portion thereof; (iv) the relationship of its author(s) and its addressee(s); (v) the title and other identifying data of the DOCUMENT; (vi) the date of the DOCUMENT; and (vii) the subject matter of the DOCUMENT and/or any attachment(s) to the DOCUMENT; (viii) the number of pages comprising the DOCUMENT; and (ix) whether the DOCUMENT is typewritten or handwritten.

5.     If a DOCUMENT responsive to a request has been lost or destroyed, it should be identified as follows: (i) preparer, addressor (if different); (ii) addressee; (iii) each recipient and each person to whom distributed or shown; (iv) date prepared; (v) date transmitted (if different); (vi) date received; (vii) description of contents and subject matter; (viii) date of destruction; (ix) manner of destruction; (x) name, title and address of the person who directed that the DOCUMENT be destroyed and (if different) the person who destroyed the DOCUMENT; (xi) the reason for the DOCUMENT'S destruction; (xii) the names of persons having knowledge of the destruction; and (xiii) a full description of the efforts made to locate the DOCUMENT.

6.      All electronically stored information responsive to a request shall be produced in TIFF format with all corresponding metadata and any extracted character or character recognition information.  In addition, Plaintiffs reserve the right to request particular electronically stored information in another format, including native file format.

7.      Any DOCUMENT responsive to a request should be produced in and with a file folder and other DOCUMENT (e.g., envelope, file cabinet marker) in or with which the DOCUMENT was located when this request was served.

8.      All pages of any DOCUMENT(s) now stapled or fastened together should be produced stapled or fastened together.

9.      If it is otherwise not possible to produce any DOCUMENT called for by any request, or if any part of any request is objected to, the reasons for the objection should be stated with specificity as to all grounds and, for the convenience of the Court and the parties, each request should be quoted in full immediately preceding the objection.

10.     These DOCUMENTS requests shall be deemed continuing and require further and supplemental production by Defendant as and whenever Defendant acquires, makes or locates additional DOCUMENTS between the time of the initial production and the time of final judgment in this action.

## DOCUMENTS TO BE PRODUCED

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS CONCERNING the conception, authorship, creation, origin, launch, or sources of inspiration for MINO.

**Response:**


**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS CONCERNING the development, modification, testing, enhancement, maintenance, and/or implementation of MINO.

**Response:**


**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS CONCERNING the source(s) of information used to create, author, develop, test, enhance, launch, maintain, and/or implement MINO.

**Response:**


**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS CONCERNING the launch of MINO, including, but not limited to, launches on the APP STORE.

**Response:**

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS CONCERNING the display, distribution, sale, reproduction, or public performance of MINO, including, but not limited to, distribution through the APP STORE.

**Response:**

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS CONCERNING when and how XIO decided to create, author, develop, test, modify, launch, enhance, and/or implement MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 7:**

DOCUMENTS sufficient to identify any and all computers, floppy disks, hard disks, compact discs, flash drives, and/or other electronic devices used to create, author, develop, launch, test, enhance, maintain, and/or implement MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS CONCERNING any and all research conducted by or on behalf of XIO to create, author, develop, launch, modify, test, enhance, maintain, and/or implement MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS CONCERNING TETRIS (including, but not limited to, TETRIS games from TETRIS LICENSEE(s)) as a source of inspiration for or factor in the creation, authorship, testing, development, modification, launch, enhancement, maintenance, and/or implementation of MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS CONCERNING XIO'S awareness of, knowledge of, or access to TETRIS (including, but not limited to, TETRIS games from TETRIS LICENSEE(s)) prior to or during the creation, authorship, testing, development, launch, enhancement, modification, maintenance, and/or implementation of MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS CONCERNING any INFRINGING GAME.

**Response:**

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS CONCERNING XIO'S awareness of, knowledge of, or access to any INFRINGING GAME.

**Response:**

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS CONCERNING COMMUNICATIONS made by XIO or Desiree

Golen CONCERNING any INFRINGING GAME.

**Response:**

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS CONCERNING the TETROMINO BLOG.

**Response:**

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS supporting, refuting, or CONCERNING opinions expressed on the

TETROMINO BLOG.

**Response:**

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS or COMMUNICATIONS made through the TETROMINO BLOG.

**Response:**

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS CONCERNING COMMUNICATIONS made by XIO regarding

TETRIS, the intellectual property of the PLAINTIFFS, or enforcement activities by the

PLAINTIFFS—including without limitation comments or postings made to

http://forum.freeadvise.com/, http://www.tuaw.com/, or http://abednarz.net/.

    **Response:**


**REQUEST FOR PRODUCTION NO. 18:**

    All DOCUMENTS CONCERNING COMMUNICATIONS made by Desiree Golen

regarding TETRIS, the intellectual property of the PLAINTIFFS, or enforcement activities by

the PLAINTIFFS—including without limitation comments or postings made to

http://forum.freeadvise.com/, http://www.tuaw.com/, or http://abednarz.net/.

    **Response:**


**REQUEST FOR PRODUCTION NO. 19:**

    DOCUMENTS sufficient to show the identity of any and all PERSONS who participated

in or were responsible for the conception, creation, authorship, development, launch, testing,

enhancement, modification, maintenance, and/or implementation of MINO.

    **Response:**


**REQUEST FOR PRODUCTION NO. 20:**

    An executable electronic copy of all versions of MINO.

    **Response:**

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS CONCERNING the visual elements, appearance, and expression of MINO, including, but not limited to, video captures and screenshots of MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS CONCERNING TETRIS, including, but not limited to, any TETRIS games from TETRIS LICENSEE(s).

**Response:**

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS CONCERNING BLUE PLANET SOFTWARE, TTC and/or TETRIS HOLDING.

**Response:**

**REQUEST FOR PRODUCTION NO. 24:**

All copies of TETRIS in XIO'S custody, possession or control.

**Response:**

**REQUEST FOR PRODUCTION NO. 25:**

Documents sufficient to identify any and all copies of TETRIS that are or were in the possession of, owned, or used by XIO.

**Response:**

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS CONCERNING COMMUNICATIONS between and among XIO and/or any other PERSON CONCERNING TETRIS, BLUE PLANET SOFTWARE, TTC and/or TETRIS HOLDING.

**Response:**

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS CONCERNING any MARKET RESEARCH CONCERNING TETRIS.

**Response:**

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS reflecting competitive information, data or analyses CONCERNING TETRIS, BLUE PLANET SOFTWARE, TTC and/or TETRIS HOLDING.

**Response:**

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS CONCERNING the ownership of MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS CONCERNING the licensing, assignment and/or transfer of ownership of MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS CONCERNING the registration of copyrights CONCERNING MINO, including, but not limited to, copies of any copyright applications, copyright registrations, and correspondence with the U.S. Copyright Office.

**Response:**

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS CONCERNING the recordation in the U.S. Copyright Office of any transfer or assignment of copyrights related to MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS CONCERNING any filings with the U.S. Patent and Trademark Office CONCERNING MINO, including, but not limited to, patent applications, applications for trademark registrations, and correspondence with the U.S. Patent and Trademark Office.

**Response:**

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS CONCERNING whether MINO infringes the intellectual property rights or other proprietary rights of BLUE PLANET SOFTWARE, TTC, TETRIS HOLDING, and/or any other PERSON, including, but not limited to, any clearance memoranda and opinion letters of counsel.

