Dale M. Cendali
Johanna Schmitt
Brendan T. Kehoe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
johanna.schmitt@kirkland.com
brendan.kehoe@kirkland.com

Robert J. Schoenberg
RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Telephone: (973) 538-0800
rschoenberg@riker.com

Attorneys for Plaintiffs and Counterclaim Defendants
Tetris Holding, LLC and The Tetris Company, LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TETRIS HOLDING, LLC and THE TETRIS COMPANY, LLC,<br><br>         Plaintiffs and Counterclaim Defendants,<br><br>  - against -<br><br>XIO INTERACTIVE INC.,<br><br>         Defendant and Counterclaim Plaintiff. | Case No.   3:09-cv-6115 (FLW) (DEA)<br><br>Hon. Freda L. Wolfson, U.S.D.J.<br>Hon. Douglas E. Arpert, U.S.M.J.<br><br>**[REDACTED] REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RULE 37(A) MOTION TO COMPEL AND FOR COSTS**<br><br>***Document Filed Electronically*** |

# Table of Contents

**Page**

I.     PRELIMINARY STATEMENT .......................................................................1

II.    ARGUMENT.................................................................................................2

     A.     Xio Has Waived Privilege By Using It as a Sword and Shield ............2

     B.     Xio's Proposed Stipulation Is Inadequate Because It Allows Xio to Use Privilege Improperly as Both a Sword and Shield .............7

          1.     Xio's Proposed Stipulation Enables Xio to Rely on Legal Analyses that Reflect Advice of Counsel While Withholding Evidence of Advice on the Same Topic ................7

          2.     Xio's Proposed Stipulation Allows It To Rely On The Fact That Xio Communicated with Counsel Without Disclosing the Proffered Advice ...............................................10

     C.     Xio's Failure to Exercise Reasonable Care to Prevent Disclosure of its Privileged Materials Was Raised Properly in this Motion ......................................................................................11

     D.     TTC Is Entitled to Reimbursement of its Costs .................................13

III.    CONCLUSION..........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bowne of NYC, Inc. v. AmBase Corp,*
    161 F.R.D. 258 (S.D.N.Y. 1995) ..................................................................13

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.,*
    259 F.3d 1186 (9th Cir. 2001) ........................................................................4

*Dorr-Oliver Inc. v. Fluid-Quip, Inc.,*
    834 F. Supp. 1008 (N.D. Ill. 1993) ....................................................... 4, 5, 6

*E. & J. Gallo Winery v. Consorzio del Gallo Nero,*
    782 F. Supp. 472 (N.D. Cal. 1992) .................................................................7

*In re Seagate Tech., LLC,*
    497 F.3d 1360 (Fed. Cir. 2007) ......................................................................5

*Int'l Korwin Corp. v. Kowalczyk,*
    855 F.2d 375 (7th Cir. 1988) ..........................................................................7

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.,*
    383 F.3d 1337 (Fed. Cir. 2004) ......................................................................5

*Zip Dee, Inc. v. Dometic Corp.,*
    1997 WL 323814 (N.D. Ill. 1997) ...............................................................4, 5

## OTHER AUTHORITIES

Advisory Committee Notes to 1970 Amendment to Fed. R. Civ. Proc. 37(a) ........13

## RULES

Fed. R. Civ. Proc. 26(b)(3)(A) ...........................................................................4

## I.    PRELIMINARY STATEMENT

Xio's brief makes clear that it is trying to "have its cake and eat it too."  Xio wants to be able to rely on evidence that reflects legal advice to prove that it proceeded in good faith with the development and release of *Mino.*  Such evidence includes legal analyses drafted *after* Xio began consulting with attorneys and thus reflect legal advice.  Given that Xio set out to copy *Tetris,* it is no surprise that Xio's own internal legal analyses, drafted by non-lawyers, self-servingly conclude that *Mino* would not infringe TTC's rights.  At the same time, Xio seeks to shield evidence reflecting legal advice that may harm its position, such as evidence that at least one attorney advised Xio before this lawsuit that *Mino* likely infringed *Tetris.* This is a classic example of using privilege as both a "sword and shield."

As detailed below, Xio's argument that no waiver has occurred because it has not disclosed any privileged material has no basis in fact or law.   Further, the fact that Xio is not relying on a formal "advice of counsel" defense is of no import, and is merely an attempt to elevate form over substance.   In addition, Xio's attempt to raise the issue of whether TTC is entitled to an adverse inference on willfulness is a red herring and has no bearing on the issues in this motion.

