Dale M. Cendali
Johanna Schmitt
Brendan T. Kehoe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
johanna.schmitt@kirkland.com
brendan.kehoe@kirkland.com

Robert J. Schoenberg
RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Telephone: (973) 538-0800
rschoenberg@riker.com

Attorneys for Plaintiffs and Counterclaim Defendants
Tetris Holding, LLC and The Tetris Company, LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TETRIS HOLDING, LLC and THE TETRIS COMPANY, LLC,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>- against -<br><br>XIO INTERACTIVE INC.,<br><br>Defendant and Counterclaim Plaintiff. | Case No. 3:09-cv-6115 (FLW) (DEA)<br><br>Hon. Freda L. Wolfson, U.S.D.J.<br>Hon. Douglas E. Arpert, U.S.M.J.<br><br>**SUPPLEMENTAL DECLARATION OF JOHANNA SCHMITT, ESQ. IN FURTHER SUPPORT OF PLAINTIFFS' RULE 37(A) MOTION TO COMPEL AND FOR COSTS**<br><br>***Document Filed Electronically*** |

I, Johanna Schmitt, Esq., hereby declare as follows:

1. I am a partner of the law firm of Kirkland & Ellis LLP, counsel to plaintiffs and counterclaim-defendants Tetris Holding, LLC and The Tetris Company, LLC (collectively "TTC") in this action. I am an attorney admitted to practice in the state of New York and have been admitted *pro hac vice* to practice before this Court. I submit this supplemental declaration in further support of TTC's motion pursuant to Federal Rule of Civil Procedure 37(a) to compel and for costs. This declaration is based on my personal knowledge and my knowledge based on my review of the documents produced in this case and the testimony provided during depositions.

2. Xio received no opinion letter from counsel advising it that *Mino* would not infringe. *See* M. Carter 30(b)(6) Dep. (Jan. 31, 2011) 184:25-185:4), a true and correct copy of which is attached to this Declaration as Exhibit **A**.

3. According to the game description page on Apple's iTunes App Store, *Mino* was released on May 9, 2009. *See* XIO-DG-0008939, a true and correct copy of which is attached to this Declaration as Exhibit **B**.

4. Counsel for the parties have conferred about the issue of Xio's reckless conduct with regard to protecting its privileged documents since October

2010, and TTC has expressly reserved its right to assert that privilege was waived on this basis.

5. Xio has tried to excuse its noncompliance with discovery obligations on the basis that it has few resources. *See* Letter from TTC to Judge Alpert dated October 28, 2010, a true and correct copy of which is attached to this Declaration as Exhibit **C**.

6. Xio's shareholders have invested tens of thousands of dollars in Xio. See XIO-0000131_00001, a true and correct copy of which is attached to this Declaration as Exhibit **D**.

7. Unlike TTC, Xio's attorney fees are capped at a small percentage of its revenues. *See* XIO-HD-DG-0013159, a true and correct copy (with redactions) of which is attached to this Declaration as Exhibit **E**.

Executed this 11th day of May 2011 at New York, New York.

Johanna Schmitt

Johanna Schmitt, Esq.

# EXHIBIT A

# In The Matter Of:

*TETRIS HOLDING, LLC*
*v.*
*XIO INTERACTIVE INC.*

---

*MICHAEL CARTER - 30(b)6*
*January 31, 2011*

---

MERRILL CORPORATION
LegaLink, Inc.
135 Main Street
4th Floor
San Francisco, CA 94105
Phone: 415.357.4300
Fax: 415.357.4301

