| | |
|---|---|
| **From:** | Desiree Golen <desiree.golen@gmail.com> |
| **To:** | Jeffrey C. Neu, Esq <jneu@jeffreyneu.com> |
| **Sent:** | 8/5/2009 8:07:11 AM |
| **Subject:** | Fwd: Apple Inc. (our ref# APP5034) |
| **Attachments:** | 00142109.pdf; Tetris_company_Legal_notes.doc |

Forgot to send this onto you. We received it on Monday. We have until Friday to respond.

Also, I've attached a gmail doc with you. Could you look over it before our phone conversation today at 2:00 ?

Talk to you soon,

Desiree


We received a written notice from The Tetris Company, LLC ("Tetris") that Tetris believes your application named "Mino" infringes Tetris' rights. A copy of the notice is attached.
Accordingly, please take steps to review your application to ensure that it does not violate the rights of another party. If this includes removing your application from the App Store while you make changes, use the following steps:
Visit iTunes Connect at http://itunesconnect.apple.com
1) Select the "Manage Your Apps" area
2) Find the desired application in the list
3) Select "Remove From Sale"
4) Your application will no longer be available for sale on the App Store
Please remember that pursuant to your agreement with Apple, you are responsible for any liability to Apple because of a claim that your application infringes another party's rights, and also that we may remove your application if we believe that doing so is prudent or necessary. So that we don't take unnecessary steps, such as removing your application, please let us know that this matter between you and Tetris has been resolved within five days of this letter.
Thank you for your immediate attention.
Sincerely,
iTunes Music Marketing & IP Legal | Apple | 1 Infinite Loop | Cupertino | CA | 95014 | AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.


Begin forwarded message:

From: JHAMBURG@nmmlaw.com
Date: August 3, 2009 12:10:24 PM PDT
To: AppStoreNotices@apple.com
Subject: DMCA Takedown Demand/Tetris (Apple iTunes)
Please see the attached takedown demand under the DMCA.

>    Jeanne Hamburg | Member
>    Norris McLaughlin & Marcus, P.A.

```
      t: 212.808.0700 | d: 917.369.8894 | f: 212.808.0844 | e:
jhamburg@nmmlaw.com | www.nmmlaw.com
      NY Office: 875 Third Ave · 18th Floor · New York, NY 10022


****************************************************************************
NOTICE: This e-mail is intended only for the use of the individual or
entity to which it is addressed and may contain information that is
privileged, confidential and exempt from disclosure under applicable
law. If you have received this communication in error, please do not
distribute it and notify the sender immediately by e-mail or by
telephone at 908-722-0700 and delete the original message. Thank You.
http://www.nmmlaw.com
****************************************************************************




--
Desiree Golen
CEO, Xio Interactive
Network Game Development on the Mobile Platform
xiointeractive.com
Mountain View, CA
(650) 866-5583
```

ENDORSED BY TTC

NEU0000008



# Norris McLaughlin & Marcus, P.A.
ATTORNEYS AT LAW

*Direct Dial: 917-369-8894*
*Email: jhamburg@nmmlaw.com*

August 3, 2009

**By Electronic Delivery (AppStoreNotices@apple.com)**
Copyright Agent
Apple Inc.
1 Infinite Loop, MS 3-TM
Cupertino, CA 95014

Re:   Infringement of Tetris® on Apple iTunes store

To Whom It May Concern:

We are the intellectual property counsel for The Tetris Company, LLC, exclusive licensee of Tetris Holding, LLC in and to the Tetris® mark and game. Collectively, The Tetris Company, LLC and Tetris Holding, LLC are referred to as "The Tetris Company." The Tetris Company is the owner of copyright in the Tetris® game throughout the world, including U.S. copyright registrations PAu 1,214,036; PAu 1,214,035; PA 412,169; and PA 412,170.

This letter is a notice of infringement pursuant to § 512(c) of the U.S. Copyright Law (section 512 is known as the Digital Millennium Copyright Act) and your Copyright Infringement Policy at www.apple.com/legal/trademark claimsofcopyright.html.

The Tetris Company recently became aware of your company's promotion and display of unauthorized "Mino" game at the URL:
http://itunes.apple.com/WebObjects/MZStore.woa/wa/viewSoftware?id=3152 38201

on the web site apple.com. That web site allows the user to purchase this iPhone game on the Apple iTunes Store.

