# EXHIBIT 3

```
UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------x
TETRIS HOLDING, LLC, and THE
TETRIS COMPANY, LLC,
          Plaintiffs and,
          Counterclaim Defendant  Civil Action No.
          -against-               3:09-CV-6115
                                     (FLW)(DEA)
XIO INTERACTIVE,
          Defendant and
          Counterclaim Plaintiff.
-----------------------------------x
                    August 11, 2011
                    11:23 a.m.

     Videotaped Deposition of JEFFREY C. NEU,
taken by Plaintiff, pursuant to subpoena, at the
offices of Kirkland & Ellis, LLP, 601 Lexington
Avenue, New York, New York, before SUZANNE
PASTOR, a Shorthand Reporter and Notary Public
within and for the State of New York.
```

```
A P P E A R A N C E S:
   KIRKLAND & ELLIS LLP
   Attorneys for Plaintiffs and Counterclaim
   Defendants
        601 Lexington Avenue
        New York, New York 10022
   BY:   JOHANNA SCHMITT, ESQ.
         (212) 446-4841
         johanna.schmitt@kirkland.com


   DURIE TANGRI
   Attorneys for Defendant and Counterclaim
   Plaintiff
        217 Leidesdorff Street
        San Franscisco, California 94111

   BY:   SONALI D. MAITRA, ESQ.
         (415) 362-6666
         smaitra@durietangri.com


   KUZAS NEU
   Attorneys for the Witness
        318 Newman Springs Road
        Redbank, New Jersey 07701

   BY:   LUC ULMET, ESQ.
         (646) 351-1196
         luc.ulmet@kuzas.com



ALSO PRESENT:

   MICHAEL DAVIDSON, Videographer
```

```
 1                    NEU - AUGUST 11, 2011
 2        A.    No, I have no reason to believe it.
 3        Q.    So in the first e-mail on page 2,
 4   it's an e-mail on Monday, August 3rd from Jeanne
 5   Hamburg of Norris McLaughlin to XIO Interactive.
 6   And it reads, "Please see the attached letter."
 7   Do you see that?
 8        A.    Yes.
 9        Q.    And there's question marks next to
10   Jeanne Hamburg's name and her firm.  Do you know
11   what those question marks are?
12        A.    I would assume they are characters
13   that are included in the e-mail which, when it
14   was printed, did not know how to render.
15        Q.    And Desiree Golen forwarded that
16   e-mail to you with the notes "finally came..."
17   Do you see that?
18        A.    I do.
19        Q.    At this point were you anticipating
20   that XIO would receive a letter from the Tetris
21   Company?
22        A.    It is definitely --
23              MS. MAITRA:  Objection; vague.
24        A.    It is definitely things that we had
25   talked about.  I'm sure we have.  I don't recall
```

```
 1                NEU - AUGUST 11, 2011
 2     specific conversation, but in the grand scheme
 3     of discussion, I am sure that we discussed
 4     potential claims such as these.
 5          Q.     And Desiree also wrote, "Any chance
 6     we could chat on the phone about our strategy in
 7     the next few days?"  And on the first page at
 8     the bottom is your response to her and you
 9     wrote, "any chance of you guys reskinning?"  Do
10     you see that?
11          A.     I do see that.
12          Q.     What does reskinning mean?
13          A.     Reskinning is where you modify or
14     otherwise change the graphics or the
15     presentation of the game as opposed to the form
16     and function of the game.  Or in this particular
17     case, game.  Reskinning is just the changing of
18     graphics as opposed to form and function.
19          Q.     Earlier you mentioned that you had
20     discussed with XIO the possibility that they
21     would receive a letter from the Tetris Company
22     in connection with Mino, correct?
23          A.     Yes.
24                 MS. MAITRA:  Objection; misstates
25     testimony.
```

Case 3:09-cv-06115-FLW-DEA   Document 51-5   Filed 10/25/11   Page 6 of 12 PageID: 2460

113

```
 1                NEU - AUGUST 11, 2011
 2         A.     I am.
 3         Q.     Do you think that Pac-Man and
 4   Ms. Pac-Man have the same form and function?
 5                MS. MAITRA:  Objection.  Outside
 6   the scope of this deposition.
 7         A.     Yes.  As far as I am aware of
 8   Pac-Man and Ms. Pac-Man, there could be a
 9   multiple of varieties.  But if it involves one
10   with a little yellow guy eating dots and another
11   one with a little yellow guy with a red bow on
12   its head eating dots, the gender of which I will
13   not comment on, I would consider them similar in
14   form and function.
15         Q.     If the maze design is different in
16   those games, it still has the same form and
17   function?
18                MS. MAITRA:  Same objections.
19         A.     I think that would depend upon --
20   the analysis of that question would depend upon
21   more factors than just the maze design.
22         Q.     Turning back to this e-mail chain,
23   Desiree responded to you, "We don't have plans
24   to reskin.  I don't know how else to make Mino
25   more different than EA's version."  And then you
```

```
 1                  NEU - AUGUST 11, 2011
 2     responded to her at the top of the page on
 3     August 25th, "I think there are ways to make it
 4     different than EA's version and I would do as
 5     much of them as possible."
 6                  Did you write that?
 7          A.      I believe so.
 8          Q.      So you were advising her to make it
 9     more different than EA's version, correct?
10                  MS. MAITRA:  Objection.  Vague and
11     misstates the document.
