# EXHIBIT 5

```
UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------x
TETRIS HOLDING, LLC, and THE
TETRIS COMPANY, LLC,
         Plaintiffs and,
         Counterclaim Defendant  Civil Action No.
         -against-               3:09-CV-6115
                                    (FLW)(DEA)
XIO INTERACTIVE,
         Defendant and
         Counterclaim Plaintiff.
-----------------------------------x
                   August 11, 2011
                   11:23 a.m.

   Videotaped Deposition of JEFFREY C. NEU,
taken by Plaintiff, pursuant to subpoena, at the
offices of Kirkland & Ellis, LLP, 601 Lexington
Avenue, New York, New York, before SUZANNE
PASTOR, a Shorthand Reporter and Notary Public
within and for the State of New York.
```

A P P E A R A N C E S:

   KIRKLAND & ELLIS LLP
   Attorneys for Plaintiffs and Counterclaim
   Defendants
       601 Lexington Avenue
       New York, New York 10022
   BY:   JOHANNA SCHMITT, ESQ.
       (212) 446-4841
       johanna.schmitt@kirkland.com


   DURIE TANGRI
   Attorneys for Defendant and Counterclaim
   Plaintiff
       217 Leidesdorff Street
       San Franscisco, California 94111

   BY:   SONALI D. MAITRA, ESQ.
       (415) 362-6666
       smaitra@durietangri.com


   KUZAS NEU
   Attorneys for the Witness
       318 Newman Springs Road
       Redbank, New Jersey 07701

   BY:   LUC ULMET, ESQ.
       (646) 351-1196
       luc.ulmet@kuzas.com



ALSO PRESENT:

