Dale M. Cendali
Johanna Schmitt
Brendan T. Kehoe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
johanna.schmitt@kirkland.com
brendan.kehoe@kirkland.com

Robert J. Schoenberg
RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Telephone: (973) 538-0800
rschoenberg@riker.com

Attorneys for Plaintiffs Tetris Holding, LLC
and The Tetris Company, LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TETRIS HOLDING, LLC and THE TETRIS COMPANY, LLC, <br><br> Plaintiffs, <br><br> - against - <br><br> XIO INTERACTIVE INC., <br><br> Defendant. | Case No.   3:09-cv-6115 (FLW) (DEA) <br><br> Hon. Freda L. Wolfson, U.S.D.J. <br> Hon. Douglas E. Arpert, U.S.M.J. <br><br> **DECLARATION OF HENK B. ROGERS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> *Document Filed Electronically* |

I, Henk B. Rogers, declare as follows:

1. I am an owner and Member of plaintiff Tetris Holding, LLC. In addition, I am the Managing Director of plaintiff The Tetris Company, LLC. (Tetris Holding, LLC and The Tetris Company, LLC are collectively referred to herein as "TH"). I am also an experienced game designer and developer.

2. In addition to my previous Declaration in Support of TH's Motion for Summary Judgment (dated September 29, 2011) in this case, I submit this declaration in support of TH's Opposition to Xio's Motion for Summary Judgment. This declaration is based on my personal knowledge and my knowledge based on my review of the documents produced in this case and the testimony provided during depositions.

### *Mino* Copies *Tetris*

3. As an initial matter, the decision to base the *Tetris* playing pieces on the tetromino shape, rather than on some other shape (such as a hexagon or triangle) or other polyomino (such as pentaminos), was a creative choice. It was another creative choice to have five Tetrimino pieces based on the five tetromino shapes illustrated by Mr. Golomb (and pictured in Xio's motion), and yet another creative choice to include two Tetrimino pieces based on the mirror-image of two of those pieces, for a total of seven different Tetrimino playing pieces. In addition, the particular appearance of the Tetrimino pieces in *Tetris* is a creative

1

choice. To design the pieces, an unlimited number of colors, patterns and other visual elements are available. Further, each of the seven Tetrimino pieces is a different shape and thus color, patterns or other visual cues are not necessary or essential to distinguish the pieces. As illustrated below, the creative choice was made to use certain bright colors for the Tetriminos in *Tetris*, and Xio's *Mino* game copies these bright colors.



*Tetris (iPhone)*

*Mino 1.1*

4. *Tetris* does not attempt to simulate a real-life situation, it is an abstract videogame where anything is possible.

5. The appearance of the rotation of the Tetriminos in *Tetris* was not dictated by the shapes themselves. This was a creative choice, and the rotation of the pieces could have appeared differently. In *Tetris*, the choice was made that the playing pieces would appear to rotate by 90 degrees (rather than another amount such as 45 or 180 degrees). However, it is possible to create an electronic game where the playing pieces appear to rotate by less than, or more than, ninety degrees (or not appear to rotate at all). *Mino* copies the appearance of the rotation of the

pieces from *Tetris*.

      6.     *Mino* copies the appearance of the pieces from *Tetris*.

### *Tetris* Design Documents

      7.     TH created the *Tetris* Design Guidelines for its licensees.  The *Tetris* Design Guidelines are like style guides that are commonly used by licensors to make sure their licensees adhere to certain standards.  The purpose of the *Tetris* Design Guidelines is to instruct licensees how to make a videogame that looks like *Tetris*.  The Design Guidelines are updated annually and set forth the standards to which TH's licensees should adhere when making a *Tetris*-branded game.  These standards ensure that *Tetris*-branded games are high-quality and have a consistent look.  The guidelines specify such things as the placement of the *Tetris* logo on the screen, the colors and appearance of the Tetriminos, the speed by which the Tetriminos should appear to move, and how each Tetrimino should appear to rotate.  These are all elements that TH wants its licensees to replicate so that the resulting videogame is high quality and resembles *Tetris*.  These guidelines use the word "rules" in its ordinary sense of "standards" or "guides" for licensees to follow when making a game that looks like *Tetris*.  The guidelines do not opine on what is protectable expression under copyright law.  An example of the *Tetris* Design Guidelines is attached as Exhibit A.  This document was produced by TH in this lawsuit at TETRIS-XIO-0013347 and was designated "CONFIDENTIAL"

pursuant to the parties' protective order.

8.  Attached as Exhibit B is a true and correct copy of a document that TH produced in this lawsuit at TETRIS-XIO-0016436 and was designated "HIGHLY CONFIDENTIAL" pursuant to the parties' protective order. This document was not authored by TH. It was submitted to TH by its licensee, Electronic Arts (EA), and appears to describe a proposal for a proposed version of *Tetris*. This document does not purport to opine on what is protectable expression in the context of copyright law.

9.  In 2009, TH created a *Tetris* Resource Kit that it planned to give its licensees to facilitate them in making a game that looks like a *Tetris*-branded game. Attached as Exhibit C is a true and correct copy of the 2009 *Tetris* Resource Kit, which was produced by TH with the Bates-number TETRIS-XIO-0015535 and was designated "CONFIDENTIAL" pursuant to the parties' protective order. As the document states, the Resource Kit focused on instructions about the music and sound effects, and how to write code properly:

> The purpose of this document is to provide supplemental material for Tetris game development. This material includes game music, sound effects, and engine support. This document also alerts Tetris Licensees to common issues that arise when developing Tetris.

10. In other words, this Resource Kit was to provide materials to licensees so that they could more efficiently write source code and design a *Tetris* version

4

for their platforms. To this end, TH also planned to distribute sample source code with the Resource Kit to help licensees program their games. However, this source code was never finalized and never actually sent to licensees.

11. The Resource Kit states that the sample source code will allow licensees to "better understand Tetris game rules and logic." This does not refer to the legal definition of "rules" for the purposes of determining the protectable visual expression. Rather, these words are simply used in the way they are commonly used by programmers to refer to "rules and logic" behind the technical task of programming software to achieve a particular goal.

12. There are multiple visual elements that appear in the basic *Tetris* demo (which is the output of the above-referenced sample source code) that do <u>not</u> appear in certain *Tetris* games, including the delineation of the individual squares in the Tetriminos, the particular starting orientation of the playing pieces, the appearance of a ghost piece, and the change in color of the playing pieces when they enter lock-down mode.

### *Kids Tetris*

13. TH owns a copyright registration for the visual expression of *Kids Tetris*, which is not at issue in this case.

### **Table-Top Games**

14. TH's licensee created and distributes a table-top game called *Tetris*

*Link.* In addition, Milton Bradley released a licensed table-top game called *Tetris*. These table-top games are different from the electronic *Tetris* games at issue in this case. They do not share all of the same visual expression, including, among other things, the movement and sequence of images.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 24th day of October, 2011 at Honolulu, Hawaii.

Henk B. Rogers

# Exhibit A
# to the Declaration of Henk Rogers

# **FILED UNDER SEAL**

# Exhibit B
# to the Declaration of Henk Rogers

## FILED UNDER SEAL

# Exhibit C
# to the Declaration of Henk Rogers

# **FILED UNDER SEAL**