Dale M. Cendali
Johanna Schmitt
Brendan T. Kehoe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
johanna.schmitt@kirkland.com
brendan.kehoe@kirkland.com

Robert J. Schoenberg
RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Telephone: (973) 538-0800
rschoenberg@riker.com

Attorneys for Plaintiffs
Tetris Holding, LLC and The Tetris Company, LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TETRIS HOLDING, LLC and THE TETRIS COMPANY, LLC, <br><br> Plaintiffs, <br><br> - against - <br><br> XIO INTERACTIVE INC., <br><br> Defendant. | Case No. 3:09-cv-6115 (FLW) (DEA) <br><br> Hon. Freda L. Wolfson, U.S.D.J. <br><br> **REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56** <br><br> **Motion Date: December 5, 2011** <br><br> *Document Filed Electronically* |

## TABLE OF CONTENTS

**Page**

I.    **PRELIMINARY STATEMENT**.................................................................1

II.   **ARGUMENT**..........................................................................................3

      A.    The Customs Decisions Are Persuasive Authority and
           Underscore that Xio Copied TH's Protectable Expression...................3

      B.    TH Applied the Correct Standard for "Functionality" and
           Established that the *Tetris* Trade Dress Is Nonfunctional....................8

## TABLE OF AUTHORITIES

**Cases**

*Adidas-Salomon AG v. Target Corp.*,
   228 F. Supp. 2d 1192 (D. Or. 2002) ............................................................ 9, 11

*Atari, Inc. v. N. Am. Philips Cons. Elecs. Corp.*,
   672 F.2d 607 (7th Cir. 1982) ....................................................................7

*Autolog Corp. v. Regan*,
   731 F.2d 25 (D.C. Cir. 1984)....................................................................5

*Aymonier v. United States*,
   No. 09-4757, 2010 WL 5149289 (D.N.J. Dec. 13, 2010) ....................................4

*Camreta v. Greene*,
   131 S. Ct. 2020 (2011)............................................................................4

*Cartier v. Sardell Jewelry, Inc.*,
   294 F. App'x 615 (2d Cir. 2008) ..............................................................11

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*,
   348 F. Supp. 2d 217 (S.D.N.Y. 2004) .................................................. 11, 13, 14

*High Voltage Bevs., LLC v. Coca-Cola Co.*,
   No. 08-367, 2010 WL 5924318 (W.D.N.C. Dec. 16, 2010) ................................4

*In Re Brayco Prods., Ltd.*,
   No. 77296052, 2009 WL 4329104 (T.T.A.B. Nov. 16, 2009) ...........................11

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
   113 F.3d 373 (2d Cir. 1997) .....................................................................9

*Logan Graphic Prods., Inc. v. Textus USA, Inc.*,
   No. 02-1823, 2003 WL 21011746 (N.D. Ill. May 5, 2003) ...............................10

*Merchant Trans. Sys., Inc. v. Nelcela, Inc.*,
   No. 02-1954, 2009 WL 723001 (D. Ariz. March 18, 2009)...............................5

*Miche Bag, LLC v. Marshall Grp.*,
   No. 10-129, 2010 WL 2539447 (N.D. Ind. June 16, 2010)...............................10

*Miss Am. Org. v. Mattel, Inc.*,
   945 F.2d 536 (2d Cir. 1991) ................................................................................4

*Mortgage Mkt. Guide, LLC v. Freedman Report, LLC*,
   No. 06-140, 2008 WL 2991570 (D.N.J. July 28, 2008) ......................................8

*N.V.E., Inc. v. Famous,*
   No. 08-1633, 2009 WL 2194538 (D.N.J. July 22, 2009) .....................................6

*Sea Princess Servs. v. United States*,
   2002 A.M.C. 172 (D. Guam 1996) ......................................................................5

*Shuffle Master Inc. v. Awada,*
   No. 05-1112, 2006 WL 2547091 (D. Nev. Aug. 31, 2006) ...............................11

*Smith v. Rubin & Raine of N.J., LLC*,
   No. 08-5724, 2009 WL 2143644 (D.N.J. July 14, 2009) .....................................4

