Donald A. Robinson
ROBINSON, WETTRE & MILLER LLC
One Newark Center, 19th Floor
Newark, NY  07102
973-690-5400
drobinson@rwmlegal.com

Mark A. Lemley
Joseph C. Gratz
Sonali D. Maitra
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
415-362-6666

*Attorneys for Defendant*
*Xio Interactive Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TETRIS HOLDING, LLC and THE TETRIS COMPANY, LLC, <br><br>     Plaintiffs, <br><br>   -against- <br><br> XIO INTERACTIVE INC., <br><br>     Defendant. | Civil Action No. 3:09-CV-6115 (FLW) (DEA) <br><br> Honorable Freda L. Wolfson, U.S.D.J. <br> Honorable Douglas E. Alpert, U.S.M.J. |

**XIO INTERACTIVE INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

                                **Page**

I.   INTRODUCTION ....................................................................................... 1

II.   RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS .......................... 3

III.   ARGUMENT ............................................................................................... 5

    A.   Rules Are Properly Considered the Limitations and Affordances of the Game ........................................................................................ 5

    B.   A U.S. Customs Letter Regarding the Idea of *Tetris* is Irrelevant to This Case ................................................................................... 10

    C.   Video Games Are Not Movies ........................................................... 10

    D.   Plaintiffs Trade Dress Claims Fail ...................................................... 13

IV.   CONCLUSION ......................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Affiliated Enters. v. Gruber*,
  86 F.2d 958 (1st Cir. 1936)..................................................................................8

*Antidote Intern. Films, Inc. v. Bloomsbury Pub., PLC*,
  467 F. Supp. 2d 394 (S.D.N.Y. 2006) ................................................................14

*Atari, Inc. v. N. Am. Phillips Consumer Elec. Corp.*,
  672 F.2d 607 (7th Cir. 1982) ...............................................................................8

*Baker v. Selden*,
  101 U.S. 99 (1879)...............................................................................................8

*Beller ex rel. Beller v. United States*,
  221 F.R.D. 96 (D.N.M. 2003).............................................................................9

*Blakeman v. The Walt Disney Co.*,
  613 F. Supp. 2d 288 (E.D.N.Y. 2009) .................................................................7

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  *539 U.S. 23 (2003)* ............................................................................. 3, 13, 14, 15

*Data East USA, Inc. v. Epyx, Inc.*,
  862 F. 2d 204 (9th Cir. 1988) .........................................................................6, 12

*Gallagher v. Southern Source Packaging, LLC*,
  568 F. Supp. 2d 624 (E.D. N.C. 2008) ................................................................9

*General Universal Systems, Inc. v. Lee*,
  379 F.3d 131 (5th Cir. 2004) .............................................................................14

*Incredible Technologies, Inc. v. Virtual Technologies, Inc.*,
  400 F.3d 1007 (7th Cir. 2005) .............................................................................6

*Keane v. Fox Television Stations, Inc.*,
  297 F. Supp. 2d 921 (S.D. Tex. 2004)...............................................................13

*LaChapelle v. Fenty*,
  __ F. Supp. 2d __, 11 CIV. 945 SAS,
  2011 WL 2947007 (S.D.N.Y. July 20, 2011).....................................................15

*Lotus Development Corp. v. Borland International, Inc.*,
  49 F.3d 807 (1st Cir. 1995)................................................................................12

*Maggipinto v. Reichman*,
  607 F.2d 621 (3d Cir. 1979) ..................................................................................................6

*Midway Manufacturing v. Bandai-America*,
  546 F. Supp. 125 (D.N.J. 1982) ............................................................................................8

*Perfect 10, Inc. v. MegaUpload, Ltd.*,
  __ F. Supp. 2d __, 11 CIV 191 IEG,
  2011 WL 3203117 (S.D. Cal. July 27, 2011) .....................................................................15

*RDF Media Ltd. v. Fox Broadcasting Co.*,
  372 F. Supp. 2d 556 (C.D. Cal. 2005) ................................................................................14

*Whist Club v. Foster*,
  42 F.2d 782 (S.D.N.Y. 1929) ................................................................................................6