**Response:**

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS CONCERNING the enforcement of intellectual property rights or other proprietary rights in MINO, including, without limitation, through cease and desist letters, litigation, or other means or proceedings.

**Response:**

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS CONCERNING the enforcement of intellectual property rights or other proprietary rights in any ELECTRONIC GAME, including, without limitation, through cease and desist letters, litigation, or other means or proceedings.

**Response:**

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS, including pleadings, deposition transcripts, declarations and other materials CONCERNING any lawsuit, arbitration, mediation or other legal proceeding to which XIO was or is a party, which involved MINO or any other ELECTRONIC GAME.

**Response:**


**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS CONCERNING any claims that MINO infringed any PERSON'S intellectual property rights or other proprietary rights.

**Response:**


**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS CONCERNING any claims that any ELECTRONIC GAME developed by XIO infringed any PERSON'S intellectual property rights or other proprietary rights.

**Response:**


**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS CONCERNING any ELECTRONIC GAME authored, designed or created by XIO, including without limitation any plans to do so.

**Response:**

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS CONCERNING any ELECTRONIC GAME distributed, licensed, sold, or publicly displayed by XIO, including without limitation any plans to do so.

**Response:**

**REQUEST FOR PRODUCTION NO. 42:**

All DOCUMENTS CONCERNING any objections to XIO'S distribution of any ELECTRONIC GAME (including, without limitation, MINO) or to XIO'S rights in or to any ELECTRONIC GAME (including, without limitation, MINO).

**Response:**

**REQUEST FOR PRODUCTION NO. 43:**

ALL DOCUMENTS CONCERNING MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 44:**

Documents sufficient to show the number of people who have played, purchased, or downloaded MINO from its launch to the present.

**Response:**

**REQUEST FOR PRODUCTION NO. 45:**

Documents sufficient to show the number of times MINO has been played, purchased, or downloaded from its launch to the present.

**Response:**


## REQUEST FOR PRODUCTION NO. 46:

Documents sufficient to show the number of times MINO has been purchased or downloaded from the APP STORE, from its launch to the present.

**Response:**


## REQUEST FOR PRODUCTION NO. 47:

All DOCUMENTS CONCERNING the decision to offer MINO on the APP STORE or through any other source.

**Response:**


## REQUEST FOR PRODUCTION NO. 48:

All DOCUMENTS CONCERNING CORRESPONDENCE between XIO (or its attorneys), on the one hand, and APPLE (including its attorneys), on the other hand.

**Response:**


## REQUEST FOR PRODUCTION NO. 49:

All DOCUMENTS CONCERNING any agreement, including without limitation the Apple Developer Agreement, between XIO and APPLE, including, but not limited to, drafts of any agreement and COMMUNICATIONS CONCERNING any agreement between XIO and APPLE.

**Response:**

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS CONCERNING APPLE'S approval process of MINO game for sale on the APP STORE.

**Response:**

**REQUEST FOR PRODUCTION NO. 51:**

All DOCUMENTS CONCERNING the decision to use the name "*Mino*" or "*Mino Lite*" for MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS CONCERNING alternate, considered, or proposed names for MINO (other than "*Mino*"), including, but not limited to "*Tetris*" and/or "*Tetramino.*"

**Response:**

**REQUEST FOR PRODUCTION NO. 53:**

All DOCUMENTS CONCERNING any Web site (other than the APP STORE) that makes or made MINO available for play.

**Response:**

**REQUEST FOR PRODUCTION NO. 54:**

All DOCUMENTS CONCERNING how XIO, APPLE, or any other PERSON refers to or categorizes MINO.

**Response:**


**REQUEST FOR PRODUCTION NO. 55:**

All DOCUMENTS CONCERNING how XIO, APPLE, or any other PERSON refers to or categorizes TETRIS.

**Response:**


**REQUEST FOR PRODUCTION NO. 56:**

DOCUMENTS sufficient to show all advertising, marketing or promotions CONCERNING MINO, including, but not limited to, (a) copies of all ADVERTISEMENTS, (b) DOCUMENTS sufficient to show the dates all ADVERTISEMENTS appeared, (c) in what outlet the ADVERTISEMENTS appeared, (d) the circulation of each ADVERTISEMENT, and (e) the cost of each ADVERTISEMENT.

**Response:**


**REQUEST FOR PRODUCTION NO. 57:**

DOCUMENTS sufficient to show all advertising, marketing, or promotional expenditures CONCERNING MINO.

**Response:**


**REQUEST FOR PRODUCTION NO. 58:**

All DOCUMENTS CONCERNING MARKET RESEARCH for MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 59:**

All DOCUMENTS CONCERNING advertising, marketing or branding strategies, forecasts, and/or plans CONCERNING MINO.

**Response:**


**REQUEST FOR PRODUCTION NO. 60:**

All articles, reviews, comments on the APP STORE, presentations, interviews, Web logs (blogs), Web forum posts or comments, videos (including, but not limited to, videos on YouTube, Vimeo, and Hulu), Facebook status updates, messages, wall postings, or other comments, Tweets, Diggs, press releases, or statements to the press, and any drafts of the foregoing, CONCERNING MINO.

**Response:**


**REQUEST FOR PRODUCTION NO. 61:**

All DOCUMENTS CONCERNING any similarity or dissimilarity between TETRIS and MINO.

**Response:**


**REQUEST FOR PRODUCTION NO. 62:**

All DOCUMENTS CONCERNING whether MINO copies, replicates, or in any way imitates TETRIS.

**Response:**

**REQUEST FOR PRODUCTION NO. 63:**

All DOCUMENTS CONCERNING actual or potential confusion between MINO and TETRIS.

**Response:**

**REQUEST FOR PRODUCTION NO. 64:**

All DOCUMENTS CONCERNING confusion as to the origin, sponsorship, affiliation, connection and/or association of MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 65:**

All DOCUMENTS CONCERNING any belief, inquiry, suggestion, implication or inference that MINO, on the one hand, may be connected with, associated with, sponsored by or affiliated in any way with TETRIS, PLAINTIFFS, or any TETRIS LICENSEE, on the other hand.

**Response:**

**REQUEST FOR PRODUCTION NO. 66:**

DOCUMENTS sufficient to IDENTIFY all PERSONS with knowledge of any actual or perceived confusion between MINO and TETRIS.

**Response:**

**REQUEST FOR PRODUCTION NO. 67:**

All DOCUMENTS CONCERNING misdirected mail, e-mail, telephone calls, comments, posts or inquiries CONCERNING any connection or association between MINO, on the one hand, and TETRIS, PLAINTIFFS, or any TETRIS LICENSEE, on the other hand.

**Response:**

**REQUEST FOR PRODUCTION NO. 68:**

All COMMUNICATIONS, whether oral or written, received by XIO from any PERSON that suggests, implies or infers any connection or association between MINO, on the one hand, and TETRIS, PLAINTIFFS, or any TETRIS LICENSEE, on the other hand, or that inquires as to whether there is or may be any such connection or association.