Further, Xio's proposed stipulation is inadequate as it enables Xio to rely on evidence reflecting legal advice that purportedly favors Xio, while simultaneously allowing Xio to withhold evidence on the same subject that may weaken its

position.  It also fails to provide clarity and will lead to future motion practice.

In addition, Xio's argument that TTC's motion is procedurally improper is baseless.  As explained below, the parties have discussed this issue for months, and TTC expressly reserved its rights to claim waiver.  Further, this issue was raised in TTC's pre-motion letter to the Court, which granted leave to move.

Lastly, as discussed below, TTC is entitled to reimbursement of costs given that Xio's position is not justified.  Accordingly, for the reasons set forth below and in TTC's motion, TTC respectfully requests that its motion be granted.

## II.   **ARGUMENT**

### A.   **Xio Has Waived Privilege By Using It as a Sword and Shield**

As detailed in TTC's motion, Xio wants to rely on select evidence about whether *Mino* infringed *Tetris*—such as self-serving internal legal analyses and pre-litigation communications seeking legal advice—to support Xio's position that it is an "innocent infringer" and acted in good faith when it released *Mino* and later tried to reinstate it on the iTunes store.   At the same time, Xio wants to withhold other evidence that shows it acted willfully or recklessly—such as evidence that at least one attorney told Xio before this lawsuit that *Mino* likely infringed *Tetris*.

Such use of privilege as a "sword and shield" is improper.  It is highly prejudicial to TTC, and creates a misleading factual record.   It gives the misimpression that attorneys told Xio that *Mino* would not infringe *Tetris* and thus

Xio proceeded in good faith, when, in fact, it did not.  As such, Xio must choose between (1) disclosing all evidence about its pre-litigation communications with opinion counsel on the subject of whether *Mino* infringes *Tetris,* and (2) being precluded from relying on any such evidence in this lawsuit.[1]

In its opposition brief, Xio argues that TTC's "sole basis" for arguing waiver is that Xio produced non-privileged materials at the close of discovery, such as communications with attorneys who were not retained by Xio.  (Opp. at 6.)  This argument is unavailing.  First, TTC asserts that the privilege also has been waived due to Xio's reckless conduct with regard to its privileged materials *both* before this litigation commenced (e.g., by producing a draft communication to its counsel, Jeffrey Neu, to a third party) and during discovery.  (Schmitt Decl., ¶ 19.)

Second, TTC argues that Xio is using privilege as a "sword and shield" and thus the privilege has been waived with regard to this subject matter (i.e., whether *Mino* infringes *Tetris*).  In support of a finding of good faith infringement, Xio wants to rely on evidence that reflects privileged advice from its retained intellectual property counsel, Mr. Neu—namely, legal analyses regarding infringement that were created *after* Xio started consulting him.  It is well-settled

---

[1] Xio claims that TTC has insisted that Xio stipulate that "it will not assert any good faith defense whatsoever."  (Opp. at 2.)  TTC does not seek such relief in its motion and simply asks that Xio be precluded from relying on certain evidence in support of its good faith defense unless it produces all such evidence on this topic.

3

that disclosure of certain advice from counsel retained by a defendant waives

privilege as to other advice from that attorney on the same issue.  *See Dorr-Oliver*

*Inc. v. Fluid-Quip, Inc.*, 834 F. Supp. 1008, 1012 (N.D. Ill. 1993) (holding that

reliance on communications with counsel as evidence of good faith injected the

opinion of counsel into the case and was a waiver of privilege); *see also Columbia*

*Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196

(9th Cir. 2001) ("Where a party raises a claim which in fairness requires disclosure

of the protected communication, the privilege may be implicitly waived.").

Also, Xio wants to rely on evidence which arguably may not be protected by

attorney-client privilege—such as the fact that Xio consulted with attorneys and the

substance of communications with non-retained attorneys.[2]   However, a defendant

is not permitted from relying on such non-privileged evidence to defeat willfulness

claim while simultaneously withholding the advice of counsel on the same issue.