Case 3:09-cv-06115-FLW-DEA Document 38-2 Filed 05/11/11 Page 6 of 20 PageID: 479

04:30:29 texture which we would then load up and display on the
04:30:32 iPhone when the game started.
04:30:33 Q. And that's all what you think copyright
04:30:35 applies to of my client's works; is that right?
04:30:38 MS. MAITRA: Objection; mischaracterizes
04:30:40 testimony.
04:30:40 THE WITNESS: So I'm speaking, I think, to --
04:30:46 MS. CENDALI: Q. I'm trying to understand
04:30:47 when you wrote, "The small bit of copyright law that
04:30:50 does apply is solely to protect the graphical features
04:30:54 used on individual elements in Mino." So what were you
04:30:57 thinking was protected by copyright?
04:30:58 A. So --
04:31:00 MS. MAITRA: Objection; asked and answered.
04:31:01 THE WITNESS: My understanding of what was
04:31:03 protected by copyright included the graphical textures.
04:31:09 That is to say, when Xio Interactive produced a
04:31:15 graphical texture, that that exact sequence was our
04:31:20 sequence that we built, and we owned, and it was
04:31:24 different than the graphical sequence that the Tetris
04:31:27 Company built for their game, and the two were
04:31:31 discernibly different.
04:31:32 And so copyright law applied to that where we
04:31:36 couldn't take an exact copy of the texture files and we
04:31:40 couldn't copy them onto a disk and then put them into

04:31:42 our game, that we had to build our own unique graphical
04:31:45 textures, and that's what we did.
04:31:49 MS. CENDALI: Q. Okay. Suppose the Walt
04:31:49 Disney Company made a video game featuring Mickey Mouse.
04:31:54 Do you believe that you could take that image of Mickey
04:31:57 Mouse and change the texture of Mickey Mouse's pants,
04:32:02 and that that would not be copyright infringement?
04:32:06 MS. MAITRA: Objection; incomplete
04:32:08 hypothetical; and mischaracterizes testimony.
04:32:14 THE WITNESS: So it's really hard for me to
04:32:17 speak to these sorts of descriptions without having some
04:32:21 example in front of me. You know, I don't know what
04:32:23 exactly the extent of the change you're talking about
04:32:31 is.
04:32:31 MS. CENDALI: Q. You never heard of Mickey
04:32:32 Mouse?
04:32:32 MS. MAITRA: Objection; mischaracterizes
04:32:33 testimony.
04:32:33 THE WITNESS: So that's not true. I have
04:32:34 heard of Mickey Mouse.
04:32:36 MS. CENDALI: Q. Okay. Mickey Mouse, same
04:32:40 image, different graphical textures, do you believe that
04:32:43 Mino could reproduce an image of Mickey Mouse with its
04:32:48 own graphical image files without infringing on the Walt
04:32:53 Disney Company's copyrights?

04:32:56 MS. MAITRA: Objection; incomplete
04:32:57 hypothetical.
04:32:58 THE WITNESS: You know, I --
04:33:01 MS. MAITRA: And, sorry, and calls for a legal
04:33:03 conclusion.
04:33:03 THE WITNESS: So I don't know what the
04:33:08 legalities of that would be. I'm not a lawyer, and it's
04:33:13 also really hard for me to speak to hypotheticals where
04:33:16 there is no example put in front of me.
04:33:19 I think that this is the sort of thing that's
04:33:21 very complex, and that lawyers and judges spend a long
04:33:27 time with examples in front of them to determine, and
04:33:29 it's a very fine line, and I don't think I can answer
04:33:32 your question with this hypothetical imagining of what
04:33:34 you're saying because I don't really know what you mean
04:33:37 without seeing an example. So if you want to put an
04:33:40 example in front of me, you know, I can talk to my
04:33:43 understanding of copyright law given that I'm not a
04:33:47 lawyer and as it applies to that example.
04:33:50 MS. CENDALI: Q. So, basically, Xio's
04:33:51 position is that you know enough about copyright law to
04:33:56 try to justify that you're not intentional infringers,
04:33:59 but not so much about copyright law that you can answer
04:34:03 a question; is that right?
04:34:04 MS. MAITRA: Objection; mischaracterizes