The "Mino" game violates the copyright in the Tetris® game because it is a copy of our client's game and was created and is being reproduced and sold on your web site without our client's prior permission or authorization.

Norris McLaughlin & Marcus, P.A.

August 3, 2009
Page 2

Such wrongdoing subjects your company, and any other person or entity acting in concert with it, to an injunction, liability for statutory damages, compensatory damages, punitive damages, disgorgement of profits, costs and attorneys' fees under the U.S. Copyright Act, 17 U.S.C. §101 *et seq*.

Accordingly, The Tetris Company demands that you <u>immediately</u> remove or disable access to the infringing content. Otherwise, our client will be forced to consider legal action against your company and seek all available legal remedies and the maximum penalties imposed by law including our client's attorneys' fees. This letter is without prejudice to our client's rights and remedies, all of which are expressly reserved.

I have a good faith belief that use of the copyrighted materials described above as allegedly infringing is not authorized by the copyright owner, its agent, or the law. I swear, under penalty of perjury, that the information in this notification is accurate and that I am authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

This letter is without prejudice to our client's legal rights and remedies, all of which are expressly reserved, and does not purport to be an exhaustive statement of its legal position.

Very truly yours,

NORRIS, McLAUGHLIN & MARCUS, PA

By: Jeanne Hamburg

# Tetris company Legal notes

## Background

On Monday, Aug 3 we received Cease and Desist letter from laywers for The Tetris Company. Also on that day, Apple was issued a DMCA takedown notice. It is unclear if Apple is operating The App store as an Online Service Provider pursuant to section 512c of the DMCA, but they have so far handled the takedown notice in accordance with the DMCA (Though its unclear to me if their 5 day deadline is "expeditious.") The only action they've request of Xio Interactive thus far is that we "take steps to review your application to ensure that it does not violate the rights of another party." As we have already taken those steps long before beginning development, all that remains is to "let [Apple Inc] know that this matter between you and Tetris has been resolved within five days of this letter" so that "[Apple Inc] doesn't take unnecessary steps."

## Plan

We should respond to the Cease and Desist letter from The Tetris Company and forward a copy to Apple. We should further inform Apple that we do not, in fact, infringe any copyrights held by The Tetris Company.

We should respond to all further letters from The Tetris Company, and only copy Apple when prompted by them for action.

If Apple removes the application from the App store, we should immediately file a DMCA counternotification, as if they removed the application under the DMCA.

## IP Overview

Very little of copyright law is applicable to computer games, particularly games that are displayed with simple geometric shapes. While the rules of games are patentable, as is a novel game user interface (via a design patent,) The Tetris Company holds no patents whatsoever, and even if they did, those patents would have long since expired. Because Mino is a unique name and uses an original logo, Xio Interactive does not infringe on the Tetris Company's Trademark. The small bit of copyright law that does apply is soley to protect the graphical textures used on individual elements in Mino. It is plain that these elements are different enough than the Tetris Company's product (as outlined below,) that no copyright infringement has occured.

### COPYRIGHT

The Tetris Company's has no relevant copyright protection that would prevent us from producing

and selling Mino. The rules [1], ideas, and operation of the game are afforded absolutely no copyright protection. [2] This is be specifically explained in the context of games on the US Government's copyright.gov website [3]:

*"Copyright does not protect the idea for a game, its name or title, or the method or methods for playing it. Nor does copyright protect any idea, system, method, device, or trademark material involved in developing, merchandising, or playing a game. Once a game has been made public, nothing in the copyright law prevents others from developing another game based on similar principles."*

There are three categories of protection afforded to software under copyright law: The source code of the game, the audio works in the game, and the visual works in the game. Of those three, the first two hold no contest for us. The third should be further split up into literal copyright on the graphics files used in the game, and non-literal copyright on the expression of the graphics. We can then analyze the non-literal copyright issues in depth, as it is plainly obvious that any arguments of literal copyright infringement hold no contest for us.

I) The source code of the game.