12          A.      No, I wouldn't agree with that
13     characterization.
14          Q.      You said, "I think there's ways to
15     make it different from EA's version," and you
16     advised her to do as much of them as possible.
17     Doesn't that mean take steps to make it -- take
18     as many steps as you can to make it more
19     different than EA's version?
20          A.      Oh, in that characterization, I
21     would agree with that statement, yes.
22          Q.      And then you say, "Here's what
23     they're claiming in the other suit."  What's the
24     other suit you're referring to?
25          A.      I don't recall.
```

```
 1                NEU - AUGUST 11, 2011
 2      Q.     Is that the lawsuit that the Tetris
 3 Company brought against the makers of the game
 4 Blockles?
 5      A.     I don't recall but that sounds
 6 good.
 7      Q.     Are you familiar with that case?
 8      A.     The name of it and that it existed,
 9 now that you bring it up, yes.  But I wouldn't
10 have recalled it on my own accord.
11      Q.     Did you read the complaint in that
12 case?
13      A.     I believe at one time I did.
14      Q.     Did you contact anybody who was
15 involved with that case?
16      A.     I don't recall.
17      Q.     Did Desiree Golen tell you that she
18 had contacted anyone who was involved with that
19 case?
20      A.     I think she did, but I don't recall
21 exactly.  It sounds like a conversation we may
22 have had because I believe she mentioned
23 something to the effect that they were down the
24 street from her or something like that.
25      Q.     Are there any other cases you can
```

```
 1                    NEU - AUGUST 11, 2011
 2     recall where the Tetris Company sued a developer
 3     of a game that they thought infringed Tetris?
 4           A.     Not off the top of my head, no.
 5           Q.     Do you remember Ms. Golen informing
 6     you about such cases?
 7                  MS. MAITRA:  Objection; form and
 8     vague.
 9           A.     I am confident that she probably
10     did.  She was very thorough in her research.
11     And if they exist, I'm sure she probably sent
12     them to me.  But I don't recall a specific
13     instance.
14           Q.     When you say "thorough in her
15     research," do you mean legal research?
16                  MR. ULMET:  Objection.
17           A.     I don't know how we would classify
18     the difference between legal research versus
19     other research.
20           Q.     Did you ever read her blog about IP
21     law?
22           A.     She has a blog about IP law?
23                  MS. MAITRA:  Objection; lacks
24     foundation.
25           A.     I may have.  But it doesn't ring
```

```
 1                NEU - AUGUST 11, 2011
 2   any specific bell.
 3          Q.    Sorry, back to this e-mail, it
 4   says, "Here is what they are claiming in the
 5   other suit," and you quote -- list several
 6   bullet points with quotation marks, correct?
 7          A.    Yes, that is in the e-mail.
 8          Q.    Right.  Things like geometric
 9   playing pieces formed by four equally sized
10   delineated blocks, the long, vertical, rectangle
11   playing field which is higher than wide, the
12   downward lateral and rotating movements of the
13   playing pieces, the appearance of a shadow piece
14   at the bottom of the playing field matrix to
15   indicate where the Tetromino will drop, the
16   appearance of a trailer effect after the
17   Tetromino during a hard drop command, the
18   display of the next Tetromino that will fall
19   down the matrix in a small box next to the
20   playing field, the disappearance of any
21   completed horizontal line, the display of a
22   flash effect when a completed horizontal line
23   disappears, and the subsequent consolidation of
24   the playing pieces remaining on the playing
25   field as a result of the downward shift into the
```

```
 1              NEU - AUGUST 11, 2011
 2    space vacated by the disappearing line.
 3              And then you wrote, "The less of
 4    these we have, the better," correct?
 5         A.   Yes.
 6         Q.   So you were advising her that the
 7    less of these elements that you had just listed
 8    were in Mino, the better, correct?
 9         A.   I believe so, yes.
10         Q.   And when you said, "The less of
11    these we have, the better," you were talking in
12    relation to the letter that the Tetris Company
13    had sent as opposed to making the game better
14    for aesthetic purposes.
15              MR. ULMET:  Objection.  You may
16    answer.
17              MS. MAITRA:  Objection.
18         Q.   Let me start again.
19              MS. MAITRA:  Vague, form.
20         Q.   So in this e-mail you were giving
21    her legal advice as opposed to game development
22    advice, correct?
23              MS. MAITRA:  Objection; misstates
24    testimony --
25              MR. ULMET:  Objection.
```

```
 1                NEU - AUGUST 11, 2011
 2              MS. MAITRA:  Mischaracterizes the
 3    document and lacks foundation.
 4              MR. ULMET:  Objection.  You can
 5    answer if you understand the question.
 6         A.    I believe this was a -- I believe
 7    that it would be a mixture of business advice
 8    and legal advice.  Do you want me to expand on
 9    that or would you like me to leave it there?
10         Q.    No, that's fine.
11              And when you said "the less of
12    these we have, the better," did you mean it
13    would be easier to defend against a copyright
14    infringement claim by the Tetris Company if Mino
15    had less of these elements?
16              MR. ULMET:  Objection.
17              MS. MAITRA:  Objection.
18              MR. ULMET:  You can answer.
19              MS. MAITRA:  Vague.
20         A.    I don't know that I want to
21    speculate as to my state of mind at the time,
22    but in reading it now, I would assume so.
23         Q.    So your advice to her on this day
24    was to change Mino.
25              MS. MAITRA:  Objection.
```