   MICHAEL DAVIDSON, Videographer

```
 1                  NEU - AUGUST 11, 2011
 2    expression of the game?
 3              MS. MAITRA:  Objection;
 4    mischaracterizes the document and lacks
 5    foundation.
 6         A.   I don't recall.
 7         Q.   Do you have any notes of your
 8    conversations with XIO?
 9              MS. MAITRA:  Objection; asked and
10    answered.
11         A.   Not that I'm aware of.
12         Q.   I'm going to mark Exhibit 31.
13              (Neu Exhibit 31 for identification,
14    Bates XXX-PRIV-XXX-XIO-DG 100730.)
15         Q.   Exhibit 31 is a document produced
16    by XIO with the Bates number XXX-PRIV-XXX-XIO-DG
17    100730.  It's an e-mail from Jeffrey Neu to
18    Desiree Golen dated September 29, 2009 and it
19    has attached memorandum to it.
20              Jeff, do you remember sending this
21    e-mail to Ms. Golen?
22         A.   I don't remember pressing the
23    "send" button.  But I do remember that an e-mail
24    was sent with what appears to be this memo.
25         Q.   You wrote, "Sorry for the late
```

```
 1                  NEU - AUGUST 11, 2011
 2     reply.  Attached is the memo that I had
 3     written."  Correct?
 4           A.     Yes.
 5                  MR. ULMET:  Objection.  You can
 6     answer.
 7           A.     That is what it says.
 8           Q.     So let's turn to your memo.
 9           A.     Sure.
10           Q.     Do you recognize this memo?
11           A.     Yes, I do.
12           Q.     And this was the memo, or the
13     document you were referring to earlier in the
14     deposition that you can't -- you don't have a
15     copy of this particular e-mail and this
16     particular final draft of the memo, correct?
17           A.     I believe that is accurate, yes.
18           Q.     And you don't know why you don't
19     have it.
20           A.     No, I don't know why.  I commented
21     to my counsel that I couldn't find it.  I'm not
22     sure why.  I have no reasoning other than the
23     switching of law firms and the changing of
24     systems, it may have been lost.
25           Q.     Who is Jennifer Yoon?
```

```
                NEU - AUGUST 11, 2011
 1
 2      A.      She is a former associate of mine.
 3      Q.      Did Desiree Golen tell you that she
 4   had read your memo?
 5      A.      I don't recall.  I assume she did.
 6      Q.      Did you discuss the memo with her
 7   after you sent it?
 8      A.      I don't know.  I believe that this
 9   memo was one of the teetering points of our
10   working relationship.
11      Q.      She didn't like what you said in
12   this memo, right?
13              MS. MAITRA:  Objection; calls for
14   speculation.
15              MR. ULMET:  Objection.
16      A.      I don't know that I can speculate
17   as to that.
18      Q.      Did she tell you that she didn't
19   like the advice that you provided in this memo?
20      A.      I don't recall her ever expressing
21   that sentiment.
22      Q.      Why did you think it was the
23   teetering point?
24      A.      Because shortly after this memo was
25   given to her she engaged a different law firm.
```

```
 1                NEU - AUGUST 11, 2011
 2    The facts, in my opinion, speak for themselves.
 3    Unless there is something that I had done in the
 4    past that she didn't like and she didn't tell me
 5    about, which is possible.
 6          Q.    So in your opinion, this memo led
 7    to your termination as XIO's lawyer.
 8               MR. ULMET:  Objection.
 9               MS. MAITRA:  Objection, misstates
10    the testimony and calls for speculation.
11               MR. ULMET:  I wouldn't get into
12    that too much.  It has nothing to do with
13    whether Mino is similar to Tetris.
14          Q.    All right, so the first page of the
15    memo, it says, "This memorandum discusses the
16    present state of copyright laws of video games.
17    In particular, it addresses the copyrightability
18    of video games and the infringement analysis the
19    courts use to determine whether or not a video
20    game is infringing and already copyrighted video
21    game.  Finally, this memo briefly addresses the
22    issue of trade dress infringement."  Do you see
23    that?
24          A.    I do.
25          Q.    The Borland case is not mentioned
```

```
 1                 NEU - AUGUST 11, 2011
 2    in this memo.
 3              MR. ULMET:  Is there a question?
 4       Q.    Well, I'm telling you that it's
 5    not, so you don't have to read the whole thing.
 6    But I'm representing to you that Borland is not
 7    mentioned here.  Is that because it was your
 8    opinion as of September 25th, 2009 that Borland
 9    was not relevant to this analysis?
10              MS. MAITRA:  Objection.  Lacks
11    foundation.
12              MR. ULMET:  Objection; lacks
13    foundation.
14              MS. MAITRA:  Calls for speculation
15    and asked and answered.
16              MR. ULMET:  There's no indication
17    that there ever was any mention of Borland in
18    this memo.  I don't know why you --
19              MS. SCHMITT:  This memorandum lists
20    a lot of cases which are purportedly relevant to
21    the analysis of whether Mino infringes Tetris.
22    I'm saying that a case that was discussed
23    earlier is not mentioned here.
24       Q.    My question is, is the reason it's
25    not mentioned in this memo because it's not
```

```
 1                  NEU - AUGUST 11, 2011
 2     relevant to the analysis?
 3                  MS. MAITRA:  Objection; lacks
 4     foundation, calls for speculation, calls for a
 5     legal conclusion and outside the scope.
 6          A.      The short answer is the omission of
 7     Borland has no reflection on whether it would be
 8     applicable or not.  The omission or inclusion of
 9     any of these cases is due to the work of Ms. Jen
10     Yoon and not from my directing of her to pay
11     attention or not to pay attention to any
12     particular case.
13          Q.      Well, you said in your cover e-mail
14     that you wrote the memo.
15          A.      No, I said that I had it written,
16     not that I wrote it.  But I had it written.
17          Q.      It says attached is -- oh, "I had
18     written."  I see, that you directed to be
19     written.
20          A.      That's correct, yes.  Which is why
21     it says on page 2 from Jennifer Yoon to me.
22     Because it was not intended to be a client memo.
23     It was intended to be an internal memo, but the
24     client, if I recall correctly, wanted to see the
25     memo and I forwarded it along.
```

```
                   NEU - AUGUST 11, 2011
     Q.    Ms. Yoon was an associate who
worked for you, correct?
     A.    That is correct, yes.
     Q.    And in your experience, did she
produce accurate and thorough work product?
     A.    She was a very responsible
attorney.
           MS. MAITRA:  Objection; vague.
     Q.    Go ahead.
           MS. MAITRA:  Sorry, I missed the
answer.  What was the answer?
     A.    The answer is I believe Ms. Yoon is
a very responsible attorney.
     Q.    And competent attorney?
     A.    Competent attorney as well.
     Q.    Did you read this memo before you
sent it to Ms. Golen?
     A.    My assumption is based on the time
at which it was sent, the likelihood of me
spending much time with this memo is negligible.
I am sure I read it.  The amount of time I spent
perusing it I am not sure of.
     Q.    But you have no reason to believe
that what she wrote in here was inaccurate,
```

```
 1                NEU - AUGUST 11, 2011
 2   correct?
 3            MR. ULMET:  Objection.
 4       A.   I have no reason to believe that.
 5       Q.   Where is Ms. Yoon now?
 6       A.   I believe she's just taken a job in
 7   Boston with the firm of -- where does Christine
 8   work now?  What's the name of her firm?
 9            MR. ULMET:  Who?
10       A.   Christine.  I can't remember
11   the name of the firm.
12            MR. ULMET:  Procter?
13       A.   Procter Goodwin.  Goodwin Procter.
14   I believe she has just taken a job in the IT
15   department at Goodwin Procter.
16       Q.   Does Ms. Yoon still have the same
17   last name, to your knowledge?
18       A.   As far as I am aware, yes.
19       Q.   And you directed Ms. Yoon to write
20   this memo, correct?
21       A.   As far as I recall, yes.
22       Q.   And she writes on the first page
23   under the bullet that says, "Access to the
24   copyrighted work.  In our case, access will be
25   easily established based on Tetris' wide
```

```
 1                NEU - AUGUST 11, 2011
 2   availability."
 3            Do you agree with that statement?
 4            MS. MAITRA:  Objection.
 5            MR. ULMET:  Objection.
 6            MS. MAITRA:  Outside the scope of
 7   this deposition.  This deposition is only
 8   regarding pre litigation communications with the
 9   defendant about whether Mino infringes Tetris.
10   That's a court order.
11            MR. ULMET:  Whether he agrees with
12   the statement is irrelevant.
13       Q.   This statement was passed along to
14   Ms. Golen as legal advice, correct?
15            MS. MAITRA:  Objection;
16   mischaracterizes testimony.
17       A.   I would say that this statement --
18   this memo was passed on to Ms. Golen because she
19   requested it.
20       Q.   And in that memo that you passed
21   along to Ms. Golen in September of 2009, it
22   reads, "Access will be easily established based
23   on Tetris' wide availability," correct?
24       A.   Yes, I believe that's what it says.
25       Q.   And a little further down in the
```

```
```