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*
   532 U.S. 23 (2001) ..................................................................... passim

*Triforest Enters., Inc. v. Nalge Nunc Int'l Corp.*,
   No. 91165809, 2008 WL 885892 (T.T.A.B. Jan. 31, 2008) ..............................11

*Universal City Studios, Inc. v. Nintendo Co.*,
   615 F. Supp. 838 (S.D.N.Y. 1985), *aff'd*, 797 F.2d 70 (2d Cir. 1986). ..........6, 7

*Valu Eng'g, Inc. v. Rexnord Corp.*,
   278 F.3d 1268 (Fed. Cir. 2002) ......................................................... 10, 11, 12

*Williams Elecs, Inc. v. Artic Int'l, Inc.*,
   685 F.2d 870 (3d Cir. 1982) ...........................................................................5, 8

*Yurman Design, Inc. v. PAJ, Inc.*,
   262 F.3d 101 (2d Cir. 2001) ...............................................................................9

## Other Authorities

1 *McCarthy on Trademarks and Unfair Competition* § 7:75 (4th ed.)....................10

## I.   PRELIMINARY STATEMENT

Xio's opposition confirms what TH asserted in its opening brief:  this is a straightforward case that can be resolved on summary judgment.  Indeed, Xio's opposition is notable in that it concedes so much and makes no attempt to rebut much of the evidence and legal support cited by TH.

With regard to TH's copyright claim, Xio offers no evidence to dispute that *Tetris* is a fanciful videogame that could have looked many different ways.  Xio also admits that TH owns copyright registrations for the audiovisual expression of *Tetris,* and that Xio "had access to *Tetris* both before and during the development of *Mino*."  (Xio Opp. Br. 2.)  Moreover, Xio admits that "*Mino* contains the elements" that TH lists as the expression of *Tetris*, and that "*Mino* and *Tetris* look alike."  (*Id.*)  Indeed, Xio makes no attempt to dispute that the games look virtually identical, nor can it as evidenced by the following exemplary screenshots:

| **Tetris® Zone** | **Tetris® Evolution** | **Infringing *Mino* Game** |



Unable to sidestep this clear cut evidence, Xio resorts to attacking a "straw man," arguing that the Customs Decisions—which hold that the elements Xio copied from *Tetris* are copyrightable and were infringed by copycat games like

*Mino*—are not "binding" on this Court.  But, TH did not argue that the Customs

Decisions are binding (nor does it now).  Rather, the Customs Decisions are

persuasive authority as they were issued by an agency that has expertise in

determining infringement.  Also, they involve the very same issues—namely, the

copyright protection afforded to the visual expression of *Tetris.*

      At bottom, Xio's *only* substantive defense to TH's copyright claim is that the

fanciful expression it slavishly copied is somehow unprotected "rules or functional

elements."  Xio puts forth no support for this argument in its opposition—instead,

it merely cites to its own motion.  As detailed below, however, Xio's argument is

baseless.  It deviates from 30 years of well-settled law, which holds that this type

of expression is protectable—and Xio cites no case that holds otherwise.  Also,

*Tetris* is an entertaining videogame, not a "useful article" that must look a certain

way.  *Tetris'* expression serves no utilitarian purpose, and is not the "rules" of the

game.  Moreover, if adopted, Xio's argument would undermine the $60 billion-a-

year videogame industry, which is based on the protection granted to its creativity.

      With regard to TH's trade dress claim, Xio concedes that the *Tetris* Trade

Dress is distinctive, and rebuts *none* of the evidence that proves secondary

meaning—including two consumer surveys.  Nor does Xio dispute that TH has

established a likelihood of confusion.  Xio rebuts *none* of TH's evidence—

including a survey—that shows consumers mistakenly thought *Mino* was *Tetris.*

Instead, trying to excuse its copying and resulting consumer deception, Xio

desperately argues that TH applied the wrong standard for "functionality."  But,

TH clearly applied the correct standard—namely, the one articulated by the

Supreme Court in *TrafFix*—and established its trade dress was not functional

under this standard.  Xio does not dispute this evidence, nor does it offer any

admissible evidence to rebut it.  Indeed, it is Xio (not TH) that applies an incorrect

standard—whether the design "affects" the product in some way—which has no

support in the law.  Thus, summary judgment is warranted for TH.