*Zyla v. Wadsworth, Div. of Thomson Corp.*,
  360 F.3d 243 (1st Cir. 2004) ...............................................................................................14

**Statutes**

17 U.S.C. § 102(b) ......................................................................................................... 1, 6, 8

**Other Authorities**

Bruce E. Boyden, *Games and Other Uncopyrightable Systems*,
  18 Geo. Mason L. Rev. 439 (2011) ......................................................................................6

Copyright Office Circular, http://www.copyright.gov/fls/fl108.html .......................4

Jared Barrett, *Cases in Wake of Dastar v. Twentieth Century Fox
  Continue to Narrow the Scope of a "Reverse Passing Off" Claim*,
  3 Shidler J. L. Com. & Tech. 15 (2007) .............................................................................14

Jesper Juul, *Half-Real* 58 (2005) ..................................................................................5

**Rules**

Federal Rule of Evidence 803(18) ..............................................................................6

I.  **INTRODUCTION**

This case is about three straightforward legal issues:

(1) *Are video game rules copyrightable?* Plaintiffs have already admitted that they aren't. While Plaintiffs try to dodge around that admission in their opposition brief, it is a fundamental legal tenet that game rules are not copyrightable.

(2) *How does one define the "rules" of a video game?* Plaintiffs do not attempt to justify their expert's litigation-driven definition: ███████████ ███████████  This omission is understandable; it is difficult to make heads or tails of this definition, and it certainly wouldn't explain the century of cases refusing to protect individual game rules.

Plaintiffs now claim that the "rules" of a video game are the same as its "idea." Not so. No case has ever so held and, more importantly, such a reading would directly contravene the express mandate of the Copyright Act. Section 102(b) of the Copyright Act lists separate and distinct categories that are not protected by copyright. Specifically, an idea is listed as a separate, disjunctive category from functional categories such as systems, procedures, processes, and methods of operation. Plaintiffs' interpretation would render all that statutory language superfluous.

1

(3) *What are the rules of Tetris?* The answer flows directly from the proper, common-sense definition of the rules of a video game: the limitations and affordances of the game. To claim that the accused features are not "rules"—such as the size of the board, using puzzle pieces shaped as tetrominos to fit on the board, rotating those puzzle pieces to fit on the board, and the clearing of completed horizontal lines from the board—defies common sense.

In replying to Plaintiffs' opposition, it is also important to be very clear on what Xio does not argue:

*Xio does not argue that video games are not copyrightable.* Of course they are. The expressive nonfunctional elements of video games—such as background music, specific color choices, the depiction of the characters and their features (like Mario and his iconic moustache)—are undeniably copyrightable. But Xio does not copy such elements.

*Xio does not argue that that video game rules and other functional elements are not entitled to any sort of protection.* Patent law protects video game rules and other functional elements. Thus, ruling in Xio's favor would not further anyone's "venal commercial interests," "radically undermine the protection afforded to videogames," or "destabilize the vibrant videogame industry" (as Plaintiffs argue).

*Xio does not argue that trade dress is irrelevant to this case.* To the contrary, Xio argued in its opening motion that Plaintiffs' trade dress claims fail

2

for the same reason its copyright claims do and, as a separate basis for summary judgment, that the Supreme Court's *Dastar* opinion preempts their trade dress claims.

## II.   RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

The basic facts and the nature of the games are not in dispute. Nor is the fact that the similarities in those games result from the way they work and are played. Thus, all that remains is the legal question whether the features Plaintiffs accuse of infringement are uncopyrightable rules and other functional elements.

Plaintiffs make certain allegations in their opposition to Xio's motion for summary judgment that, although not relevant to the merits of the dispute, are unfair characterizations requiring correction.

First, Xio's attorney, Jeffrey Neu, did not advise Xio to change its game because it infringed Plaintiffs' rights. Rather, after Plaintiffs sent a cease-and-desist letter to Xio and a DMCA notification to Apple, he recommended changes to the game to avoid suit entirely. *See* Xio's Opp. 2-3, ECF No. 51. In fact, Mr. Neu's understanding of the metes and bounds of copyright law is consistent with Xio's (as explained in greater detail in Xio's opposition to Plaintiffs' motion for summary judgment). *See id.* at 3.