**Response:**

**REQUEST FOR PRODUCTION NO. 69:**

All DOCUMENTS CONCERNING any comments, feedback, criticism, complaints, evaluations, or inquiries regarding source of origin, or any other information ever received from any customer, prospective customer or from any other PERSON CONCERNING MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 70:**

DOCUMENTS sufficient to show the market for MINO, including, without limitation, the characteristics and demographics of the market, its size and geographic location, the number

of consumer households constituting the market, the number of consumers/households who play

MINO, the age, gender, size, consumer/household income, education level, and/or sophistication

of the customer base, and/or the level of care employed by customers in making decisions to play

MINO.

**Response:**


**REQUEST FOR PRODUCTION NO. 71:**

All DOCUMENTS CONCERNING the quality or reputation of MINO, XIO, including,

without limitation, articles, reviews, accolades, awards, complaints, or any other DOCUMENTS

or COMMUNICATIONS evaluating, praising or criticizing MINO or XIO.

**Response:**

**REQUEST FOR PRODUCTION NO. 72:**

DOCUMENTS sufficient to show XIO'S current or former business partners, investors,

or owners.

**Response:**


**REQUEST FOR PRODUCTION NO. 73:**

DOCUMENTS sufficient to show XIO'S corporate formation and structure.

**Response:**

**REQUEST FOR PRODUCTION NO. 74:**

DOCUMENTS sufficient to show XIO'S current or former principals, officers, directors, or employees.

**Response:**

**REQUEST FOR PRODUCTION NO. 75:**

DOCUMENTS sufficient to show XIO'S organizational structure.

**Response:**

**REQUEST FOR PRODUCTION NO. 76:**

All DOCUMENTS CONCERNING XIO'S engagement, use, or relationship with independent contractors, service providers, or other outside agents (including but not limited to providers of computer programming, graphic design, or other game development).

**Response:**

**REQUEST FOR PRODUCTION NO. 77:**

All articles, presentations, interviews, Web logs (blogs), Web forum posts or comments, videos (including, but not limited to, videos on YouTube, Vimeo, and Hulu), Facebook status updates, messages, wall postings, or other comments, Tweets, Diggs, press releases, or statements to the press, and any drafts of the foregoing, authored or given (in whole or in part) by XIO CONCERNING ELECTRONIC GAMES, TETRIS, or MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 78:**

All articles, presentations, interviews, Web logs (blogs), Web forum posts or comments, videos (including, but not limited to, videos on YouTube, Vimeo, and Hulu), Facebook status updates, messages, wall postings, or other comments, Tweets, Diggs, press releases, or statements to the press, and any drafts of the foregoing, authored or given (in whole or in part) by Desiree Golen CONCERNING ELECTRONIC GAMES, TETRIS, or MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 79:**

All DOCUMENTS CONCERNING any CONFERENCE attended by XIO, including, but not limited to, any video or audio recordings of speeches from the CONFERENCE and copies of any presentations (and drafts of such presentations) given or received at the CONFERENCE.

**Response:**

**REQUEST FOR PRODUCTION NO. 80:**

All DOCUMENTS CONCERNING any CONFERENCE attended by Desiree Golen, including, but not limited to, any video or audio recordings of speeches from the CONFERENCE and copies of any presentations (and drafts of such presentations) given or received at the CONFERENCE.

**Response:**

**REQUEST FOR PRODUCTION NO. 81:**

All DOCUMENTS CONCERNING XIO'S past, present or future efforts and plans to monetize MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 82:**

All DOCUMENTS CONCERNING business plans for MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 83:**

All DOCUMENTS CONCERNING any valuation or financial projections CONCERNING MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 84:**

All DOCUMENTS distributed to or shared with any current or former investor or potential investor of XIO CONCERNING MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 85:**

DOCUMENTS sufficient to show XIO'S revenues, expenses, and profits (both gross and net) from MINO.

**Response:**

**REQUEST FOR PRODUCTION NO. 86:**

DOCUMENTS sufficient to show XIO'S revenues, expenses, and profits (both gross and net).

**Response:**

**REQUEST FOR PRODUCTION NO. 87:**

DOCUMENTS sufficient to show the revenues, licensing fees, royalties, expenses, and profits attributed to any Web site, or other source, including, but not limited to, the APP STORE, that makes MINO available for download or play.

**Response:**

**REQUEST FOR PRODUCTION NO. 88:**

All DOCUMENTS CONCERNING CORRESPONDENCE between XIO (or their attorneys), on the one hand, and TTC and/or TETRIS HOLDING (including their attorneys), on the other hand.

**Response:**

**REQUEST FOR PRODUCTION NO. 89:**

All DOCUMENTS CONCERNING this lawsuit including, without limitation, COMMUNICATIONS about this lawsuit and COMMUNICATIONS about the facts, allegations, defenses and claims set forth in the COMPLAINT and ANSWER.

**Response:**

**REQUEST FOR PRODUCTION NO. 90:**

All DOCUMENTS CONCERNING any SURVEY of MINO and/or TETRIS.

**Response:**


**REQUEST FOR PRODUCTION NO. 91:**

All DOCUMENTS CONCERNING any expert reports in this litigation, including, but not limited to, drafts thereof and COMMUNICATIONS CONCERNING the expert reports.

**Response:**


**REQUEST FOR PRODUCTION NO. 92:**

DOCUMENTS sufficient to IDENTIFY all PERSONS with whom XIO has communicated about this litigation, including, but not limited to, the facts, allegations, defenses and claims set forth in the COMPLAINT and ANSWER.

**Response:**


**REQUEST FOR PRODUCTION NO. 93:**

DOCUMENTS sufficient to show the existence, nature and extent of any third-party funding of, contribution to, or reimbursement of fees, costs or expenses incurred in connection with this lawsuit.

**Response:**

**REQUEST FOR PRODUCTION NO. 94:**

DOCUMENTS sufficient to show the existence, nature and extent of any insurance, indemnification, or similar agreement or arrangement to fund, contribute to, pay for, or provide reimbursement for any potential fees, costs, expenses, or liability incurred in connection with this lawsuit.

**Response:**

**REQUEST FOR PRODUCTION NO. 95:**

All DOCUMENTS that XIO intend to use to support or prove their claims or defenses in this litigation.

**Response:**

**REQUEST FOR PRODUCTION NO. 96:**

All DOCUMENTS supporting, refuting, or CONCERNING Paragraph 29 of the ANSWER, namely Defendant's denial that the TETRIS trade dress is distinctive.

**Response:**

**REQUEST FOR PRODUCTION NO. 97:**

All DOCUMENTS supporting, refuting, or CONCERNING Paragraph 2 of the COUNTERCLAIM, namely Defendant's allegation that the term "Mino" is derived from the word "tetramino" or "tetromino."

**Response:**

**REQUEST FOR PRODUCTION NO. 98:**

All DOCUMENTS supporting, refuting, or CONCERNING Paragraph 2 of the COUNTERCLAIM, namely Defendant's allegation that the term "tetramino" or "tetromino" "far-predates the invention of the game *Tetris*."

**Response:**

**REQUEST FOR PRODUCTION NO. 99:**

All DOCUMENTS supporting, refuting, or CONCERNING the First Affirmative Defense in the ANSWER that PLAINTIFFS' claims are "barred in whole or in part by the doctrine of fair use."