*See Zip Dee, Inc. v. Dometic Corp.,* 1997 WL 323814, at *1  (N.D. Ill. 1997)

(finding defendant waived privilege as to any opinions of its counsel regarding

infringement as it was relying on "admittedly non-privileged opinions of [non-

retained] counsel" to defeat willfulness claim); *Dorr-Oliver Inc.,* 834 F. Supp. at

---

[2] Of course, communications with non-retained attorneys may be protected by the work product privilege if prepared in anticipation of litigation.  Fed. R. Civ. Proc. 26(b)(3)(A). Indeed, Xio claimed such work product protection over these documents for months.  (Schmitt Decl. ¶ 29, Ex. S.)

4

1012  (defendants "must have disclosed the advice of counsel or they are precluded

from raising the fact of legal consultation as part of their good faith argument").[3]

Tellingly, Xio has cited no cases to support its argument that it should be

able to rely on some evidence reflecting pre-lawsuit advice from attorneys

(retained or non-retained) or the fact that it consulted with counsel to establish

good faith, while withholding other pre-litigation advice from counsel.[4]

Also, Xio argues that it should not have to disclose this evidence because it

is not asserting a formal "advice of counsel" defense.  (Opp. at 4, 7.)  As an initial

matter, TTC understands why Xio has chosen not to rely on an "advice of counsel"

defense.  Despite its consultation with many attorneys, Xio received no opinion

letter from counsel advising it that *Mino* would not infringe.  (Supplemental

Declaration of Johanna Schmitt, Esq., dated May 11, 2011 ("Schmitt Suppl.

---

[3] Contrary to Xio's assertion, the holdings in *Dorr-Oliver* and *Zip Dee* have not
been overruled and they are directly on point.  (Opp. at 6-8.)  The two cases that
Xio relies on for this proposition do not address the scope of waiver regarding
opinion counsel.  Instead, they concern the scope of waiver regarding trial counsel
and/or whether the plaintiff is entitled to an adverse inference in a patent
infringement case—neither of which is at issue in this motion.  *In re Seagate Tech.,
LLC*, 497 F.3d 1360 (Fed. Cir. 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge
GMBH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004).

[4] Only one case relied on by Xio discusses the scope of privilege waiver when a
party chooses to rely on advice from counsel.  *In re Seagate Tech., LLC*, 497 F.3d
1360.  However, *Seagate* simply stands for the proposition that reliance on advice
from opinion counsel does not constitute a waiver of privilege over
communications with trial counsel.  *Id.* at 374.  TTC does not claim that Xio has
waived privilege with regard to, nor does it seek discovery of, communications
with trial counsel.  Thus, *Seagate* is not relevant here.

Decl.") ¶ 2, Ex. A.)  Further, it appears that at least one attorney told Xio that *Mino* would likely infringe.  (Schmitt Decl. ¶¶ 12, 41.) If Xio asserted an "advice of counsel" defense, it would have to disclose that and all other unfavorable opinions.

Xio is clearly trying to elevate form over substance.  Xio wants to affirmatively rely on evidence that reflects advice of counsel (such as its legal analyses that were created *after* it started consulting with attorneys) and the fact that it conferred with attorneys before this lawsuit in support of its position that it proceeded in good faith without labeling it an "advice of counsel" defense.  Xio cites no cases that support its argument that it can rely on such evidence without producing all evidence on this issue as long as it does not assert a formal "advice of counsel" defense.  Further, in *Dorr-Oliver,* the court's finding that privilege was waived was not predicated on the fact that the defendant was asserting a formal "advice of counsel" defense, rather the defendant, like Xio, was trying to rely on the fact that it communicated with counsel in order to defeat a finding of willful infringement.  *Dorr-Oliver,* 834 F. Supp. at 1012.

Further, Xio tries to obfuscate the issues in this motion by arguing that TTC is not entitled to an adverse inference of willfulness in this case.   (Opp. at 8.) This is a classic red herring.  The issue of whether TTC is entitled to an adverse inference on the issue of willfulness is not the subject of this motion.  Nor does this issue have any bearing on the Court's determination about whether Xio is

6

improperly using privilege as a sword and shield, or whether Xio has acted

recklessly with regard to its privileged materials.[5]

> **B.      Xio's Proposed Stipulation Is Inadequate Because It Allows Xio to Use Privilege Improperly as Both a Sword and Shield**

Xio's proposed stipulation is inadequate as it enables Xio to rely on

evidence reflecting legal advice that purportedly favors Xio, while simultaneously

allowing Xio to withhold evidence on the same subject that may weaken its

position.  Also, it fails to provide clarity and will lead to future motion practice.