04:34:07 testimony; and calls for a legal conclusion.
04:34:11 MS. CENDALI: Q. That's true, isn't it?
04:34:13 MS. MAITRA: Same objections.
04:34:14 THE WITNESS: I don't think that's what I
04:34:15 said. I think what I said was that copyright law is a
04:34:20 complex thing.
04:34:21 MS. CENDALI: Q. Right. And is it something
04:34:24 that a lawyer should study?
04:34:25 MS. MAITRA: Objection; vague.
04:34:28 THE WITNESS: I don't know. I think some
04:34:31 lawyers should study it.
04:34:36 MS. CENDALI: Q. You believed, prior to
04:34:37 releasing Mino, that copyright was a complex field of
04:34:41 law; isn't that true?
04:34:44 A. I probably believed that.
04:34:46 Q. And you knew you weren't a lawyer, right?
04:34:50 A. I knew that I wasn't a lawyer.
04:34:52 Q. And nobody working on Mino was a lawyer,
04:34:56 correct?
04:34:57 A. I believe that's correct.
04:34:57 Q. And Mino didn't have an in-house lawyer,
04:35:00 right?
04:35:02 A. I don't think that Xio employed a lawyer
04:35:04 in-house.
04:35:05 Q. And Xio did not obtain an opinion letter from

185

a lawyer saying that it could release Mino without violating the copyrights of my client's works; isn't that true?
A. I don't recall an opinion letter.
Q. So now, let's keep looking at this document under where it says "Copyright." Do you see that?
A. Yes.
Q. And this is you writing, "Copyright." You wrote, "The Tetris Company has no relevant copyright protection that would prevent us from producing and selling Mino." Do you see that?
A. I see that.
Q. And that was in your opinion; is that right?
A. That's correct.
Q. Okay. Were you aware of the decision of the Customs office with regard to the protectability of the Tetris Company's works?
MS. MAITRA: And just to be clear, you're asking whether Xio or whether --
MS. CENDALI: Q. I'm asking whether Xio, prior to launching Mino, was aware of the decision of the Customs Department, in particular Judge Stump, with regard to the protectability of the Tetris Company's copyrights.
A. At the time we looked at a whole range of

186

legal decisions and articles, and, you know, I remember reading a lot of different documents, and I don't remember being intimately familiar with that at the time. I do remember that it may have come up, and I glanced through it. I think I've since become more familiar with that since this lawsuit, but --
Q. Are you --
MS. MAITRA: So you're talking on behalf of Xio now, not just you, Michael Carter. Okay?
THE WITNESS: So Xio Interactive may have been peripherally aware of that decision.
MS. CENDALI: Q. Isn't it true that Xio Interactive -- isn't it true that Xio Interactive's CEO, Desiree Golen, had your sister do a memo about copyrightability of computer games?
A. You know, I don't know that she had her do a memo necessarily. I think that she had asked her to look into IP law as it relates to video games and as it might apply to Xio Interactive.
Q. And isn't it true that your sister wrote a memo that was provided to Xio Interactive that, among other things, discussed the Customs House -- the Customs Department decision?
A. I believe that she wrote a memo, and I'd have to see the memo again to confirm that, but it's

187

possible, and, you know, I do remember that the memo wasn't used in our legal analysis. I personally -- you know, I wrote this legal analysis on behalf of Xio Interactive, and at the time I don't remember seeing that memo.
Q. Isn't it true that Xio had in its possession Exhibit 18, this copy of the Customs Department decision?
(Whereupon, Deposition Exhibit 18 was marked for identification.)
THE WITNESS: So it does look like, according to this document, that Desiree had a copy of this Customs decision.
MS. CENDALI: Q. Right. And so Xio had a copy of the Customs House decision; isn't that true?
A. Yes, I think what I said was that Desiree Golen, on her desktop, had a copy of this Customs letter.
Q. And isn't it true that Desiree Golen, CEO of Xio, was discussing this decision with other developers of Tetris-like games?
MS. MAITRA: Objection; vague.
THE WITNESS: You know, I'm not sure what you mean by that. I'm not sure which other developers you're talking about and which other games you're

188

talking about.
MS. CENDALI: Q. Are you aware that she was discussing this decision with Todd Bilsborrow?
A. I'm aware that she had discussions with Todd about his situation.
Q. And isn't it true that you were also aware that -- and discussed with Ms. Golen whether she should write to Mr. Cormier, the lawyer who represented the entities opposite the Tetris Company in this decision of the Customs Department?
A. I don't know that that's true. I think when you -- when you mention it, I think that Desiree may have been considering writing to Mr. Cormier, and, you know, I don't know exactly why. I don't think I was a big part of that decision. I think she may have at the time -- you know, she could have mentioned the different things she was working on and talking about and said that she was going to contact this person, I don't know.
Q. So you wrote in your memo that, "The Tetris Company has no relevant copyright protection that would prevent us from producing and selling Mino," right?
A. That is correct.
Q. And you wrote that despite the fact that Xio knew that there was a Customs Department decision that discussed at length the protectable, copyrightable