**This is the most easily settled aspect of possible copyright claims as a quick comparison of source code will easily attest. We have never had access to the Tetris company's source code (there is no copyright registration of the code.)**

II) The audio works of the game

**All of our music is original work by Xio Interactive. We have specifically avoided using an audio work that is in any way similar to audio works registered or produced by The Tetris Company. We have all the source files that were used to create the final product and can easily prove our ownership.**

III) The visual components of the game. (literal copying)

**All of our graphics are original work owned by Xio Interactive. There is no question of literal copying -- Mino's graphical works and the works by The Tetris Company are factually different. Anyone analyzing the graphics files in Mino will find absolutely no duplication in the works of The Tetris Company.**

IV) The visual components of the game (non-literal copying)

This fourth section is the only part with which we should concern ourselves, as non-literal copying will undoubtedly form the basis of any arguments made by The Tetris Company in court. Right now the argument that The Tetris Company uses is extremely vague:

*The "Mino" game infringes the copyright in the Tetris® game because it is a wholesale copy of our client's game*

In order to actually understand this issue we need a far more critical approach: We should look at each element/aspect of the game's graphical interface on its own, filtering out those elements that are not afforded copyright protection. Firstly, we should look at the elements that are only present in Mino, and therefore not the original work of The Tetris Company.

**1. Stealth/Slow button: This button/feature is not present in any of The Tetris Company's works.**

**2. Sealth/Slow Power Bar: This display/feature is not present in any of The Tetris Company's works.**

**3. Level Power Bar: This display/feature is not present in any of The Tetris Company's works.**

Secondly, we must remove from consideration any graphical elements of Mino that stem directly from the rules of the game. These are aspects of the graphical display that are critical to implementing the rules of the game. If any of these aspects were changed or removed, then the game would not have the same rules. Anything graphical elements that are necessary to the rules are afforded no protection under copyright law.

**4. Playing field relative dimensions: The relative dimensions of the playing field/board stems directly from the game rules: The playing board is a 20 x 40 grid, twice as high as it is wide.**

**5. Next piece display: A display of the next piece stems directly from the game rules. The rules include that the player is allowed to know what piece comes next in order.**

**6. Score display: The rules award a score for various actions, and that the score is visible to the player.**

**7. Piece configuration: The rules of the game require that pieces are seven pre-defined piece configurations.**

**8. Piece Rotation: The rules require that the player may rotate various pieces in particular arrangements.**

**9. Piece Falling: The rules require that the current piece fall through empty grid spaces.**

**10. Line clearing:** The rules require that lines dissapear when each element in that line is filled.

**11. Line falling/Gravity:** The rules state that when a line dissapears that the all lines above move down a row to fill in the empty space.

Thirdly, we must remove any elements that are devoid of artistic expression.

**12. Playing field size:** The size of the playing field is a byproduct of the size of the device. The size of the device is 480x320 pixels. The largest playing field size that can fit on such a device is 400x200, where each of the 40x20 squares are 10x10 pixels. This is the playing field size in Mino.

**13. Base Piece colors:** The Basic Colors in Mino were chosen based on their mathematical distance from each other under the LSV color model. A specific color profile for the iphone was considered in adjusted relative lightnesses of these colors. The colors in Mino were obvious choices.

**14. Base Piece/grid shape:** The shape of a single grid in Mino was chosen to be a square. This was an obvious choice as the underlying structure of the display is a visible grid of small squares. Any novice programmer or grahpics expert would first choose a square when asked to represent a grid of values. There is no artistic initiative available in choosing a square as the base shape in the grid. In fact, there is absolutely no copyrightable expression possible when the shape of a grid element must be expressed as an approximation made in 20x20 pixels. There are only hundreds of of convex geometric shapes that could be used, and only a couple dozen variations could even be recognized by the human eye.

**15. The pause button:** The pause button appearance in Mino is the universally understood two parallel, vertical bars. This button is the obvious choice to pause the game, and there is no room for artistic expression of this button.

Now lets look at what is left. Its worth noting that removal in the process above is very specific. For instance, just because we removed the base shape of the grid elements (a square) doesn't mean that we've discounted the copyrightability of the texture used for the grid elements.

**1. The logo:** The Mino logo looks nothing like The Tetris Company's logo.

**2. The texture of the grid cells:** Our grid cell textures bear no discernable resemblence to The Tetris Company's grid textures. Remember that the size and shape are already an obvious choice given the medium (an iphone), and only the texture itself must be considered. It is further important to compare single textures, as both games follow the same rules which result in identical composites of textures. Therefore the arrangement of these textures is not copyrightable, only the 20x20 pixel textures themselves.