NEU - AUGUST 11, 2011

next bullet points it says, "Our" -- again, this is in a memo that was transmitted to Ms. Golen. It says, "Our case will hinge on this substantial similarity element." Correct?

A. It does say that, yes.

Q. And in this memo you told Ms. Golen that, "It is well established that video games are," capital A-R-E, "copyrightable."

MS. MAITRA: Objection; lacks foundation.

MR. ULMET: Is there a question?

Q. I'm asking is it correct that in this memo that he transmitted to Ms. Golen included the statement, "It is well established that video games are, A-R-E, copyrightable."

A. That's what it says.

Q. And in this memo that you sent to Ms. Golen it also says in italics, "We should not --" not in italics. "We should not waste the court's time arguing that the video game is not copyrightable unless we can make a case that there is no separable expression, separable beyond any idea in the Tetris game," and then in italics, "I think this would be a losing

Case 3:09-cv-06115-FLW-DEA   Document 51-7   Filed 10/25/11   Page 14 of 15 PageID: 2485

152

```
 1                  NEU - AUGUST 11, 2011
 2    argument and a waste of our efforts," correct?
 3          A.      That's what it says.
 4                  MS. MAITRA:  What's the question?
 5                  MR. ULMET:  Objection; what's the
 6    question?
 7          Q.      You sent that statement in this
 8    memo to Ms. Golen on September 29th, 2009,
 9    correct?
10          A.      That's correct.
11          Q.      And does this memo represent your
12    legal opinion that you agreed with?
13                  MS. MAITRA:  Objection --
14          Q.      In other words, I don't want to get
15    caught up on what Ms. Yoon thought versus
16    Mr. Neu.  I already established that you respect
17    Ms. Yoon, she was your associate, she did this
18    at your direction.  You sent this to Ms. Golen.
19    So I want to establish if you agreed with what
20    Ms. Yoon wrote in this memo that you then passed
21    along to your client at XIO.
22                  MS. MAITRA:  Objection.  Outside --
23    I couldn't tell whether it was past tense or
24    present tense.  If it was -- was it past tense
25    or present tense?
```

```
 1                    NEU - AUGUST 11, 2011
 2              MS. SCHMITT:  What do you mean?
 3              MR. ULMET:  Are you asking him do
 4    you agree or did you agree when --
 5         Q.    Did you agree?
 6              MS. MAITRA:  Sorry, then no
 7    objection.
 8         A.    My opinion of the memo was that the
 9    reason that this was -- and the way it was
10    initially drafted was to educate me as to what
11    she thought was the current state of the law.
12         Q.    And you rely on Ms. Yoon's
13    analysis, correct?  Or you relied on it in
14    September 25th, 2009, correct?
15              MS. MAITRA:  Objection.  Vague.
16              MR. ULMET:  Relied for what?
17              MS. MAITRA:  And misstates
18    testimony.
19              MS. SCHMITT:  To give his client
20    advice.
21         A.    So I respect Ms. Yoon's work.  I
22    don't necessarily always agree.
23         Q.    Is there anything -- did you agree
24    with the statement that it is well -- as of
25    September 25th, 2009, did you agree with the
```