## II.    ARGUMENT[1]

### A.    The Customs Decisions Are Persuasive Authority and Underscore that Xio Copied TH's Protectable Expression

In its motion, TH cited four decisions by the Customs Service, which each

hold that the visual expression of *Tetris* is copyrightable and that it was infringed

by various copycat games like *Mino.*  The Customs Decisions are well-reasoned

legal opinions, supported by facts and law.  (TH Br. 22–23.)  Also, the Customs

Service carefully considered arguments (like those made by Xio) that the copied

---

[1] Xio admits that it "does not really dispute most of [the facts]" in TH's motion—
which confirms that summary judgment is warranted.  (Xio Opp. Br. 2.)  Xio only
asserts that its attorney, Jeffrey Neu, "did not advise Xio that it infringed Plaintiffs'
rights"—but Xio cites *no* evidence for this conclusory assertion. (*Id.*)  In any case,
Xio's protest rings hollow as it is undisputed that Mr. Neu told Xio "the claimed
infringement" would involve "the similarity… of the imagery," and repeatedly
advised Xio to change *Mino* to look less like *Tetris*.  (Def.'s Responsive Statement
of Material Facts ("DRSMF") ¶¶ 158, 194–97, 202–204.)

elements of *Tetris* were not protectable—but expressly rejected them, citing other

videogames based on the same idea, but with different expression, such as the

game *Breakout* discussed in *Atari v. Oman*.[2]  (*Id*. at 21-23.)

Unable to challenge the Customs Decisions substantively, Xio resorts to

arguing that they are not binding.  (Xio Opp. Br. 4–7.)  But, Xio does not dispute

that they are persuasive authority—nor do any of the cases Xio cites hold that

courts cannot rely on them.  Indeed, given that "Customs has developed expertise

in determining whether articles are or may be infringing," courts have given weight

to Customs rulings in determining infringement in similar circumstances—

especially where there are multiple consistent Customs rulings.[3]  *Miss Am. Org. v.*

*Mattel, Inc.*, 945 F.2d 536, 539 (2d Cir. 1991); *see Sea Princess Servs. v. United*

---

[2] Moreover, at least one decision was not *ex parte* and the Customs Service
considered submissions by the importer, who argued against a finding of
infringement (like Xio does here).  *See* Schmitt Decl., Ex. 68 ("*Pocket Arcade 256
Games in 1" handheld electronic LCD game* decision).

[3] Similarly, while district court decisions are not "binding precedent" in different
districts, the same district, or even upon the same judge in a different case, courts
routinely rely on this non-binding authority when rendering decisions.  *Camreta v.
Greene*, 131 S. Ct. 2020, 2033 n.7 (2011); *see, e.g., Aymonier v. United States*, No.
09-4757, 2010 WL 5149289, at *5, *5 n.3 (D.N.J. Dec. 13, 2010) (Wolfson, J.)
(finding reasoning in non-binding court decision "persuasive and instructive");
*Smith v. Rubin & Raine of N.J., LLC*, No. 08-5724, 2009 WL 2143644, at *5 n. 4
(D.N.J. July 14, 2009) (Wolfson, J.) (finding the Eighth Circuit's reasoning
persuasive).  Courts also rely on decisions by administrative bodies, which have
expertise in particular areas of the law.  *See High Voltage Bevs., LLC v. Coca-Cola
Co.*, No. 08-367, 2010 WL 5924318, at *6 n.3 (W.D.N.C. Dec. 16, 2010) (non-
binding TTAB decisions "have persuasive value with reviewing courts as they
represent the considered opinions of highly specialized [trademark] adjudicators").