Second, Xio had good reason to believe that it would not infringe Plaintiffs' rights in developing *Mino*. As explained in greater detail its opening brief, Xio

3

analyzed intellectual property law to determine what parts of *Tetris* it could use and what parts it couldn't. *See* Xio's Opening Br. 6-7, ECF No. 46-1. At the very beginning of the development of its game, Xio discovered the basic tenet at the heart of this motion—that copyright and trade dress do not protect rules, game mechanics, and functional elements. *Id.* Xio relied on a number of online references, including the Copyright Office Circular regarding video games—in addition to a communication from an attorney that said their legal analysis was "spot on." *Id.* Plaintiffs misrepresent the Circular, claiming that it states that copyright does not protect the "idea" of a game only. Plaintiffs' Opp. 5, ECF No. 52. But here is what the Circular actually says:

> Copyright does not protect the idea for a game, its name or title, or the method or methods for playing it. Nor does copyright protect any idea, system, method, device, or trademark material involved in developing, merchandising, or playing a game. Once a game has been made public, nothing in the copyright law prevents others from developing another game based on similar principles. Copyright protects only the particular manner of an author's expression in literary, artistic, or musical form.

http://www.copyright.gov/fls/fl108.html. This Circular expressly states that copyright *neither* protects an "idea" for a game *nor* a "method . . . involved in playing a game."

4

## III.   ARGUMENT

### A.   Rules Are Properly Considered the Limitations and Affordances of the Game

Video game rules and other functional elements are not protected by copyright.  The rules of a video game are properly thought of as those things that place broad constraints on what players can do and define certain actions valid within the game—i.e., the limitations and affordances of the game.  Plaintiffs agree that video game rules are uncopyrightable.  And, importantly, Plaintiffs do not dispute that under Xio's proposed definition of "rules," Xio does not infringe.

> Xio offers the following explanation of the rules of a video game:
>
> Rules specify *limitations* and *affordances*.  They prohibit players from performing actions and this affords players meaningful actions that were not otherwise available; rules give games structure.  The board game needs rules that let the players move their pieces as well as preventing them from making illegal moves.  The video game needs rules that let the characters move as well as rules that prevent the character from reaching the goal immediately.

Jesper Juul, *Half-Real* 58 (2005) (emphasis in original).  Not only is this definition commonsensical, it is directly in line with copyright scholarship.  Professor Bruce Boyden explains:

> [T]he rules of the game are sometimes thought of as the instructions for playing the game, but they are not; rules do not tell players precisely what to do.  Rather, they place broad constraints on what players can do and conversely define certain actions as valid within the scope of the game.

Bruce E. Boyden, *Games and Other Uncopyrightable Systems*, 18 Geo. Mason L. Rev. 439, 450 (2011).[1] The elements Plaintiffs accuse of Xio of copying fit this definition of rules.[2]

Plaintiffs urge the Court to ignore this definition because Xio's expert—who described this definition in his expert report and his reliance on world-renowned game scholar Jesper Juul—did not provide a sworn declaration in support of Xio's motion for summary judgment. To the extent the Court believes this to matter to its independent assessment of the rules of *Tetris*, Xio here attaches a declaration by Mr. Begy that swears to the entirety of his expert report. *See* Begy Decl. in Support of Xio's Motion for Summary Judgment. In addition, Dr. Juul's work should be admitted under Federal Rule of Evidence 803(18), the learned treatise exception to the hearsay rule. *See Maggipinto v. Reichman*, 607 F.2d 621, 622 n. 4 (3d Cir. 1979). ███████████████████████████

---

[1] Plaintiffs say there is no basis in copyright law for this definition, and urge the Court to discount Dr. Boyden's legal opinion because he is a law professor like Xio's lead counsel Mark Lemley and "a known advocate for limiting copyright protection in computer programs." Plaintiffs Opp. 21 n. 11, ECF No. 52. Plaintiffs cite no authority for this personal attack on Dr. Boyden, and Xio has no knowledge of Dr. Boyden's advocacy interests.