**Response:**

**REQUEST FOR PRODUCTION NO. 100:**

All DOCUMENTS supporting, refuting, or CONCERNING the Second Affirmative Defense in the ANSWER that PLAINTIFFS' claims are "barred in whole or in part by license, consent, acquiescence, waiver, laches, unclean hands and/or estoppel."

**Response:**

**REQUEST FOR PRODUCTION NO. 101:**

All DOCUMENTS supporting, refuting, or CONCERNING the Third Affirmative Defense in the ANSWER that PLAINTIFFS' claims are "barred in whole or in part because Defendant is an innocent infringer."

**Response:**

**REQUEST FOR PRODUCTION NO. 102:**

     All DOCUMENTS supporting, refuting, or CONCERNING the Fourth Affirmative

Defense in the ANSWER that PLAINTIFFS' claims are "barred in whole or in part by the

doctrine of copyright misuse."

     **Response:**


**REQUEST FOR PRODUCTION NO. 103:**

     All DOCUMENTS supporting, refuting, or CONCERNING the Fifth Affirmative

Defense in the ANSWER that PLAINTIFFS' claims are "barred on the ground that Plaintiffs

failed to take steps to mitigate their damages."

     **Response:**


**REQUEST FOR PRODUCTION NO. 104:**

     All DOCUMENTS supporting, refuting, or CONCERNING the Sixth Affirmative

Defense in the ANSWER that PLAINTIFFS' claims are "barred in whole or in part by the

doctrine of preemption."

     **Response:**


**REQUEST FOR PRODUCTION NO. 105:**

     All DOCUMENTS supporting, refuting, or CONCERNING the Seventh Affirmative

Defense in the ANSWER that PLAINTIFFS' claims are "barred in whole or in part by the

doctrine of nominative use."

     **Response:**

**REQUEST FOR PRODUCTION NO. 106:**

All DOCUMENTS supporting, refuting, or CONCERNING the Eighth Affirmative

Defense in the ANSWER that PLAINTIFFS' claims are "barred in whole or in part by First

Amendment to the Constitution of the United States of America."

**Response:**

**REQUEST FOR PRODUCTION NO. 107:**

All DOCUMENTS supporting, refuting, or CONCERNING the Ninth Affirmative

Defense in the ANSWER that PLAINTIFFS' claims are "barred in whole or in part by the

doctrine of functionality."

**Response:**

**REQUEST FOR PRODUCTION NO. 108:**

All DOCUMENTS supporting, refuting, or CONCERNING the Tenth Affirmative

Defense in the ANSWER that PLAINTIFFS' claims are "barred in whole or in part by the

doctrine of genericness."

**Response:**

**REQUEST FOR PRODUCTION NO. 109:**

All DOCUMENTS supporting, refuting, or CONCERNING Defendant's

COUNTERCLAIM that PLAINTIFFS "materially misrepresented that XIO'S games *Mino* and

*Mino Lite* were infringing."

**Response:**

**REQUEST FOR PRODUCTION NO. 110:**

DOCUMENTS sufficient to show XIO'S document retention policies, including the

retention of e-mails and/or other electronic documents.

**Response:**


Dated:  February  9, 2010

_____/s/ Brendan T. Kehoe_____

Dale Cendali
Johanna Schmitt
Brendan T. Kehoe

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Robert J. Schoenberg
RIKER DANZIG SCHERER HYLAND &
PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800

## <u>CERTIFICATE OF SERVICE</u>

I, Brendan Kehoe, hereby certify that on this date I caused a copy of the foregoing

**PLAINTIFFS TETRIS HOLDING, LLC AND THE TETRIS COMPANY, LLC'S FIRST**

**SET OF REQUESTS FOR THE PRODUCTION AND INSPECTION OF DOCUMENTS**

**AND THINGS** to be served via electronic mail upon the following counsel for Defendant Xio

Interactive, Inc.:

> Mark A. Lemley, Esq.
> Sonali Maitra, Esq.
> Durie Tangri LLP
> 217 Leidesdorff Street
> San Francisco, California 94111

_/s/ Brendan T. Kehoe_
Brendan T. Kehoe

Dated: February 9, 2010

# EXHIBIT V

# KIRKLAND & ELLIS LLP

**AND AFFILIATED PARTNERSHIPS**

601 Lexington Avenue
New York, New York 10022

Johanna Schmitt
To Call Writer Directly:
(212) 446-4841
johanna.schmitt@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

March 9, 2011

**Via Facsimile 609-989-0451**

Hon. Douglas E. Arpert, U.S.M.J.
United States District Court
Clarkson S. Fisher Federal Bldg.
& U.S. Courthouse
402 E. State Street
Trenton, New Jersey 08608

Re:     ***Tetris Holding, LLC, et al. v. Xio Interactive, Inc.***
        **Civil Action No. 09-6115 (FLW)(DEA)**
        **Status Conference:   March 10, 2011 at 3:00 PM (ET)**

Dear Judge Arpert:

We are counsel for plaintiffs and counterclaim-defendants Tetris Holding, LLC and The Tetris Company, LLC (collectively, "The Tetris Company") in the above-referenced matter. In addition, The Tetris Company is also represented in this matter by Robert Schoenberg, Esq. of Riker Danzig Scherer Hyland & Perretti LLP.   We would like to bring the following discovery dispute to Your Honor's attention in advance of the upcoming status conference.

In this case, The Tetris Company contends that defendant and counterclaim-plaintiff Xio Interactive Inc.'s ("Xio") *Mino* game infringes the copyrights and trade dress of The Tetris Company's *Tetris* game.  In response, Xio has asserted an "innocent infringer" defense and denies that it infringed willfully.  As discussed below, Xio is improperly withholding evidence that is directly relevant to these issues on the grounds of privilege — namely evidence that at least one attorney told Xio that *Mino* may infringe *Tetris* and thus supports The Tetris Company's position that Xio is not an innocent infringer and that it acted willfully.  At the same time, Xio has produced purportedly privileged evidence on the very same issue — namely evidence that, according to Xio, shows that other attorneys told them that *Mino* did not infringe *Tetris* and thus will be used by Xio to support its position that it is an innocent infringer and acted in good faith.  By selectively withholding certain evidence on the same issue, Xio is improperly using the privilege as both a "sword and shield."  Moreover, Xio has failed to exercise reasonable care in preventing the disclosure of potentially privileged materials and thus

# KIRKLAND & ELLIS LLP

Hon. Douglas E. Arpert
March 9, 2011
Page 2

has waived any privilege with respect to the evidence that we seek.

We have conferred with Xio's counsel in an attempt to resolve this issue, but our efforts were unsuccessful.  L. Civ. R. 37.1(a)(1).  We asked Xio to produce all communications with any attorneys prior to the commencement of this litigation regarding the narrow issue of whether *Mino* infringed *Tetris*, which include communications about what parts of *Tetris* constitute protectable expression.  In the alternative, we asked Xio to agree that it would not rely on any of this evidence in this case.  On March 7, 2011, we received opposing counsel's final refusal of our request.  As such, we are writing Your Honor to ask for guidance as to how to proceed in order to obtain Xio's compliance with the discovery rules.