> **1.      Xio's Proposed Stipulation Enables Xio to Rely on Legal Analyses that Reflect Advice of Counsel While Withholding Evidence of Advice on the Same Topic**

The first two terms of Xio's proposed stipulation—it will not (1) assert an

"advice of counsel" defense or (2) rely on any communications from attorneys

(retained or not retained) to show good faith (Opp. at 9)—do not adequately address

TTC's concerns.  These terms would allow Xio to rely on its own internal

---

[5] If Xio moves on the issue of an adverse inference, TTC is confident that it will establish that it is entitled to a finding of willfulness because Xio was on notice of its infringement claims and thus Xio had a duty to obtain counsel's opinion on the issue of infringement.  *See E. & J. Gallo Winery v. Consorzio del Gallo Nero,* 782 F. Supp. 472, 476 (N.D. Cal. 1992) ("In light of the notice of likelihood of confusion ... [defendant] was reasonably required to take more significant affirmative steps to ensure that its conduct would not constitute infringement.…The failure to consult trademark counsel prior to engaging in infringing conduct, where such consultation would be reasonable, supports a finding of willful infringement."); *see also Int'l Korwin Corp. v. Kowalczyk,* 855 F.2d 375, 380-81 (7th Cir. 1988) (finding willfulness where defendant did not seek the counsel of attorney in light of notice that he was violating copyright laws).

purportedly "independent" legal analyses, all of which self-servingly conclude that

*Mino* would not infringe *Tetris*.   Specifically, Xio wants to rely on a three-page

email that Xio's CEO, Desiree Golen, sent to Gary Reback, Esq., an intellectual

property lawyer, on November 13, 2008.   (Opp. at 9-10; Schmitt Decl. Ex. M.)

The email analyzes the intellectual property rights associated with *Tetris*, TTC's

enforcement efforts, and various legal authorities.[6]   Xio will try to use this

evidence to establish that it thought *Mino* would not infringe *Tetris* and thus Xio

was an "innocent infringer" and proceeded in good faith.   However, as discussed

below and in TTC's motion, this reliance is prejudicial to TTC and improper.

First, all documents discussing Xio's purportedly "independent" legal

analyses were dated *after* Xio began consulting with attorneys.  Xio began meeting

with lawyers at least as early as October 29, 2008, and with its own intellectual

property attorney, Mr. Neu, at least as early as November 6, 2008.  (Schmitt Decl.

¶ 54, Ex. G.)  Subsequent to these and other communications, Xio drafted self-

serving legal analyses outlining their understanding of the law and whether *Mino*

infringed *Tetris*.  As such, all of Xio's legal analyses (including the email to Mr.

Reback) reflect advice from attorneys and are not "independent."

---

[6] In addition to this email, Xio's stipulation would allow it to rely on other legal
analyses that were drafted after Xio began consulting with attorneys, including the
analysis of copyright cases by Maura Carter (the sister of Xio's CTO), Ms. Golen's
intellectual property law blog, and Xio's Legal Notes.  (Schmitt Decl. ¶ 55.)

8

Further, even if Xio's legal analyses are devoid of counsel's advice (which, given the timing discussed above, is not plausible), Xio should be precluded from relying on them without giving TTC adequate discovery to test the reasonableness of such analyses.  In other words, it would be very misleading and highly prejudicial to TTC if Xio were able to present its analyses as evidence of its good faith belief that *Mino* did not infringe when Xio had received contrary legal advice.

In addition, Xio wants to rely on the email to Mr. Reback to show the "state of mind" of Ms. Golen as to whether *Mino* infringed *Tetris*.  (Opp. at 10.)  However, Ms. Golen's "state of mind" at this point is simply not relevant.  As of November 13, 2008 (when the email was sent), development on Xio's game had not begun in earnest.  (Schmitt Decl. ¶ 10.)  Further, Xio continued to meet with attorneys until *Mino* was released on May 9, 2009—almost half a year later.  (*Id.* at ¶ 16; Schmitt Suppl. Decl., ¶ 3, Ex. B.)  Also, once *Mino* was removed from the iTunes store in August 2009, Xio continued to consult with attorneys and take active steps to reinstate *Mino* until this lawsuit was filed on December 2, 2009—over a year later.  (Schmitt Decl. ¶ 20.)  In short, the relevant time period for Xio's "state of mind" is at the time of infringement (when *Mino* was released and up until the lawsuit)—not months earlier on November 13, 2008.