# EXHIBIT B

Custodian: Desiree Golen

Filename: mino_screenchot.png

Filetype: image/png

05/22/2009 12:47PM XIO-DG-0008939

# XIO INTERACTIVE INC

**Mino**

Category: Games
Released May 09, 2009
Seller: Michael Carter
© 2009 XIO INTERACTIVE
Version: 1.0
4.2 MB

**$2.99** BUY APP

**Rated 4+**

## APPLICATION DESCRIPTION

XIO INTERACTIVE proudly presents MINO!

**Opening Sale: Be one of our first 1,000 users and get MINO for only $2.99!**

This Tetromino game has the fast-paced, line-clearing features of individual gameplay, plus an innovative NETWORK game mode that pits players against each other in real-time competition.

Experiment with input options and see what you like best: TAP, TWO-FINGER TAP, FLICK-UP, FLICK-DOWN and DRAG.
Train your way to a top score!
Jam to our all-new, original music tracks!

Single Player Game Modes:

STANDARD MODE- Keep up the pace as each Tetromino piece drops with increasing speed! Rest assured you can use your SLOW button to calm things down.

GLACIER MODE- Battle against the clock as garbage lines flood your board and test your MINO agility! Only the best can survive the onslaught! Hit the FREEZE button when you need a break.

Multi-Player Game Features:

Want to See How Good You Really Are?
For the first time on the mobile platform, engage other users in head-to-head Tetromino competition! Send lines of garbage to your opponent while clearing your own board! Hit STEALTH to hide your board and block the receipt of garbage. Rack up points to climb up the global HIGH SCORES chart!

Feeling Social?
JOIN A ROOM to play up to four other players and chat with thousands of other MINO fans. Want to see how the pros do it? Sit back and hit WATCH to view current games in progress.

**Update your iPhone and iPod touch to Version 2.2 before downloading MINO**

MINO IS NOT AFFILIATED WITH TETRIS® OR THE TETRIS COMPANY

**LANGUAGES:**
English

**REQUIREMENTS:**
Compatible with iPhone and iPod touch
Requires iPhone 2.2 Software Update

**XIO INTERACTIVE INC Web Site** 
**Mino Support**

ALL APPLICATIONS BY XIO INTERACTIVE INC
TELL A FRIEND
APP STORE FAQS

## CUSTOMER RATINGS

▼ Average rating for the current version: ★★★★★ 9 ratings

| Rating | Count |
|---|---|
| ★★★★★ | 9 |
| ★★★★ | 0 |
| ★★★ | 0 |
| ★★ | 0 |
| ★ | 0 |

**CUSTOMERS ALSO BOUGHT** See All

**PUNK JUSTICE**
Games

**GemDrop Deluxe**
Games

**World of Tunes**
Games

**Caster**
Games

# EXHIBIT C

KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, New York 10022

Johanna Schmitt
To Call Writer Directly:
(212) 446-4841
johanna.schmitt@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

October 28, 2010

**Via Facsimile 609-989-0451**

Hon. Douglas E. Arpert, U.S.M.J.
United States District Court
Clarkson S. Fisher Federal Bldg.
& U.S. Courthouse
402 E. State Street
Trenton, New Jersey 08608

**Re: *Tetris Holding, LLC, et al. v. Xio Interactive, Inc.***
**Civil Action No. 09-6115 (FLW)(DEA)**
**Status Conference: October 29, 2010**

Dear Judge Arpert:

We are counsel for plaintiffs and counterclaim-defendants Tetris Holding, LLC and The Tetris Company, LLC (collectively, "The Tetris Company") in the above-referenced matter.