Mino Red Tile



Tetris Red Tile



3. The background textures: Our background textures look nothing background textures in The Tetris Company's works. In the comparison below we have dimmed all elements besides the backgrounds to provide a less distracting comparison. There are other background textures in both games, and they are equally or more different than the example below.

Mino Background

Tetris Background



4. The texture of the playing boards: Our playing board texture is very different from that of The Tetris Company's works.

5. The textures of the controls: We chose universally understood shapes for the controls, and chose a simple metallic/shadowed texture that can easily be recreated in any graphics

program. Even if there was room for artistic expression in the display of our controls, they still look different enough from any other works as to avoid the issue of copyright.

Finally, there is one last aspect of the UI that we must consider, and that is the placement of the individual UI components. Given that the playing board is necessarily large, there is actually very little choice in where you can put it or the remaining elements. Regardless, the elements that Mino and The Tetris Company have in common are laid out very differently.

- Mino shows the score on the top left. The Tetris Company shows the score on the top right.

- Mino shows the next piece at the top center. The Tetris Company shows the next piece on the right, near the top.

- Mino shows the level as a power bar up the left side of the board. The Tetris Company places the level in the bottom right.

- Mino shows the pause/menu button in the bottom right. The Tetris Company shows the pause button in the top left.

**Mino Layout**

**Tetris Layout**



Conclusion

There is nothing in common between Xio Interactive's product and The Tetris Company's

product beyond that which is required by the rules of the game, required by the technical constraints of the medium, or obvious in the industry. Mino contains unique artistic expression in all areas which allows enough freedom for creative expression.

Notes:

1) We mean the algorithms that govern operation of the game, not a particular literary document that describes these algorithms.
2) US Code Title 17 Section 102b
3) http://www.copyright.gov/fls/fl108.html
4) The copyright registration referenced in the DMCA cease and desists was for a non-iphone version of the game

## TRADEMARK/ TRADE DRESS

The Tetris Company is currently suing blocks over trade dress. Their arguments are that the following ten components consitute the Trade Dress of their "Tetris" trademark. Any of these concepts are found in other games made by other companies, and it would be trivial to point them out. But furthermore, almost all of these are directly related to the rules of the game and may not constitute a trade dress.

**"Geometric playing pieces formed by four equally-sized, delineated blocks"**

The rules of the game constitute a grid of elements. The simplest and most obvious way to display a grid of elements is as a grid of equally sized squares. Furthermore, trade dress cannot be so broad as to encompass any group of four equally sized geometric pieces. Millions of logos fall under this description.

**"The long vertical rectangle playing field, which is higher than wide"**

It is impossible to make a Tetramino game without this characteristic, as the rules clearly call for a 20 x 40 grid, twice as high as it is wide.

**"The downward, lateral and rotating movements of the playing pieces"**

It is impossible to make a Tetramino game without this characteristic; it is unambigously a part of the rules of the game.

**"The appearance of a shadow piece at the bottom of the playing field matrix to indicate where the Tetrimino will drop"**
It is impossible to make a Tetramino game without this characteristic; it is part of the rules of the game.

**"The appearance of a trailer effect after the Tetrimino during a 'hard drop' command"**
Ours does not do this. Furthermore, trade dress may not be so broad as "the apperance of a trailer

effect."

**"The display of the next Tetrimino that will fall down the matrix in a small box next to the playing field"**
It is impossible to make a Tetramino game without this characteristic; The rules are unambigously that the player may see the next piece, and by definition, it must be displayed "next" to the playing field so as to be seen on the screen. Though in our case it is "above" the playing field.

**"The disappearance of any completed horizontal line"**
It is impossible to make a Tetramino game without this characteristic; it is part of the rules of the game.

**"The display of a flash effect when a completed horizontal line disappears"**
Ours does not do this. Furthermore, vague graphical effects such as "a flash effect" are to broad to constitue a trade dress.

**"The subsequent consolidation of the playing pieces remaining on the playing field as a result of the downward shift into the space vacated by the disappearing line."**

It is impossible to make a Tetramino game without this characteristic; it is part of the rules of the game.

## Conclusion

The aforementioned reasons given by the The Tetris Company for the alleged trade dress infringement of Blockles are laughable indeed; individually or on whole they have very little to do with trade dress.

## PATENT

There is no patent on the game of Tetris, or Tetramino games in general. If there was a patent it would have expired at least 2-3 years ago. We are in no violation of patents.