4

*States*, 2002 A.M.C. 172, 182 n.5 (D. Guam 1996) (rejecting argument that party

"may not rely on prior Customs Rulings based on 19 C.F.R. 177.9(c)"; rulings

"provide some degree of authority" in cases involving "similar circumstances");

*see also Autolog Corp. v. Regan*, 731 F.2d 25, 32 (D.C. Cir. 1984) (consistent line

of Customs rulings found persuasive).  Here, the Customs Decisions are directly on

point as they involve the same game—*Tetris—*and consistently hold that the visual

elements at issue here are copyrightable.  Thus, they are persuasive authority.

In addition, Xio repeats its hackneyed argument that the fanciful elements it

copied from *Tetris* are unprotectable "rules and other functional elements."  (Xio

Opp. Br. 3.)  As a threshold matter, Xio has the burden to prove that these elements

are unprotectable.  It is undisputed that TH owns registrations for the audiovisual

expression of *Tetris* that were obtained within five years of publication.  (DRSMF

¶¶ 46–48).  Thus, TH's copyrights are entitled to a presumption of validity, and the

burden shifts to Xio to prove invalidity, including proving that the common

elements are not protectable.  *See Williams Elecs, Inc. v. Artic Int'l, Inc.*, 685 F.2d

870, 873–75 (3d Cir. 1982) (registration constituted *prima facie* evidence of

validity; rejecting defendant's argument that videogame was unprotectable

"utilitarian object"); *Merchant Trans. Sys., Inc. v. Nelcela, Inc.,* No. 02-1954, 2009

WL 723001, at * 7 (D. Ariz. March 18, 2009) (upon presumption of validity,

burden shifts to defendant to "demonstrate why those common features and

5

elements are not protected by copyright," including establishing merger).

As discussed at length in TH's opposition to Xio's motion, Xio has not come close to meeting this burden. Indeed, since the birth of videogames 30 years ago, it is well-settled that this type of visual expression in videogames is protected by copyright. (TH Opp. Br. 9–10.) Further, as illustrated below, courts will find infringement even where the games look less similar than *Mino* looks like *Tetris*.[4]

For example, in *Universal City Studios, Inc. v. Nintendo Co.*, the court held that several versions of the *King Kong* videogame infringed *Donkey Kong* because they looked similar—including "the nearly identical march of the hero along the girders, the similar ascent of the gorilla at the outset of the game, the nearly identical progression along girders, up ladders, across ravines"—and replicated *Donkey Kong*'s "tone and feel" (even after *King Kong*'s designer changed it in an attempt to make it look different from *Donkey Kong*). 615 F. Supp. 838, 859 (S.D.N.Y. 1985), *aff'd*, 797 F.2d 70 (2d Cir. 1986). The court held that the

---

[4] While Xio admits that the games "look alike" (Xio Opp. Br. 2), it attempts to dispute that "*Mino* is similar to *Tetris*," claiming "similar" is "ambiguous, undefined and has a legal meaning." (DRSMF ¶ 164.) But, this term is not ambiguous or conclusory—it is synonymous with "look alike." In any case, Xio cites *no* evidence to dispute this fact. As such, this fact is deemed undisputed. *See N.V.E., Inc. v. Famous,* No. 08-1633, 2009 WL 2194538, at *2 (D.N.J. July 22, 2009) (Wolfson, J) ("[T]he nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party" to withstand summary judgment). Thus, all of the facts that Xio purportedly disputes without citing admissible evidence are deemed undisputed. (*See, e.g.,* DRSMF ¶¶ 3, 45, 59, 162, 170).

"interaction of the characters, obstacles, background and music in *Donkey Kong*

are arbitrary, fanciful and sufficiently distinctive such that they deserve protection"

from infringers, such as *King Kong*. *Id.* at 859–60.  As pictured below, there were

differences between the appearance of the gorillas, heroes, ladders and girders—

yet the court easily found *King Kong* infringed *Donkey Kong. Id.* at 859.

| *Donkey Kong* | Infringing *King Kong* (Atari and Table Top) |
|:---:|:---:|

  

Similarly, despite differences between, among other things, the shape and design

of the mazes and characters (as pictured below), the Seventh Circuit determined

that *Pac-Man* was infringed by a competing "maze-chase" game called *K.C.*

*Munchkin.  Atari, Inc. v. N. Am. Philips Cons. Elecs. Corp.*, 672 F.2d 607, 617 (7th

Cir. 1982).

| Original *Pac-Man* | Infringing *K.C. Munchkin* |
|:---:|:---:|

 

Unable to escape this well-settled law, Xio resorts to a series of nonsensical

arguments, which are discussed in its motion.  First, Xio adopts a self-serving

definition of "rules" that includes *all* of the fanciful visual elements that it copied.