[2] Plaintiffs make much of the fact that Xio freely admits that it considers four relatively peripheral elements to be functional elements, as opposed to rules per se. But why this should matter is unclear. Neither rules nor other functional elements are protected by copyright. *See, e.g.*, 17 U.S.C. § 102(b); *Whist Club v. Foster*, 42 F.2d 782 (S.D.N.Y. 1929); *Data East USA, Inc. v. Epyx, Inc.*, 862 F. 2d 204, 209 (9th Cir. 1988); *Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007 (7th Cir. 2005).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Maitra Decl. In Support of Xio's Reply, Ex. 2.

Tellingly, Plaintiffs completely ignore the definition of "rule" provided by their own expert, Dr. Bogost, in opposing Xio's motion—and the very set of rules Plaintiffs described in their interrogatory responses. ███████████████ ███████████████████████████████ As a result, Plaintiffs had claimed that the rules of *Tetris* were limited to a vague set of features (described below).  Now, by contrast, Plaintiffs provide no definition whatsoever for rules and instead claim that the "rules" of a video game are identical to its underlying "idea" as a matter of copyright law.  As a result, this is not a case in which two experts disagree over the facts, and Plaintiffs have chosen not to oppose summary judgment by disputing the facts.  So the only question before this court is whether Plaintiffs are right that copyright law only exempts ideas from its reach.[3]

Plaintiffs are wrong.  Section 102(b) of the Copyright Act—which describes specific categories that are not protected by copyright—makes clear that ideas are

---

[3] Plaintiffs also state that something called "scenes a faire" are not subject to copyright protection, but the scenes a faire doctrine is nothing more than the principle that those features of a work that are indispensible to a given idea are not copyrightable. *See, e.g.*, *Blakeman v. The Walt Disney Co.*, 613 F. Supp. 2d 288, 305 (E.D.N.Y. 2009).

7

a separate, distinct, and disjunctive category as compared to concrete functional elements, such as rules. 17 U.S.C. § 102(b). As Xio explained in its opening brief, this has been the law for well over a century. *See, e.g.*, *id., Baker v. Selden*, 101 U.S. 99 (1879); *Affiliated Enters. v. Gruber*, 86 F.2d 958 (1st Cir. 1936).

No case has ever held that the idea for a video game is identical to its rules. *Midway Manufacturing v. Bandai-America* stated no more than that "copyright protection does not encompass games as such, since they consist of abstract rules *and* play ideas." 546 F. Supp. 125, 148 (D.N.J. 1982) (emphasis added). This is far from an equation of the two; to the contrary, it implies that they are separate and distinct categories. Plaintiffs also cite the following statement from the Seventh Circuit in support of this argument: "we find that plaintiffs' game can be described accurately in fairly abstract terms, much in the same way as one would articulate the rules to such a game." *Atari, Inc. v. N. Am. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 617 (7th Cir. 1982). This too is not a holding to the effect that game rules are identical to its idea; at most it is an analogy between two different doctrines. And both of these cases are consistent with the law that the rules of a video game are themselves unprotectable.

In fact, Plaintiffs themselves apparently did not come up with this argument until very recently, as it is contrary to both their interrogatory responses and expert report—which both consider *Tetris's* rules to be very different from its underlying

8

idea. Plaintiffs describe the "idea" of *Tetris* as "a game using simple square or blocks on the screen to be assembled into specific shapes and manipulated by the player." Maitra Decl. Ex. 46, ECF No. 46-4. And they describe the "rules" of *Tetris* as follows: "an object appears on a playing field and the player manipulates the object to a final resting spot, to create a shape which is then removed from the playing field." *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Maitra Decl. In Support of Xio's Reply, Ex.1.

Changing these sworn statements to avoid summary judgment is improper. *See Gallagher v. Southern Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) (citing numerous cases from multiple districts holding that a party may only correct "inadvertent errors or omissions" in their expert report but not "amend an expert report to avoid summary judgment"); *Beller ex rel. Beller v. United States*, 221 F.R.D. 96, 701 (D.N.M. 2003) (holding that a party may not "sandbag one's opponent with claims and issues which should have been included in the expert witness's report").