## 1.    *Xio Is Improperly Using Privilege As Both A Sword And Shield*

As noted above, Xio has asserted an "innocent infringer" defense.  *See* Answer to First Amended Complaint and Counterclaim of Defs. & Counterclaim Pls., Third Affirmative Defense.   The "innocent infringer" defense does not excuse liability as the copyright statute provides for strict liability, rather it goes to the amount of damages.  *See* 17 U.S.C. § 504(c)(2).  To counter this defense, The Tetris Company needs to show that Xio was aware or had "reason to believe" that *Mino* infringed *Tetris*. *Id*.  In addition, Xio has denied The Tetris Company's claim of willful infringement. *See* Answer to First Amended Complaint and Counterclaim of Defs. & Counterclaim Pls., ¶¶ 1, 4, 6, 38, 48, 53, 58.  In order to prove willfulness, The Tetris Company must establish that Xio acted with reckless disregard of our clients' rights.  *See Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1010-1011 (2d Cir. 1995).

In support of its innocent infringer defense and to counter the willfulness claim, Xio has produced numerous communications (and has testified about such communications) with lawyers with whom it consulted before the start of this lawsuit on the issue of whether Xio's *Mino* game infringed The Tetris Company's *Tetris* game.[1]  Many of these communications were originally withheld as privileged.  However, Xio had no choice but to produce these documents after Xio's CEO, Desiree Golen, testified on February 10, 2011 about these communications and said she did not have an expectation of privacy when communicating with them.  The purportedly privileged evidence that has been produced by Xio relates to communications with attorneys who, according to Xio's witnesses, told Xio that *Mino* would not infringe *Tetris*.  We have grave doubts about the dependability of this "advice" given the fact that Xio did not even show these attorneys the games at issue so they could conduct a side-by-side review.  Nor did they tell them

---

[1] On February 9, 2010, The Tetris Company served its First Set of Interrogatories, which included Interrogatory No. 9, seeking the identification of people with whom Xio has communicated about The Tetris Company's actual or anticipated claims or this litigation.   On February 8, 2011 — almost a year after the interrogatories were served and following our repeated requests — Xio finally identified such individuals, including attorneys.

## KIRKLAND & ELLIS LLP

Hon. Douglas E. Arpert
March 9, 2011
Page 3

about relevant law, such as U.S. Customs decisions which held that many visual aspects of *Tetris* (including ones that are copied in *Mino*) are copyrightable. *See, e.g.*, Mem. to Anthony O. Cormier from Joanne R Stump, Chief, U.S. Customs Service, Intellectual Property Rights Branch, re: Pocket Arcade 256 Games in 1 (U.S. Copyright Office Registration no. PAu 1,284,318), Oct. 25, 2001, 2001 WL 1754754 (Customs). Nonetheless, we have no doubt that Xio will try to use this evidence to support its innocent infringer defense and rebut The Tetris Company's claim of willfulness.

While producing this purportedly privileged evidence which Xio believes supports its position, Xio continues to selectively withhold similar evidence that weakens its position. Specifically, Xio is withholding evidence about similar communications with Jeffrey Neu, another lawyer with whom Xio consulted regarding infringement before this litigation commenced. We have reason to believe that Xio is withholding this evidence because Mr. Neu told Xio that *Mino* may infringe our clients' *Tetris* game. For example, a document that has been produced indicates that, in October 2009, Mr. Neu began to disagree with Xio on some "fundamental issues." Similarly, in an email, dated November 13, 2008, Xio's CEO wrote that "… some say that I clearly would win any case against the TTC, while others are less encouraging and very doubtful." These documents indicate that Xio received unfavorable opinions from Mr. Neu and perhaps others regarding whether *Mino* infringed our clients' rights, yet they proceeded anyway.

Clearly, Xio is trying to use privilege as both a "sword and shield." In other words, Xio is selectively claiming privilege as to certain evidence that it believes is unfavorable to it (such as Xio's communications with Mr. Neu regarding infringement) while selectively disclosing other communications with attorneys that Xio believes are favorable to its position (such as Xio's communications with other lawyers regarding infringement). Such use of privilege is improper and highly prejudicial to The Tetris Company. *See, e.g., Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."); *Zip Dee, Inc. v. Domestic Corp.*, 1997 WL 323814 (N.D. Ill. 1997) (compelling production of all of defendant's communications with its counsel on infringement-related issues because defendant intended to rely on non-privileged opinions of two other attorneys).

Xio's counsel has told us that Xio is not asserting an "advice of counsel" defense and thus it does not have to produce evidence of communications with Mr. Neu regarding whether *Mino* infringes *Tetris.* However, lack of an "advice of counsel" defense is no excuse where, as here, Xio is selectively producing evidence of communications with other attorneys to support its innocent infringer defense and to demonstrate good faith and lack of willfulness. *See Dorr-*

KIRKLAND & ELLIS LLP

Hon. Douglas E. Arpert
March 9, 2011
Page 4

*Oliver, Inc. v. Fluid-Quip, Inc.*, 834 F. Supp. 1008 (N.D. Ill. 1993) (holding that defendant's offering of communications with counsel as evidence of their good faith and lack of willful infringement injected the opinion of counsel into the case and was a waiver of privilege, even though the defendant was not asserting an advice of counsel defense).

In sum, Xio should not be allowed to selectively produce evidence of communications with the attorneys that gave them purportedly favorable advice, while withholding communications with other attorneys, such as Jeffrey Neu, that are not favorable to Xio's position in this case. *See Zip Dee*, 1997 WL 323814 at *1 ("[O]nce a party has produced a favorable opinion as a defense to a willfulness claim . . . it cannot pick and choose among its disclosures by concealing any unfavorable opinions that it may have received."). Thus, Xio has waived any privilege on this issue and thus should produce all evidence on this issue.

**2.      *Xio Has Failed To Exercise Reasonable Care In Preventing The Disclosure Of Potentially Privileged Materials***

In addition, as discussed below, Xio's total lack of diligence and inconsistent positions with regard to privileged materials is utterly shocking. Notably, as discussed below, Xio's counsel failed to assert privilege over certain documents — including a document reflecting communications with Jeffrey Neu about copyright infringement analysis — even *after* we cited such documents to Xio's counsel as potentially privileged. Further, before the litigation started, Xio disclosed a purportedly privileged communication with Mr. Neu to a third party. As such, it is clear that Xio failed to exercise reasonable care in preventing the disclosure of certain materials. *See Bensel v. Air Line Pilots Ass'n.*, 248 F.R.D. 177, 180-81 (D.N.J 2008) (holding that privilege was waived because the producing party did not take reasonable precautions to prevent the disclosure of documents that, among other things, had the law firm's name on them).

On September 30, 2010, Xio produced its documents.[2] Upon an initial review, we discovered that dozens of apparently privileged documents had been produced by Xio, including documents reflecting Mr. Neu's copyright infringement analysis of *Mino*, such as notes of a conversation between Xio's CEO and Mr. Neu on this topic (the "Copyright Analysis Notes")[3]. As we later learned, these documents were likely produced because Xio failed to conduct a routine page-by-page privilege review (like the one conducted by The Tetris Company), but instead ran unspecified electronic search terms, which seemingly did not include such basic and obvious search terms as "privilege," "confidential," or "work product."