Further, Xio's offer to "redact" the email to Mr. Reback to conceal the fact that it was sent to an attorney is nonsensical.  (Opp. at 10.)  Tellingly, Xio has not

9

specified *how* it would redact the email to conceal this information.   This is not

surprising because it cannot be done effectively given that the entire email is legal

in nature and indicates that it was sent to an attorney for the purpose of seeking

legal advice.  For example, the email discusses case law and TTC's legal

enforcement efforts and asks "Copyright infringement?" and "Would you say I

have a case against [TTC]?" (Schmitt Decl. Ex. M.)  As such, it is simply not

plausible that Ms. Golen would send this email to anyone but a lawyer.

### 2.   Xio's Proposed Stipulation Allows It To Rely On The Fact That Xio Communicated with Counsel Without Disclosing the Proffered Advice

As discussed in TTC's motion, Xio should be precluded from relying on the

fact that it consulted with attorneys on the issue of infringement before this

lawsuit, unless it discloses the advice that it received from all attorneys before this

lawsuit.  However, the third term of Xio's proposed stipulation provides that Xio

can rely on the fact that it communicated with attorneys in order "to rebut a false

assertion that Xio never consulted with attorneys."  (Opp. at 9.)

Xio's proposal is nonsensical.  TTC does not plan to assert that Xio did not

consult with attorneys on the issue of infringement.  Rather, TTC reserves its right

to establish that (1) Xio had the means and ability to consult with attorneys on the

issue of infringement, (2) Xio did in fact consult with attorneys on the issue of

infringement before this lawsuit (as evidenced by, among other things, Xio's

10

privilege log), and (3) Xio did not receive an opinion letter from counsel which advised that *Mino* would not infringe *Tetris*.  (Schmitt Suppl. Decl. ¶ 2, Ex. A.)

Moreover, Xio's proposal creates ambiguity and will lead to disputes between the parties going forward as to what constitutes "a false assertion that Xio never consulted with attorneys."  Xio apparently is trying to create a loophole to introduce evidence that it consulted with attorneys (while shielding evidence of what advice was given by such attorneys).  For example, if TTC establishes that Xio failed to receive an opinion letter from counsel which advised that *Mino* would not infringe *Tetris*, Xio may try to argue that TTC has triggered the exception and thus Xio has the right to introduce evidence that it consulted with attorneys.   This would not be proper, and would inevitably lead to further motion practice.

## C.   Xio's Failure to Exercise Reasonable Care to Prevent Disclosure of its Privileged Materials Was Raised Properly in this Motion

As outlined in TTC's motion, Xio's conduct with regard to its privileged documents has been utterly shocking.  For example, Xio neglected to conduct a basic privilege review of its document production and instead relied on an utterly flawed electronic search for privileged documents (which search did not even include such basic terms as "privilege").  (Schmitt Decl. ¶ 24.)  Further, Xio failed to "claw back" its Copyright Analysis Notes─which were a record of a pre-lawsuit conversation with its intellectual property attorney (Mr. Neu) on the subject of infringement─even after TTC brought them to its attention in October 2010 and

cited them by Bates-number.  (*Id.* at ¶ 28.)  Instead, Xio indicated that TTC could

continue to use the document.  (*Id.*)  Months later, when TTC tried to question a

witness about the Copyright Analysis Notes at a deposition, Xio informed TTC

that it considered the document to be privileged.  (*Id.* at ¶¶ 33-34, Ex. F.)

        Further, Xio's contention that TTC failed to meet and confer on this issue or

to seek leave from the Court to file this motion is wholly specious.   TTC has been

conferring with Xio on this issue since October 2010 when TTC first alerted Xio to

the numerous privileged documents in Xio's production.   (Schmitt Decl. ¶ 26.)

The parties continued to communicate about this issue, and TTC expressly

reserved its right to assert that privilege was waived. (Schmitt Suppl. Decl. ¶ 4.)

Further, in its pre-motion letter to the Court, TTC expressly indicated that Xio's

reckless conduct was an additional ground for waiver.  (Schmitt Decl. ¶ 44, Ex. V.)