We write to respond briefly to an issue raised by Sonali Maitra, Esq., counsel for defendant and counter-claimant Xio Interactive, Inc. ("Xio"), in her letter to Your Honor, dated October 27, 2010. Specifically, Xio seeks immunity from compliance with its discovery obligations on the basis that it is a small company with few resources to pay attorney fees. In reality, however, Xio has disclosed in discovery that it has a fee arrangement with its law firm—Durie Tangri—that only requires Xio to pay a small percentage of its revenues each month. In other words, Xio's fees do not increase if its attorneys have to spend additional time to cure prior discovery deficiencies. Moreover, Durie Tangri is far from an inexperienced firm unfamiliar with modern discovery rules. It is a reputable San Francisco-based intellectual property boutique that spun off from Keker & Van Nest LLP and has a national litigation practice. Thus, there is no excuse for Xio and its lawyers not complying with the rules of discovery, delaying discovery, and unnecessarily burdening The Tetris Company with repeated substandard discovery practices and delaying tactics.

KIRKLAND & ELLIS LLP

Hon. Douglas E. Arpert
October 28, 2010
Page 2

We thank Your Honor for consideration of this application.

Sincerely,

Johanna Schmitt

Johanna Schmitt

JS /jpc

cc: Sonali Maitra, Esq.
Joseph Gratz, Esq.
Donald Robinson, Esq.
Robert J. Schoenberg, Esq.
(All via electronic mail)

K&E 17936519.1

# EXHIBIT D

# Securities Register

| Name and Address of Shareholder | Date of Issue or Transfer | If by Transfer, From Whom? | Number and Kind of Shares | Certificate Number | Price per Share | Number of Shares Allotted for Cash | Number of Shares Allotted for Other Considerations | Particulars of Contract | Rate of Commission or Discount Paid or Agreed |
|---|---|---|---|---|---|---|---|---|---|
| Desiree Golem | 3/05/09 | | 4100 COMMON | COM002 | | | 4100 | | 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 |
| Michael Carter | 3/05/09 | | 4100 COMMON | COM003 | | | 4100 | | 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 |
| Kathryn Flynn | 1/12/10 | | 500 COMMON | COM004 | $10.00 | 500 | | | |
| Martin Hunt | 1/12/10 | | 900 COMMON | COM005 | | | 900 | Technical Services | 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 |
| Mario Balibrera | 1/12/10 | | 400 COMMON | COM006 | | | 400 | Technical Services | 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 |
| Michael Carter | 1/25/10 | | 80 COMMON | | $25.00 | | 80 | | 564831176 |
| Kathryn Flynn | 12/15/2010 | | 140 COMMON | COM008 | $25.00 | | 140 | | |
| Michael Carter | 12/15/2010 | | 208 COMMON | COM009 | $25.00 | | 208 | | 564831176 |
| Martin Hunt | 12/15//2010 | | | COM010 | $25.00 | | 180 | | 254734299 |
| Total | | | | | | | 10,608 | | |

EXHIBIT 53A
Deponent M Carter
Date 1/31/11 Rptr.
WWW.DEPOBOOK.COM

# EXHIBIT E

**Custodian: Desiree Golen**
**Filename: Users/xio/Desktop/tetranet/build/mino.build/mino.pbxindex/sym**
**Filetype: Unknown**

09/22/2010 12:34AM    XIO-HD-DG-0013159

DURIE TANGRI LLP

November 5, 2009

**VIA E-MAIL**

Desiree Golen, CEO
Xio Interactive, Inc.

*Re:* Legal Services Agreement

Dear Desiree:

This letter will set forth our Agreement concerning Durie Tangri LLP's representation of Xio Interactive, Inc. The purpose of this document is to set forth our mutual understandings concerning the terms of retention.

4. However, the parties understand that Xio will pay no more than 10% of its monthly revenue in legal fees.

DXG

[page content redacted]

[CLIENT]
November 5, 2009
Page 3

[redacted]

Very truly yours,

Mark A. Lemley

AGREED AND ACCEPTED:

Desiree Golen

Dated: 11/16/09

Desiree Golen
Xio Interactive

332 Pine Street, Suite 200, San Francisco, CA 94014 www.durietangri.com