(Xio Br. 22.)  In doing so, Xio contravenes court decisions, which consistently

hold that the "rules" of a videogame are basically the same as its "idea" and reject

attempts by plagiarists (like Xio) to describe the "idea"/"rules" in great detail to

include the expression in order to excuse their copying.  (TH Opp. Br. 18–20.)

Even Xio's own expert concedes that many elements Xio copied are not "rules,"

even under Xio's contrived definition.  (*Id.* at 22.)  Further, Xio's argument that it

copied only "functional" elements defies credulity given that *Tetris* is not a

utilitarian article that serves a functional purpose.  *See Williams*, 685 F.2d at 874.

*Tetris* is a fanciful entertainment product that does not *have* to look the way it

does; its visual appearance is the result of a series of creative choices by its

designers as even Xio's own expert repeatedly admitted.  (TH Opp. Br. 36.)  If

Xio's arguments were to prevail, it would encourage a flood of knock-off games as

opposed to original creativity.  Thus, summary judgment for TH is warranted.[5]

**B.    TH Applied the Correct Standard for "Functionality" and Established that the *Tetris* Trade Dress Is Nonfunctional**

As noted above, Xio concedes that TH established most of its trade dress

---

[5] Even under Xio's theory that the "idea"/"rules" of *Tetris* has somehow merged with its expression, *Mino* would still infringe as it is virtually identical to *Tetris*. *See Mortgage Mkt. Guide, LLC v. Freedman Report, LLC*, No. 06-140, 2008 WL 2991570, at \*35 (D.N.J. July 28, 2008) (Wolfson, J.) ("[W]hen an idea and its expression are indistinguishable, or 'merged,' the expression will only be protected against nearly identical copying." (citation omitted)).  *See also supra* page 1.

claim. In its opposition, Xio only argues that TH applied an "incorrect standard" for determining functionality—namely, whether there are alternative designs available.[6] (Opp. Br. 7–14.) Xio's argument is wholly misplaced as TH did *not* argue that this is the standard for functionality.[7] Rather, TH expressly cited and applied the Supreme Court's standard in *TrafFix*: a product design is functional if (1) "it is essential to the use or purpose of the article," (2) "affects the cost or quality of the article," or (3) the right to use it exclusively "would put competitors

---

[6] While not citing it as a basis to deny TH's motion, Xio also criticizes TH's articulation of its trade dress. (Opp. Br. 7–8.) However, TH made clear from the outset that its trade dress consists of "the brightly-colored Tetriminos, which are formed by four equally-sized, delineated blocks, and the long vertical rectangle playfield, which is higher than wide" that appear on the screen when the game commences and is played. (Am. Compl. ¶ 29.) This description is just as detailed as other trade dress descriptions that courts have deemed sufficient. *See*, *e.g.*, *Adidas-Salomon AG v. Target Corp.,* 228 F. Supp. 2d 1192, 1199 (D. Or. 2002) (trade dress described as consisting of three stripes on the side of the shoe parallel to equidistant small holes, a rubber "shell toe," a particularly flat sole, and a colored portion on the outer back heel section). Even the cases cited by Xio underscore that TH's description is not the type of articulation that is deemed deficient. *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 117–18 (2d Cir. 2001) (plaintiff failed to offer *any* articulation whatsoever of its jewelry design trade dress); *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 381– 82 (2d Cir. 1997) (complaint stated that trade dress was made up of unnamed "distinctive elements").