In sum, Plaintiffs' attack on Xio's common-sense definition of rules fails, they offer no alternative definition in response, and their newfound claim that game rules are synonymous with the game idea has no support in law or fact.

### B. A U.S. Customs Letter Regarding the Idea of *Tetris* is Irrelevant to This Case

Plaintiffs argue in their opposition that Xio cannot prevail because the elements *Mino* has in common with *Tetris* extend beyond the "idea" of *Tetris*—and they place heavy reliance on Customs letters that purport to describe the idea of *Tetris*. First and most importantly, Xio's argument is not that *Mino* uses only the uncopyrightable idea of *Tetris*. Rather, Xio argues that the only features in common between the two games are rules and other functional elements that are also not protected by copyright. Plaintiffs' argument would work only if game rules were synonymous with a game's idea, which is wrong, as just shown. Thus all of Plaintiffs' arguments involving the uncopyrightable idea of *Tetris* are irrelevant to the present case.

In addition, as Xio explained in detail in its opposition to Plaintiffs' motion for summary judgment, letters issued by U.S. Customs have no precedential value whatsoever. *See* Xio's Opp. 4-7, ECF No. 51.

### C. Video Games Are Not Movies

Plaintiffs argue throughout their opposition that video games are like movies. This allows them to argue that, like movies, the specific audiovisual elements of a video game are copyrightable, not patentable. And they argue that, also like a movie, the only uncopyrightable aspect of a video game is its very basic

10

idea, meaning that even features directly relating to the way the game works should be copyrightable. This sleight-of-hand is clever, but wrong.

Video games differ from movies in at least one critical aspect: unlike the audiovisual display of films, which is composed almost exclusively of expressive content, a video game audiovisual display contains both expressive and functional content, such as game rules. Movies are not governed by a set of rules, and they are not played. Video games are both. In some video games, there is much more expressive content than functional content. Take, for example, the newly-released, highly-popular video game *Batman: Arkham Asylum*.[4] This game focuses heavily on expressive content such as the intricate depiction of the specific characters and their voices, the background art, and the background music. Because they are not dictated by ideas, rules, or functions, those expressive elements are protected by copyright law. For others, such as *Tetris*, the game is primarily dictated by functional content. But in neither does copyright protect the rules of the respective games.

And unlike movies, certain audiovisual aspects of video games are protected by patent. Specifically, patent protects video game rules—rules that necessarily play a role in the game's audiovisual display. As just one example, and directly contrary to Plaintiffs' assertion in their opposition, the patent for Dr. Mario

---

[4]A demo of this game is available at http://www.gamespot.com/batman-arkham-asylum/videos/batman-arkham-asylum-demo-official-trailer-6214684.

specifically claims the rules of the game as visually depicted on the screen, including the vertical movement of the objects in the playing field and the resting and stacking of the playing pieces on the playing field upon contact. U.S. Patent No. 5,265,888. This is because video game rules are functional and therefore outside the realm of copyright protection.

Xio does not dispute that a work can be simultaneously copyrighted and patented. Video games in particular often embody both expressive elements (protected by copyright) and functional ones (protected by patent). But the functional elements of the game must be protected by patent, not copyright.

In fact, the law is clear that not all aspects of an audiovisual display are copyrightable. As just one example, *Data East USA, Inc. v. Epyx, Inc.* expressly holds that certain, very specific visual imagery in a video game is not protected by copyright. 862 F.2d 204, 209 (9th Cir. 1988) (holding uncopyrightable such things as "game procedure, common karate moves, the idea of the background scenes, a time element, [and] a referee"). Similarly, in *Lotus Development Corp. v. Borland International, Inc.*, the First Circuit found methods of operation uncopyrightable notwithstanding that they were displayed on a screen. 49 F.3d 807, 810 (1st Cir. 1995). Even the specific words chosen and arrangement of the structure on the audiovisual display did not somehow render them copyrightable subject matter. *Id.*

Thus, merely because a specific element of a game is part of the audiovisual display does not mean it is copyrightable.