---

[2] As outlined in our letters to Your Honor, dated October 26 and 28, 2010, Xio's production was seriously flawed for a variety of reasons, and thus our ability to review Xio's document production was severely hampered and delayed.

[3] The Copyright Analysis Notes were produced at XIO-DG-0016404.

# KIRKLAND & ELLIS LLP

Hon. Douglas E. Arpert
March 9, 2011
Page 5

On October 20, 2010, we promptly alerted Xio's counsel and identified dozens of such potentially privileged documents by Bates number, including the Copyright Analysis Notes.  As a result, Xio's counsel "clawed back" approximately 100 documents from its production.  These "clawed back" documents included some, but not all, of the documents we identified to Xio's counsel as potentially privileged.  Notably, Xio did not "claw back" the Copyright Analysis Notes and informed us that "Tetris may continue with its review of the documents not listed [on Xio's "claw back" list]," including the Copyright Analysis Notes.

On December 1, 2010, Xio produced a privilege log, which was replete with errors and inconsistencies.  For example, Xio's privilege log (1) included documents that we identified to Xio's counsel by Bates-number, but which Xio did not "claw back" in October and told us we could continue to review, (2) omitted documents on Xio's "claw back" list, and (3) identified documents that had already been produced.  Xio served an amended privilege log on January 4, 2011.  Neither Xio's original privilege log, nor the amended privilege log, included the Copyright Analysis Notes.  On January 28, 2011, we tried to question Desiree Golen (Xio's CEO) about the Copyright Analysis Notes.  Only then did Xio's counsel claim privilege (after months of not claiming privilege), and instructed Ms. Golen not to answer any questions about it.

Further, even before this lawsuit started, on November 3, 2009, Xio's CEO, Ms. Golen, disclosed information to a third party, Sean DeBruine, that Xio now belatedly claims is privileged.  Specifically, Ms. Golen sent Mr. DeBruine a draft of a communication she planned to send to Mr. Neu, which read: "we have been unsatisfied with the approach your firm would like to take on this case (namely that you would prefer not to confront the issue of the copyrightability of TETRIS game mechanics), and we would like to look for alternate legal representation more in line with our goals."  According to Xio's privilege log, an email was sent to Mr. Neu on November 5, 2009 regarding his representation of Xio, but that communication with Mr. Neu (among others) has been withheld.

Accordingly, it is clear that Xio failed to take reasonable care preventing the disclosure of potentially privileged materials regarding Mr. Neu's infringement analysis (even after we brought such documents to their attention).  Accordingly, any such privilege in the Copyright Analysis Notes and other such documents has been waived.[4]

---

[4] We note that Xio may have consulted with other attorneys on this issue before the start of this litigation, and these communications also have been withheld as privileged.  We are currently awaiting Xio's counsel response on this issue.

# KIRKLAND & ELLIS LLP

Hon. Douglas E. Arpert
March 9, 2011
Page 6


We will be prepared to discuss this issue at the upcoming telephonic status conference on Thursday, March 10, 2011 at 3:00 pm (ET).  We thank Your Honor for consideration of this application.

Respectfully submitted,

Johanna Schmitt

cc:     Sonali Maitra, Esq.
        Joseph Gratz, Esq.
        Donald Robinson, Esq.
        Robert J. Schoenberg, Esq.
        (All via electronic mail)

# EXHIBIT W

Brendan T. Kehoe/New
York/Kirkland-Ellis

04/06/2011 05:38 PM

To   Joseph Gratz <JGratz@durietangri.com>

cc   Johanna Schmitt <johanna.schmitt@kirkland.com>, #Xio
Litigation <Service-Xio-Litigation@kirkland.com>, Sonali
Maitra <SMaitra@durietangri.com>

bcc   Brendan T. Kehoe/New York/Kirkland-Ellis@K&E

Subject   RE: Tetris v. Xio 📄

Sonali,

I am writing to follow up regarding the issues raised in the email thread below, in our March 9, 2011 letter to the Court, and in our recent meet and confer discussions regarding Xio's attempt to use the attorney-client privilege as both a sword and a shield.

As you know, TTC has requested that Xio produce evidence of all communications to or from attorneys regarding infringement issues (including documents that reflect such communications) up until the filing of the complaint in this case.  TTC has requested these materials because Xio has indicated that it intends to rely on its own "good faith" to rebut TTC's infringement claims and support its affirmative defenses.  In lieu of Xio producing the evidence requested by TTC, we have discussed a stipulation that would satisfy our concerns.

 From our standpoint, the stipulation must contain the following provisions:

        1) Xio agrees not to rely on communications to or from attorneys for any purpose, including the fact that Xio contacted attorneys prior to launching Mino.  In our recent meet and confer discussion with Joe on Friday, April 1, he agreed that Xio will not to rely on communications from attorneys for any purpose.  With regard to communications to attorneys, Xio cannot rely on the fact that it contacted attorneys because the only plausible purpose of doing so is to show Xio's purported "good faith."  But, this is impermissible because Xio continues to withhold the attorneys' response to these communications, leaving unanswered the question of what advice Xio received.  Also, "[m]erely asking a lawyer a question is not in itself probative of good faith," which instead turns on what legal advice was received and whether that advice was followed.  See Dorr-Oliver, Inc. v. Fluid-Quip, Inc., 834 F. Supp. 1008, 1012 (N.D. Ill. 1993) (precluding defendants from relying on the fact that they had contacted counsel without revealing the substance of counsel's advice).  In other words, allowing Xio to use the attorney-client privilege in this manner would be misleading and unfairly prejudicial because it gives the impression that Xio acted in good faith without disclosing all relevant evidence bearing on this issue--such as what Xio disclosed to the attorneys and what advice the attorneys provided in response.  Thus, we must insist on this provision in the stipulation.

        2) Xio agrees that it will not rely on evidence of an independent legal analysis.  First of all, it does not appear that Xio undertook any such analysis.  For example, at the March 10 conference with Judge Arpert, you indicated that you could prove to us that Xio conducted a legal analysis that was wholly independent of the advice it sought or received from the lawyers it contacted.  However, the only evidence that you have pointed to is a November 13, 2008 email from Desiree Golen to Gary Reback, an attorney with the firm Carr/Ferrell in Silicon Valley.  XIO-DG-0002141-43.  However, Xio's own documents and privilege log show that Xio had been communicating with lawyers as early as October 2008 (XIO-DG-0001354 ; XIO-PRIV-XXX-XIO-DG-0100029), and that Xio had been communicating "in anticipation of litigation" with its IP attorney, Jeffrey Neu, beginning at least as early as November 6, 2008 (XXX-PRIV-XXX-XIO-DG-0100031), which was one week prior to the November 13 email to Mr. Reback.  Thus, it is simply not plausible that Ms. Golen's email to Mr. Reback represents her own independent analysis as it came on the heels of Ms. Golen's communications with Xio's IP attorney.  Moreover, Xio cannot plausibly argue that the content of this email reflects Ms. Golen's "independent" analysis of any legal issues as she testified in her deposition that her analysis was predicated on communications with lawyers.  (D. Golen Dep. 251:11-255:25 ("Q. What people did you speak to that you were relying on in forming your [legal] opinion . . . before releasing Mino? A. Okay. So that would be Julie Turner, Jeffrey Neu, Sean DeBruine, Colin Chapman, I believe. . . . Q. And how many of those people are lawyers?  A.