        Following TTC's pre-motion letter, the Court instructed the parties to meet

and confer further on the sword and shield issue given Xio's counsel's claim at the

March 11, 2011 status conference that she could prove that Xio had undertaken an

"independent" legal analysis.  (Schmitt Decl. ¶¶ 46-47.)  Also, the Court granted

TTC leave to move on the issues raised in its pre-motion letter if the parties'

dispute was not resolved.  (*Id.* at ¶¶ 48.)  The dispute was not resolved given the

fact that, among other things, Xio's counsel was unable to establish that Xio's legal

analyses were "independent" because, as noted above, the analyses were created

after Xio began consulting with attorneys.  (*Id.* at ¶¶ 47-48.)

Moreover, it makes sense to address both issues in this motion because the issues are related, and one motion (rather than two separate motions) is the most efficient way to resolve these issues.   As such, TTC's motion is proper.

## D.     TTC Is Entitled to Reimbursement of its Costs

As detailed in TTC's motion, Xio's opposition to TTC's motion was not justified, and thus TTC is entitled to reimbursement of its costs.   *See* Advisory Committee Notes to 1970 Amendment to Fed. R. Civ. Proc. 37(a) (cost award is mandatory unless court finds that nonmoving party acted substantially justifiably). *See also Bowne of NYC, Inc. v. AmBase Corp,* 161 F.R.D. 258, 262 (S.D.N.Y. 1995).  Xio's insistence on using privilege as a sword and shield is unreasonable, prejudicial to TTC, and has no basis in the law.  Xio has cited no legal authority to justify its position.  Also, Xio also has acted recklessly by failing to take reasonable precautions with regard to its privileged documents.

Xio's argument that it should not have to pay TTC's costs because TTC is "enormously successful" and has the "means" to enforce its intellectual property rights is unavailing.  Indeed, Xio should not be allowed to take unreasonable positions in this litigation and to act improperly throughout discovery with impunity (and TTC should not be forced to foot the bill for such conduct) simply because Xio may have fewer resources than TTC.

13



Also, Xio has tried to excuse its slipshod conduct and noncompliance with discovery obligations on the basis that it has few resources.  (Schmitt Suppl. Decl. ¶ 5, Ex. C.)  However, Xio's shareholders have invested tens of thousands of dollars in Xio, which can be used to fund this litigation. (*Id.* at  ¶ 6, Ex. D.)  Moreover, unlike TTC, Xio's attorney fees are capped at a small percentage of its revenues (which revenues total only about $3,000).  (*Id.* at ¶ 7, Ex. E; Opp. at 12.)  Due to this atypical fee arrangement, Xio has little incentive to assess its litigation claims in a reasonable way.  It can take untenable positions (such as opposing this

CONFIDENTIAL -
SUBJECT TO PROTECTIVE ORDER          14

motion) and drive up TTC's costs without incurring costs of its own.  (Schmitt Suppl. Decl. ¶ 7, Ex. E.)

Also, Xio's assertion that TTC did not try to resolve this dispute without court action is utterly baseless.  TTC's motion is based on issues that the parties have discussed for months, and TTC expressly reserved its rights.  (Schmitt Decl. ¶¶ 33-52.)  These issues were outlined in TTC's pre-motion letter.  (*Id*. at ¶ 44, Ex. V.)  Following its letter, TTC spent over a month trying to resolve the "sword and shield" issue, and the Court granted leave to make this motion.  (*Id*. at ¶¶ 46-48.)

## III.   CONCLUSION

For the reasons stated above and in its motion, TTC respectfully requests that the Court grant its motion in its entirety.

Date: May 11, 2011                              Respectfully submitted,


/s/ Dale M. Cendali                             /s/ Robert J. Schoenberg

Dale M. Cendali                                 Robert J. Schoenberg
Johanna Schmitt                                 RIKER DANZIG SCHERER
Brendan T. Kehoe                                HYLAND & PERRETTI LLP
KIRKLAND & ELLIS LLP                            Headquarters Plaza
601 Lexington Avenue                            One Speedwell Avenue
New York, New York 10022                        Morristown, New Jersey 07962-1981
Tel: 212-446-4800                               Telephone: (973) 538-0800
dale.cendali@kirkland.com                       rschoenberg@riker.com
johanna.schmitt@kirkland.com
brendan.kehoe@kirkland.com
                                                Attorneys for Plaintiffs and
                                                Counterclaim Defendants *Tetris
                                                Holding, LLC and The Tetris
                                                Company, LLC*