[7] It is Xio (not TH) which applies the wrong standard—namely, whether the individual elements "affect" game play. (Xio Opp. Br. 12.) This standard deviates from *TrafFix*, and the rule that trade dress must be considered as a whole. (TH Br. 32.) Xio cites no case which holds that "affecting game play" is the standard for functionality. Indeed, Xio's argument is nonsensical as it would render all trade dress "functional," as all parts of a product "affect" it in some way.

9

at a significant non-reputation-related disadvantage." *TrafFix Devices, Inc. v.*

*Mktg. Displays, Inc.* 532 U.S. 23, 32 (2001).  (TH Br. 32–37.)

The apparent root of Xio's complaint is that TH has provided evidence of

alternative designs for comparable electronic puzzle games, and Xio wants the

Court to ignore this evidence because it undermines Xio's claim that the trade

dress is functional.  But, it is well-settled that evidence of alternative designs is

properly considered when determining functionality under *TrafFix*:

> Nothing in *TrafFix* suggests that consideration of alternative designs
> is not properly part of the overall mix, and we do not read the Court's
> observations in *TrafFix* as rendering the availability of alternative
> designs irrelevant…. [they are a] legitimate source of evidence to
> determine whether a feature is functional in the first place.

*Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed. Cir. 2002).[8]  Indeed,

courts consider evidence of alternative designs when determining that a product

---

[8]  *See also Miche Bag, LLC v. Marshall Grp.*, No. 10-129, 2010 WL 2539447, at
*5 (N.D. Ind. June 16, 2010) (alternate designs "may constitute some evidence of
non-functionality"); *Logan Graphic Prods., Inc. v. Textus USA, Inc.*, No. 02-1823,
2003 WL 21011746, at *4 (N.D. Ill. May 5, 2003) (despite *TrafFix* "it is
appropriate . . . to consider the existence of alternative designs in the marketplace
when determining whether product features are functional"); 1 *McCarthy on
Trademarks and Unfair Competition* § 7:75 (4th ed.) ("In my view, the
observations of the Supreme Court in *TrafFix* do not mean that the availability of
alternative designs cannot be a legitimate source of evidence to determine in the
first instance if a particular feature is in fact 'functional.' . . . [T]he finder of fact
should also be permitted to consider the existence or nonexistence of alternative
designs as part of the total evidentiary matrix to be weighed in reaching the
conclusion of whether this design is in fact 'essential' and whether it affects the
'cost or quality of the article.'").

design is nonfunctional under *TrafFix*.  *See, e.g., Cartier v. Sardell Jewelry, Inc.*,

294 F. App'x 615, 621 (2d Cir. 2008) (evidence of "many alternative designs that

could perform the same function"); *Cartier, Inc. v. Four Star Jewelry Creations,*

*Inc.,* 348 F. Supp. 2d 217, 225, 249 (S.D.N.Y. 2004) (evidence of "many other

designs available to a watch manufacturer"); *Adidas*, 228 F. Supp. 2d at 1205

(evidence of "a multitude of design alternatives [that] are available to other shoe

manufacturers"); *Shuffle Master Inc. v. Awada,* No. 05-1112, 2006 WL 2547091,

at *4 (D. Nev. Aug. 31, 2006) (evidence that defendants used alternate designs).[9]

Here, applying *TrafFix*, TH submitted evidence that establishes the *Tetris*

Trade Dress is nonfunctional, including evidence of alternative designs.[10]

---

[9] In addition, the Trademark Trial and Appeals Board of the U.S. Patent and
Trademark Office considers this evidence in determining functionality after
*TrafFix.  See In Re Brayco Products, Ltd.,* No. 77296052, 2009 WL 4329104, at *4
(T.T.A.B. Nov. 16, 2009) ("Because there are alternative product designs, the
design … does not appear to be essential to competition."); *Triforest Enters., Inc.*
*v. Nalge Nunc Int'l Corp.*, No. 91165809, 2008 WL 885892, at *8 (T.T.A.B. Jan.
31, 2008) ("A review of these alternative designs reveals that while each
incorporates some of the features of applicant's bottle design, there are still other
features which give each design an overall look that is different from applicant's
design.").