### D. Plaintiffs Trade Dress Claims Fail

Xio has argued two separate bases for summary judgment on Plaintiffs' trade dress claims. First, Plaintiffs' claimed trade dress is functional. Xio addresses this argument in detail in Xio's opposition to Plaintiffs' motion for summary judgment. Xio's Opp. 7-14, ECF No. 51.

Second, Plaintiffs' trade dress claims are preempted under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). In *Dastar*, the Supreme Court held that the Lanham Act did not reach a product's underlying ideas or expression—which are the exclusive province of patent and copyright law, respectively. Under *Dastar*, a plaintiff cannot bring a Lanham Act claim for uncopyrightable aspects of their works to subvert the protections and limitations of copyright law. *See, e.g.*, *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 935 (S.D. Tex. 2004). Similarly here, Plaintiffs cannot do an end-run around copyright by claiming trade dress protection for uncopyrightable elements of *Tetris*.

Plaintiffs' sole arguments in opposition are that (1) *Dastar* only applies to situations in which a copyright has fallen into the public domain, and (2) *Dastar* only applies to reverse-passing-off claims and this is not a reverse-passing-off

13

claim. The first is demonstrably false. Courts have consistently held that *Dastar* is not limited to cases in which a copyrighted work has fallen into the public domain. *See, e.g., General Universal Systems, Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004); *Antidote Intern. Films, Inc. v. Bloomsbury Pub., PLC*, 467 F. Supp. 2d 394, 398 (S.D.N.Y. 2006); *Zyla v. Wadsworth, Div. of Thomson Corp.*, 360 F.3d 243, 251-52 (1st Cir. 2004); *see generally* Jared Barrett, *Cases in Wake of Dastar v. Twentieth Century Fox Continue to Narrow the Scope of a "Reverse Passing Off" Claim*, 3 Shidler J. L. Com. & Tech. 15 (2007) ("[C]ases following *Dastar* make it clear that the *Dastar* holding applies both to works still under copyright protection as well as to those that have fallen out of copyright.").

Plaintiffs' second argument is similarly unsupported by the case law. "Passing off" occurs when consumers wrongly think the defendant's product is affiliated with the plaintiff. If I make a soda I call "Coca-Cola," consumers will be confused into thinking it *is* Coca-Cola. That is the classic case of trademark infringement. "Reverse passing off" is the much rarer circumstance in which the similarity between the marks will cause people to believe that the trademark owner's goods are actually made by the defendant. But post-*Dastar* cases have not been limited to reverse passing off; they have encompassed ordinary trademark and trade dress cases as well. *See, e.g., RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 563-64 (C.D. Cal. 2005); *LaChapelle v. Fenty*, __ F. Supp. 2d __,

14

11 CIV. 945 SAS, 2011 WL 2947007 at *4 (S.D.N.Y. July 20, 2011); *Perfect 10, Inc. v. MegaUpload, Ltd.*, __ F. Supp. 2d __, 11 CIV. 191 IEG, 2011 WL 3203117 at *7-8 (S.D. Cal. July 27, 2011).  Thus, Plaintiffs claims are preempted under *Dastar*.

### IV. CONCLUSION

For the foregoing reasons, and in the reasons outlined in Xio's opening brief in support of its motion for summary judgment, the Court should grant summary judgment in Xio's favor on all claims asserted by Plaintiffs.

Dated:  November 18, 2011

ROBINSON, WETTRE & MILLER LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400
drobinson@rwmlegal.com


By:        */s/ Donald A. Robinson*
Donald A. Robinson

-and-

Mark A. Lemley
Joseph C. Gratz
Sonali D. Maitra
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
415-362-6666

*Attorneys for Defendant
XIO Interactive, Inc.*

15

## CERTIFICATE OF SERVICE

I certify that on November 18, 2011, I caused a copy of XIO'S REPLY BRIEF IN SUPPORT OF XIO'S MOTION FOR SUMMARY JUDGMENT to be served upon plaintiffs' counsel of record via the Court's electronic filing system.

<i>/s/ Donald A. Robinson</i><br>
Donald A. Robinson