To my understanding, all of those people are lawyers.").)   Additionally, the email to Mr. Reback plainly seeks legal advice (see the headers, "Copyright infringement?", "My question for you," and "Would you say I have a case against the Tetris Company LLC?"), and thus unquestionably falls within the holding in *Dorr-Oliver, Inc.*, making it impermissible because Xio cannot rely on the fact that it contacted attorneys without disclosing the content of the attorneys' advice that it contacted.

Similarly, other documents that you have argued reflect Xio's purely "independent" legal analysis, also appear to reflect Xio's communications with attorneys.  For example, Maura Carter's analysis of copyright cases (XIO-DG-002118) was written on November 12, 2008, several days after she consulted with Mr. Neu (along with Desiree Golen) on November 6, 2008.  XXX-PRIV-XXX-XIO-DG-0100031.  And, the Tetris Company Legal Notes (XIO-HD-DG-0016182) of September 29, 2009, were written almost a year after Xio first contacted Mr. Neu, and appear to have been finalized on the same day that Xio received a privileged memo from Mr. Neu.   XIO-XXX-PRIV-XXX-XIO-DG-0100730.   The Tetris Company Legal Notes are far more detailed and extensive than the initial emails that Xio was writing to attorneys in the fall of 2008.  Additionally, Ms. Golen's legal blog was written in December 2008 and January 2009, after Ms. Golen had been in touch with several attorneys regarding potential infringement issues.

Secondly, we note that even if Xio had undertaken its own legal analysis prior to contacting attorneys in October 2008, we fail to see how Xio's state of mind at that time--a half a year before Mino was released--is relevant at all.  That situation is no different than any time a client approaches an attorney seeking legal advice.  But, as *Dorr-Oliver* instructs, what is relevant to "good faith" is what advice the attorney gave and whether that advice was followed.  834 F. Supp. at 1012.  Thus, any such evidence is doubly irrelevant.

3)  TTC may rely on the fact that Xio failed to obtain an opinion of counsel that Mino does not infringe Tetris and thus that Xio did not proceed in good faith when it released Mino.  Absent full disclosure of Xio's pre-suit communications with attorneys regarding the advice of counsel, TTC is entitled to an adverse inference of willfulness.  *Zip Dee, Inc. v. Domestic Corp.*, 1997 WL 323814, at *1 (N.D. Ill. June 11, 1997).  That is because Xio had an "affirmative duty of due care to avoid infringement," and its only options are to produce all communications bearing on its good faith (i.e., all communications with counsel) or to "invoke the attorney-client privilege," thereby withholding documents, and "run[] the risk of an adverse inference as to willfulness." *Id.*  We will not give up this presumption simply because you do not want to disclose all of the attorney communications.  Thus, this is also a necessary component of the stipulation.

On a related note, during our meet and confer on April 4th, you agreed to produce Xio's revised (and fully corrected) privilege log by no later than April 22, 2011.  We need the log to reflect any documents that Xio has clawed back and that Xio has released others from its privilege log.  Without a corrected log, it is very difficult to determine what Xio is still claiming is privileged.

Best,
Brendan

Brendan T. Kehoe | Kirkland & Ellis LLP
601 Lexington Avenue | New York, New York 10022
(212) 446-4824 DIRECT | (212) 446-6460 FAX
brendan.kehoe@kirkland.com



**Joseph Gratz
<JGratz@durietangri.com>**

03/30/2011 03:37 PM

To  "Brendan T. Kehoe" <brendan.kehoe@kirkland.com>, Sonali Maitra <SMaitra@durietangri.com>

cc  Johanna Schmitt <johanna.schmitt@kirkland.com>, #Xio Litigation <Service-Xio-Litigation@kirkland.com>

Subject  RE: Tetris v. Xio

Brendan,

Xio is willing to stipulate that it will not rely on any communications from attorneys in asserting any defense in this matter.  That is a compromise that addresses Tetris's concern that Xio may introduce communications from some of its attorneys but not others: the proposed stipulation is that no communications from attorneys will be relied upon.  Advice from attorneys will be used neither as a sword nor as a shield if this stipulation is agreed to.

Xio is not willing to stipulate that it will not rely on its own legal analysis, as you demand.  Nor is it appropriate to demand that Xio not rely on the fact of communications from attorneys, as opposed to their content; the fact of such communications is not privileged to begin with.

Please confirm that Tetris accepts Xio's stipulation, or explain why it does not address your concern that Xio may introduce advice from some attorneys but not others.

Joe

**From:** Brendan T. Kehoe [mailto:brendan.kehoe@kirkland.com]
**Sent:** Wednesday, March 30, 2011 12:04 PM
**To:** Sonali Maitra
**Cc:** Joseph Gratz; Johanna Schmitt; #Xio Litigation
**Subject:** RE: Tetris v. Xio

Sonali,

I want to confirm several points regarding Xio's proposed stipulation.  During the March 10 conference with Judge Arpert (and our accompanying March 9 letter to the Court), we had raised several concerns beyond Xio's affirmative defenses, including that Xio not rely on communications -- including the fact that it consulted attorneys -- for any purpose, including, without limitation, to rebut TTC's claim that Xio acted wilfully in infringing TTC's copyrights or that Xio acted in good faith (one of the likelihood of confusion factors).  Thus, we understand the stipulation to mean that Xio will not rely on communications with attorneys for any purpose.  Second, you had mentioned that Xio may try to rely on its own "independent legal analysis," but, as Desiree Golen testified, the company's own analysis was predicated on communications with lawyers.  (D. Golen Dep. 251:11-255:25.)  Thus, we also understand that Xio will not rely on such a legal analysis, including, without limitation, the written analyses produced at XIO-DG-0016404 ("Copyright Analysis Notes"), XIO-HD-DG-0016182 ("Tetris Company Legal Notes"), and XIO-DG-002118 (Maura Carter's legal analysis) (collectively, the "Legal Analysis").

Based on the foregoing, we propose the following stipulation to clarify these points:  Xio will not rely on any communications with attorneys for any purpose in this litigation, including, without limitation, the fact that Xio had communications with attorneys prior the filing of the complaint or its Legal Analysis.

Best,
Brendan

Brendan T. Kehoe | Kirkland & Ellis LLP
601 Lexington Avenue | New York, New York 10022
(212) 446-4824 DIRECT | (212) 446-6460 FAX
brendan.kehoe@kirkland.com

**Sonali Maitra <**                    To "Brendan T. Kehoe" <brendan.kehoe@kirkland.com>

**SMaitra@durietangri.com**>

03/29/2011 04:15 PM

ccJoseph Gratz <JGratz@durietangri.com>, #Xio Litigation <Service-Xio-Litigation@kirkland.com>, Johanna Schmitt <johanna.schmitt@kirkland.com>

SubjRE: Tetris v. Xio
ect

Brendan,

Xio hereby stipulates that it will not rely on any communications from attorneys in asserting any defense in this matter.