[10] *TrafFix* and *Valu Engineering* only underscore that the *Tetris* Trade Dress is not
functional.  Those cases involved the design of utilitarian products that were the
subject of utility patents and applications, which contained statements touting their
utilitarian advantages.  *TrafFix*, 532 U.S. at 31–32 (dual-spring traffic sign stand
design that had to withstand heavy winds was functional because it was the subject
of an expired patent); *Valu Eng'g*, 278 F.3d at 1278–79 (designs of conveyor guide
rails found to be functional because they were the subject of a patent application).
In contrast, *Tetris* is not a utilitarian product that has to perform a particular

11

First, TH established that the *Tetris* Trade Dress is not "essential to the use or purpose" of an electronic puzzle game. *Tetris* does not have to look the way it does. It is not a utilitarian object that has to perform a certain function—such as withstanding high winds (like the traffic sign stand in *TrafFix*) or enduring the corrosive effects of "wet areas" in factories (like the conveyer guide rails in *Valu)*. In support, TH submitted testimony from Dr. Ian Bogost, a renowned videogame scholar, that "the *Tetris* Trade Dress is neither related to the game's function or operation, nor is it essential to the game's use or purpose." (PSMF ¶ 76.) As Dr. Bogost opined, the particular shape and appearance of the pieces and playfield in the *Tetris* Trade Dress were "expressive choices that make TH's *Tetris* games look a particular way" but they are "not necessary to make a high-quality electronic puzzle game that is comparable to *Tetris*." (*See id.* ¶ 78.) In addition, TH submitted testimony from Mr. Henk Rogers, an owner of TH and experienced videogame designer, that the *Tetris* Trade Dress is not essential to make an electronic puzzle game. (*See id.* ¶¶ 79–80.) Also, Xio's own expert, Mr. Jason Begy, *admits* that the *Tetris* Trade Dress is *not* essential to make or play electronic

---

function—rather, it is a fanciful puzzle game created for entertainment and which could have had any myriad of designs. Also, it is undisputed that the *Tetris* Trade Dress was not the subject of a utility patent. (DRSMF ¶ 100.)

12

puzzle games.[11]  (*See id.* ¶¶ 1, 81–88.)  *See Cartier,* 348 F. Supp. 2d. at 224–25,

249 (finding no functionality based on marketing director testimony, plaintiff's

expert testimony that design has no "bearing on the watches' functionality," and

admissions by defendant's expert).

     Tellingly, in its opposition, Xio did not dispute this evidence (DRSMF ¶¶

53, 76, 78–88), and it puts forth <u>no</u> evidence to show that the *Tetris* Trade Dress is

necessary for an electronic puzzle game to function.  *See Cartier,* 348 F. Supp. 2d

at 225, 249 (while it is a "fairly obvious proposition" that a "watch must have a

case or a winding stem or numbers or extensions connecting its strap or bracelet to

the case," defendant failed to establish that the "particular shapes and combination

of design elements" were "necessary to a watch's ability to function.").

     <u>Second</u>, TH established that the *Tetris* Trade Dress does *not* affect the cost

or quality of electronic puzzle games.  TH submitted testimony from Dr. Bogost

and Mr. Rogers that "using the *Tetris* Trade Dress does not affect the time or cost

associated with making a new electronic game."  (PSMF ¶¶ 89–91.)  Dr. Bogost

also explained that the *Tetris* Trade Dress is "not necessary to make a high-quality

product," and to support his opinion, Dr. Bogost cited many examples of "highly-

polished and successful titles [that] have been created without copying the *Tetris*

---

[11] Xio does not dispute this admission, but purports to "clarify" Mr. Begy's
testimony.  (DRSMF ¶¶ 53, 81–88.) TH's characterization of Mr. Begy's
testimony is accurate as evidenced by the excerpted deposition testimony. (*Id.)*

13

Trade Dress." (*Id.* ¶ 94.)  *See Cartier,* 348 F. Supp. 2d at 225 (citing testimony by

plaintiff's watch expert).  Once again, Xio disputes *none* of this evidence (DRSMF

¶¶ 89–91, 94)—and offers *no* evidence that the *Tetris* Trade Dress would affect the

time or cost of production of a videogame.[12]

Lastly, TH established that competitors would *not* be at a "significant non-

reputational disadvantage" if they were precluded from using the *Tetris* Trade

Dress.  In other words, TH established that its trade dress is not essential to

competition in the electronic puzzle game market.  TH submitted testimony by Dr.