Sonali
Durie Tangri LLP

**From:** Brendan T. Kehoe [mailto:brendan.kehoe@kirkland.com]
**Sent:** Tuesday, March 29, 2011 1:04 PM
**To:** Sonali Maitra
**Cc:** Joseph Gratz; #Xio Litigation; Johanna Schmitt
**Subject:** RE: Tetris v. Xio

Sonali,

Several weeks have gone by since Judge Arpert instructed you on March 10 to address the issue of Xio using the attorney-client privilege as both a sword and a shield.  In that time, TTC has made its highly proprietary source code available for your inspection, despite great burden in having done so, yet we have not received from Xio any meaningful proposal addressing the sword/shield issue.

At this point, I believe that there are two alternatives on the table -- first, you may propose a stipulation that Xio will not rely on any communications with any attorney to support its defenses in this matter or, second, Xio will produce all communications with attorneys from prior to the filing of the complaint in this action regarding the question of whether Mino infringes Tetris.  Please let us know by Wednesday, March 30, which alternative Xio will follow so that we may promptly determine the next steps to take.  In the absence of a response, however, TTC will take whatever actions it deems reasonably necessary to resolve this matter.

Best,
Brendan


Brendan T. Kehoe | Kirkland & Ellis LLP
601 Lexington Avenue | New York, New York 10022
(212) 446-4824 DIRECT | (212) 446-6460 FAX
brendan.kehoe@kirkland.com

**Johanna Schmitt/New
York/Kirkland-Ellis**

03/24/2011 06:26 PM

ToSonali Maitra <SMaitra@durietangri.com>
ccJoseph Gratz <JGratz@durietangri.com>, #Xio Litigation <
Service-Xio-Litigation@kirkland.com>

Subje RE: Tetris v. Xio **Link**
ct

Sonali,

We cannot agree to your proposal.  For one thing, at this point, we don't know the content or volume of the documents Xio may produce.   Further, in numerous depositions, the Xio witnesses were instructed not to answer questions about communications with Mr. Neu and other attorneys.  If Xio decides to produce these communications with Mr. Neu and other attorneys, we will seek to reopen discovery on this issue, including deposing Xio's witnesses on this subject.  We also reserve our right to seek costs associated with these depositions as it was Xio's choice to proceed this way.    Further, if Xio decides to produce these documents, as indicated in our letter to Judge Arpert, we are seeking communications with attorneys prior to the commencement of this litigation regarding infringement.

Please let us know promptly how Xio intends to proceed.

- Johanna

**Johanna Schmitt** / KIRKLAND & ELLIS LLP
601 Lexington Avenue / New York, New York 10022
Tel: 212.446.4841  |  Fax: 212.446.6460  |  johanna.schmitt@kirkland.com

**Sonali Maitra <**
**SMaitra@durietangri.com>**

03/17/2011 07:27 PM

|  | To | Johanna Schmitt <johanna.schmitt@kirkland.com> |
| --- | --- | --- |
|  | cc | Joseph Gratz <JGratz@durietangri.com>, #Xio Litigation < Service-Xio-Litigation@kirkland.com> |
|  | Subject | RE: Tetris v. Xio |

Johanna,

We're working on it.  I understand that you are requesting this information urgently, but a number of Xio witnesses on this issue have been out-of-state this past week.

In the meantime, I'd like to discuss an issue with you.  One of our primary concerns has been that Plaintiffs will use the production of any communications between Xio and Jeffrey Neu to reopen fact discovery and engage in a new round of depositions.  We're also concerned that even if we do exclude any informal, non-privileged conversations with attorneys in asserting our innocent infringers' defense, Plaintiffs will sandbag Xio and argue that Xio never talked to any attorneys and that thus its defense fails.  To alleviate these concerns, are Plaintiffs willing to agree that it will not seek any non-expert depositions if Xio were to produce communications between Xio and Jeffrey Neu regarding infringement, dated prior to the release of Mino—and provided that Xio does the same with respect to the demo source code and its compiled executable?

Nothing herein shall be read to waive our rights to assert privilege over Xio's communications with Jeffrey Neu (or any other privileged communications). I simply want to gauge Plaintiffs' position on the issue so as best to come to a decision regarding production.

Sonali

Durie Tangri LLP


**From:** Johanna Schmitt [mailto:johanna.schmitt@kirkland.com]
**Sent:** Thursday, March 17, 2011 8:15 AM
**To:** Sonali Maitra
**Cc:** Joseph Gratz; #Xio Litigation
**Subject:** Tetris v. Xio

Sonali,

At the court conference, you represented that Xio was not going to rely on any evidence relating to any lawyers in this case.   With regard to Xio's innocent infringer defense, you said that Xio would only rely on the "independent" legal analysis that Xio did on its own with no input from lawyers.   Can you please identify the independent legal analysis to which you referred so we can consider this issue further?

It has been a week since the court conference -- and I have sent you multiple emails about this issue -- but have received no response from you.   Please advise.

- Johanna

**Johanna Schmitt** / KIRKLAND & ELLISLLP
601 Lexington Avenue / New York, New York 10022
Tel: 212.446.4841  |  Fax: 212.446.6460  |  johanna.schmitt@kirkland.com

**************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT X

AMENDED PRIVILEGE LOG

XIO INTERACTIVE, INC.

| ID NUMBER | AUTHOR | RECIPIENT | CC | BCC | ADD'L RECIPIENTS | DATE | DOCUMENT DESCRIPTION | PRIVILEGE CLAIMED |
|---|---|---|---|---|---|---|---|---|
| XXX-PRIV-XXX-XIO-MH-0100328-29 | Michael Carter | **Joseph Gratz,** Martin Hunt, Mario Balibrera, Desiree Golen, Alexander Haro | | | | 6/28/2010 | Email re: discovery issues | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2) |
| XXX-PRIV-XXX-XIO-MH-0100365-66 | Michael Carter | Martin Hunt, **David Ratner** | | | | 7/16/2010 | Email transmitting background information re: new venture | Attorney-client privilege (Fed. R. Evid. 502(g)(1) |
| XXX-PRIV-XXX-XIO-MH-0100402-03 | Michael Carter | Martin Hunt | | | **Joseph Gratz,** Michael Carter, Johanna Schmitt | 8/5/2010 | Email re: discovery issues | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2) |
| XXX-PRIV-XXX-XIO-MH-0100404-05 | Michael Carter | Martin Hunt | | | **Joseph Gratz,** Michael Carter | 8/5/2010 | Email re: discovery issues | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2) |
| UDE0000023 | Michael Carter | Kurt Ude | | | | 2/1/2009 | Instant messages re: copyright issues discussed with counsel | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XIO-HD-DG-010000000006 | | | | | | 1/00/2010 | Draft of MINO's answer and counter-claim | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2) |
| XIO-HD-DG-010000000007 | **Jennifer Yoon** | **Jeffrey C. Neu** | Desiree Golen | | | 9/25/2009 | Memo re: copyright infringement analysis | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2); prepared in anticipation of litigation |
| XIO-HD-DG-010000000008 | | | | | | 1/00/2009 | Draft of answer to first amended complaint | Attorney-client privilege (Fed. R. Evid. 502(g)(1); work-product protection (Fed. R. Evid. 502(g)(2) |

LEGEND:
Counsels' names in **bold**.

Attorney-Client Privilege;
Attorney Work-Product.