Bogost (who also runs a commercial videogame studio) that the trade dress "does

not offer a competitive advantage" and is "not necessary to create a comparable

and competitive product in the marketplace." (PSMF ¶ 95.)  In support, Dr.

Bogost cited to many examples of electronic puzzle games that compete with

*Tetris*.  (*Id.* at ¶ 96.)  TH also put forth testimony from Mr. Rogers—who has

worked in the industry for decades—that many games are able to compete with

*Tetris* without copying the *Tetris* Trade Dress, including the nearly 20,000

electronic puzzle games on the Apple App Store.  (*Id.* at ¶ 97.)  Tellingly, Xio

offers no evidence to rebut these points.  (DRSMF ¶¶ 95–97.)  In fact, Xio's own

expert, Mr. Begy, admitted that it was possible to make a puzzle game without the

*Tetris* Trade Dress.  (PSMF ¶¶ 53, 81–88.)  *See Cartier,* 348 F. Supp. 2d at 225

---

[12] Xio's expert, Mr. Begy, had no opinion on this issue. (PSMF ¶ 92.)

14

(admission by defendant's expert that, if he could not use "all of the various

elements in combination," it "would not seriously limit his options as a watch

designer" supported nonfunctionality).  As such, TH has established that its *Tetris*

Trade Dress is not functional under the *TrafFix* standards, and summary judgment

for TH is warranted.[13]

Date:  November 18, 2011                     Respectfully submitted,

/s/ Dale M. Cendali                          /s/ Robert J. Schoenberg
Dale M. Cendali                              Robert J. Schoenberg
Johanna Schmitt                              RIKER DANZIG SCHERER
Brendan T. Kehoe                             HYLAND & PERRETTI LLP
KIRKLAND & ELLIS LLP

Attorneys for Plaintiffs

---

[13]  Recognizing its affirmative defenses are baseless, Xio spends only one page defending them.  (Xio Opp. Br. 14–15.)  For functionality and preemption, Xio offers nothing new and regurgitates its former arguments.  These two defenses fail for the reason explained above and in TH's opposition to Xio's motion.  (TH Opp. Br. 37–40.)  For fair use, Xio does not dispute that the first factor (purpose and character of use), second factor (nature of the work); and fourth factor (effect of use upon the potential market for or value of the copyrighted work) weigh in TH's favor.  Xio's only argument is that the third factor (amount of taking) weighs in its favor because it copied an "insignificant part" of *Tetris*.  Leaving aside the first and fourth factors are generally the most critical (both of which weigh in TH's favor), *see Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-79,  590-91; *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985), Xio's argument strains credulity as the games are virtually identical and Xio copied almost everything.  (*See* PSMF ¶¶ 50, 164–68.)  Also, TH is aware of no case (and Xio cites none) where a competing commercial knock-off (like *Mino*) was held to be a fair use.  In sum, Xio's defenses have so little support that sanctions against Xio are arguably warranted for persisting with them despite numerous opportunities to withdraw them.  At a minimum, summary judgment in favor of TH is warranted for them.

## CERTIFICATE OF SERVICE

I hereby certify that on this date Plaintiffs' Reply Memorandum of Law in Support of Motion for Summary Judgment was electronically filed with the Court and automatically served upon counsel of record via the CM/ECF system.

Attorneys for Plaintiffs/Counterclaim Defendants
Tetris Holding, LLC and The Tetris Company, LLC

*s/ Robert J. Schoenberg*
Riker, Danzig, Scherer, Hyland
  & Perretti LLP
1 Speedwell Avenue
Morristown, NJ  07962-1981
Tel:  (973) 451-8511
Fax:  (973) 451-8604
Email: rschoenberg@riker.com

Dated: November 18, 2011.